## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| LEE PAIGE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 1:06cv00644 |
| ) | |
| v. ) | Hon. Emmet G. Sullivan |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant the United States of America respectfully moves this Court to dismiss plaintiff's complaint for failure to state a claim for relief. Points and authorities supporting defendant's motion are presented in the attached Memorandum in Support of Defendant's Motion to Dismiss.

Dated: October 10, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

   /s/ Peter J. Phipps
PETER J. PHIPPS
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 616-8482
Fax: (202) 616-8470
peter.phipps@usdoj.gov

<u>Mailing Address:</u>
Post Office Box 883
Washington, D.C.  20044

<u>Courier Address:</u>
20 Massachusetts Ave., N.W.
Washington, D.C. 20001

Attorneys for Defendant

2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEE PAIGE, ) | |
| ) | |
| **Plaintiff,** ) | Civil Action No. 1:06cv00644 |
| ) | |
| v. ) | Hon. Emmet G. Sullivan |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**
**PURSUANT TO RULE 12(b)(6)**

**INTRODUCTION**

Plaintiff attempts to sue under the Privacy Act's disclosure provisions for the alleged

release of a recording of an event which was public and for which plaintiff had no expectation of

privacy. Specifically, plaintiff, a special agent with the United States Department of Justice,

Drug Enforcement Administration (the "DEA"), tries to recover under the Privacy Act for the

DEA's alleged release of a recording of an educational presentation that plaintiff was giving to

parents and children – during which plaintiff accidentally discharged a firearm and injured

himself.

While plaintiff may be embarrassed by that event, he did not have any expectation of

privacy in that highly public presentation, and for that reason, he does not state a cause of action

under the Privacy Act's disclosure provisions. Plaintiff does not allege that the presentation was

by-invite-only or that it was exclusive in any way. Nor does plaintiff point to any actions that he

took to preserve any private nature of his presentation. Rather, plaintiff's allegations state that

his presentation was being videotaped (plaintiff does not allege that the DEA requested the

recording or assisted in its creation).  Moreover, within a month of the incident, news reports of the shooting had spanned the region and nation with both the Associated Press and the United Press International publishing accounts of the shooting.

As a legal matter, therefore, plaintiff placed himself in the public view, and cannot now recover under the Privacy Act by alleging essentially that the DEA should have concealed or hidden his public behavior, which he himself made no effort to keep private.  As discussed below, case law makes clear that the Privacy Act does not authorize attempts to recover for the subsequent release of such highly public matters.  See, e.g., Winters v. Bd. of County Comm'rs, 4 F.3d 848, 852 (10th Cir. 1993); Wright v. FBI, 385 F. Supp. 2d 1038, 1041 (C.D. Cal. 2005); Barry v. U.S. Dep't of Justice, 63 F. Supp. 2d 25, 27-28 (D.D.C. 1999).  In addition, common law principles, instructive in defining the scope of a privacy interest, do not allow recovery for highly public information such as plaintiff's videotaped presentation to an audience of parents and children.  For these reasons, even taking its allegations to be true, plaintiff's complaint does not state a cognizable claim for relief and should be dismissed.[1]

## STATEMENT OF FACTS

As alleged in his complaint, plaintiff is a DEA Special Agent who accidentally discharged a firearm while giving a presentation to children.  (Compl., at ¶¶ 3-6.)  On April 9, 2004, plaintiff was making a drug education presentation to children at the Orlando Youth Minority Golf Association in Orlando, Florida.  (Compl., at ¶ 6.)  Plaintiff does not allege that the presentation

---

[1] Plaintiff's complaint also fails to plead a legitimate defendant because the identified defendant, the "United States of America," is not a federal "agency," as required by the Privacy Act.  See 5 U.S.C. § 552a(g)(1); Mumme v. U.S. Dep't of Labor, 150 F. Supp. 2d 162, 169 (D. Me. 2001) ("[T]he United States cannot be a defendant pursuant to Plaintiff's Privacy Act claims.").

was exclusive in any way or that it was by invitation only. Plaintiff acknowledges that the

presentation, which included a gun safety demonstration, was being videotaped, and plaintiff

does not allege that the DEA operated or controlled the recording process. (Compl., at ¶ 7.) As

part of that demonstration, plaintiff showed a firearm to the audience, and while doing so,

plaintiff fired the gun accidentally and injured himself. (Compl., at ¶ 6.)

Within a month, news of the shooting had spread in the press.[2] Newspapers throughout

the state of Florida published articles on the shooting.[3] Moreover, the story was picked up by the

Associated Press and United Press International,[4] and republished throughout the nation.[5] As to

the videotape, plaintiff alleges that shortly after the accidental discharge, the only recording of

_____

[2] The D.C. Circuit has recognized that a court may take judicial notice of newspaper articles for the purpose of determining whether a fact was within the public knowledge. Washington Post v. Robinson, 935 F.2d 282, 291 (D.C. Cir. 1991).

[3] See, e.g., Drug Agent Shoots Self During Gun Presentation, Tampa Tribune, May 2, 2004, at 2; DEA Agent Shoots Self During Gun Safety Class, Sun-Sentinel (Fort Lauderdale), May 1, 2004, at 6B; DEA Investigates after Agent Shoots Himself in Safety Class for Kids, Orlando Sentinel, Apr. 30, 2004, at B2; Drug Agent Shoots Self During Gun-safety Class, Tallahassee Democrat, May 1, 2004, at B4; Gun Safety Demonstrator Shoots Self, St. Petersburg Times, May 1, 2004, at 4B (copies from LEXIS attached as Exhibit 1).

[4] See, e.g., DEA Agent Shoots Self During Gun Safety Class for Florida Children, The Associated Press, May 1, 2004; DEA Agent Shoots Self During Gun Safety Class for Orlando Kids, The Associated Press State & Local Wire, Apr. 30, 2004; DEA Agent Shoots Self in Gun Safety Class, Associated Press Online, May 1, 2004; DEA Agent Shoots Self in Gun Safety Class, United Press Int'l, Apr. 30, 2004 (copies from LEXIS attached as Exhibit 2).

[5] See, e.g., Agent Shoots Own Leg in Safety Presentation, Augusta Chron., May 2, 2004, at B03; Agent Shoots Self During Safety Class, Duluth News Trib., May 2, 2004; Agent Shoots Self During Safety Talk, Akron Beacon J., May 3, 2004, at A5; Agent Shoots Self in Leg During Presentation, The State (Columbia, SC), May 2, 2004, at A17; United States: Gun Safety Lecturer Shoots His Own Leg, Ottawa Citizen, May 2, 2004, at A7; U.S. Drug Agent Shoots Leg During Safety Class, Deseret Morning News (Salt Lake City), May 2, 2004 (copies from LEXIS attached as Exhibit 3).

the presentation was turned over to the DEA.  (Compl., at ¶ 7.)  Plaintiff then alleges that the

DEA released the contents of the videotape to other DEA employees and to entities outside of the

DEA.  (Compl., at ¶ 8.)  According to plaintiff, this alleged release led to the recording being

widely circulated on the internet, causing plaintiff emotional pain and suffering, mental anguish,

and other injuries.  (Compl., at ¶ 12.)  On the basis of those allegations, plaintiff sues the United

States of America for a violation of the disclosure provisions of the Privacy Act, 5 U.S.C.

§ 552a(b).

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism for testing the legal

sufficiency of the factual allegations in a plaintiff's complaint.  See Browning v. Clinton, 292

F.3d 235, 242 (D.C. Cir. 2002).  Under this rule, a court treats the complaint's factual allegations

as true and draws all reasonable inferences in plaintiff's favor.  See Harris v. Ladner, 127 F.3d

1121, 1123 (D.C. Cir. 1997); Alexis v. District of Columbia, 44 F. Supp. 2d 331, 336-37 (D.D.C.

1999).  However, a court "need not accept inferences drawn by [a plaintiff] if such inferences are

unsupported by the facts set out in the complaint."  Kowal v. MCI Communications Corp., Inc.,

16 F.3d 1271, 1275 (D.C. Cir. 1994).  The scope of the court's evaluation of the sufficiency of

the factual allegations is limited to "only the facts alleged in the complaint, any documents either

attached to or incorporated in the complaint and matters of  . . . judicial notice."  E.E.O.C. v. St.

Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).  Moreover, the Rule 12(b)(6)

pleading standard applies only to factual allegations, and does not apply to "legal conclusions

cast in the form of factual allegations."  Kowal, 16 F.3d at 1275.

To survive a motion to dismiss, the complaint "must set forth sufficient information to

4

suggest that there is some recognized legal theory upon which relief can be granted." District of Columbia v. Air Florida, Inc., 750 F.2d 1077, 1078 (D.C. Cir. 1984). Those allegations must be "neither vague nor conclusory" and must "cover all the elements that comprise the theory for relief." ASA Accugrade, Inc. v. Am. Numismatic Ass'n, 370 F. Supp. 2d 213, 215 (D.D.C. 2005) (quoting Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002)). Consistent with that standard, "[a] court must dismiss a complaint where, even assuming all the factual allegations are true, the plaintiff has failed to establish a right to relief based upon those facts." Gregg v. Barrett, 771 F.2d 529, 547 (D.C. Cir. 1985); see also Weyrich v. The New Republic, Inc., 235 F.3d 617, 623 (D.C. Cir. 2001).

## ARGUMENT

**The Alleged Release of a Recording of Plaintiff's Highly Public Presentation Does Not Implicate Any Privacy Interest Protected by the Privacy Act, and Thus Plaintiff Cannot Recover.**

Several courts have ruled that when a person voluntarily makes information about himself highly public and places it into the public domain by his own actions, as plaintiff did here, then that person cannot recover under the Privacy Act's disclosure provisions. See 5 U.S.C. § 552a(b). Accordingly, plaintiff, who voluntarily placed himself in the public's eye without restrictions, cannot now recover for the alleged subsequent release of a recording of his public presentation.[6]

---

[6] There is not binding precedent on this issue. The D.C. Circuit has previously examined the Privacy Act's disclosure provisions in considering a related question, whether the Privacy Act prevents the release of information to persons already familiar with that information. See Pilon v. United States Department of Justice, 73 F.3d 1111, 1119-20 (D.C. Cir. 1996) (concluding that the Privacy Act covers the release of a non-public document to a person who already had knowledge of it); but cf. Hollis v. U.S. Dep't of the Army, 856 F.2d 1541, 1544 (D.C. Cir. 1988) (recognizing that "other courts have echoed the sentiment that when a release consists merely of

The recent decision of <u>Wright v. FBI</u>, concluded that where a plaintiff himself makes matters public, he cannot later recover under the Privacy Act for a government release of such information – even if the information comes from a person's personnel file. 385 F. Supp. 2d 1038, 1041 (C.D. Cal. 2005). The court in <u>Wright</u> found that where a plaintiff took efforts to publicize information in his personnel file, he thereby made that information public and could not later recover under the Privacy Act for a subsequent disclosure by the agency "since the information was already available to the wide-spread public." <u>Id.</u> at 1042. The same holds true here, where plaintiff's presentation was from the outset a public event (as opposed to originating from a personnel file), made public by plaintiff's own doing. Moreover, plaintiff does not allege that the government was responsible in any way for the additional public attention the accidental discharge received through wire reports and newspaper articles such as those by the Associated Press and United Press International. In short, plaintiff's own actions made his conduct public, and he cannot now recover under the Privacy Act.

Similarly, this Court in <u>Tripp v. Department of Defense</u>, refused to find a Privacy Act violation for the release of the names, titles, salaries, and salary-levels of public employees because that information is traditionally in the public domain. 193 F. Supp. 2d 229, 236 (D.D.C. 2002). This holding is of particular significance as a comparative matter because by giving his

---

information to which the general public already has access . . . the Privacy Act is not violated."). Moreover, the D.C. Circuit in <u>Pilon</u> carefully limited its holding to the scenario in which non-public information was released to a person with prior knowledge of that information; the court specifically did not address other situations such as the "release [of] a document that has already been fully aired in the public domain through the press or some other means." <u>Id.</u> at 1123 n.10. In short, the D.C. Circuit has not squarely addressed the issue of whether by giving a highly public presentation, a plaintiff loses his ability to recover for a subsequent transmission of that presentation under the Privacy Act's disclosure provisions.

presentation, plaintiff voluntarily took on greater publicity and exposure than most public employees do with respect to their salary and salary-levels. Accordingly, if salaries and salary-levels of public employees are within the public domain and outside of the Privacy Act's disclosure provisions, then certainly plaintiff's voluntary videotaped presentation to a group of parents and children is also outside the ambit of the Privacy Act's disclosure provisions.

Also instructive is <u>Barry v. U.S. Department of Justice</u>, where the court found that an agency's posting a report critical of the plaintiff on the internet – even though some users might encounter the report for the first time on the internet – was not a violation of the Privacy Act. 63 F. Supp. 2d 25, 27-28 (D.D.C. 1999). The court found that due to the prior publicity that a confidential Inspector General report had received (it had already been released to several media organizations, which published news stories describing the contents of the article), an agency's posting of that report on its webpage did not violate the Privacy Act because plaintiff "had no protectable privacy interest in the Report at the time of its posting on the Internet." <u>Id.</u> at 28. Similar to the <u>Barry</u> case, plaintiff here did not have a privacy interest in the substance of the recording, as he had already given his presentation in public, without restrictions on who could attend and without preventing the videotaping of the presentation. For that reason, plaintiff did not have a privacy interest in the presentation, and therefore the alleged release of a recording of that presentation does not constitute a violation of the Privacy Act.

The Tenth Circuit similarly confirms that the disclosure provisions of the Privacy Act do not protect information that has already been made widely public. <u>See</u> <u>Winters v. Bd. of County Comm'rs</u>, 4 F.3d 848, 852 (10th Cir. 1993). In denying a Privacy Act challenge to the monitoring provisions of the Oklahoma Pawnbroker Act, the court explained that:

> The provisions in 5 U.S.C.A. § 552a govern the conditions of disclosure of personal records by a federal agency.  Information disclosed which does not originate from federal agency records enjoys no protection under § 552a(b).

Id.  From this explanation of the law, it is clear that where a plaintiff voluntarily places himself and his actions in the public view, he cannot recover under the Privacy Act's disclosure provisions.  Applied here, that means that because plaintiff's presentation was highly public, and was so as a result of plaintiff's own actions, he cannot recover.

The Fifth Circuit reached a similar conclusion in Ash v. United States, 608 F.2d 178 (5th Cir. 1979).  There, a sailor found guilty of marijuana possession in an open, non-judicial, disciplinary proceeding complained under the Privacy Act about the subsequent publishing of his name, offense, and punishment in the daily bulletin for his command.  Id. at 179.  The court reasoned that the sailor's name, offense, and punishment were available to persons eventually receiving the bulletin due to the open nature of the disciplinary proceeding.  For that reason, release of that information did not violate the Privacy Act.  Id.  Similarly, here, where plaintiff alleges no effort to limit the audience or the recordings of his presentation, he opened it up to the public, and does not state a claim under the Privacy Act's disclosure provisions.  See Fed. Deposit Ins. Corp. v. Dye, 642 F.2d 833, 836 (5th Cir. 1981) (explaining that in the Privacy Act context, "the release of public information to the same 'public' is not a disclosure").

In addition to Privacy Act case law, common law principles support the conclusion that plaintiff does not have protectable privacy interest here.  See Chung v. U.S. Dep't of Justice, 333 F.3d 273, 277 (D.C. Cir. 2003) (relying on the common law tort of invasion of privacy for guidance in interpreting the Privacy Act).  The common law torts for invasion of privacy do not permit recovery for release of information that voluntarily originates in the public domain, as

plaintiff's presentation did.  The <u>Restatement (Second) of Torts</u> makes clear that torts for invasion of privacy protect "the solitude and seclusion of another or his private affairs and concerns," <u>id.</u> § 652B, and guard against the giving of "publicity to a matter concerning the private life of another," <u>id.</u> § 652D.  In addition, the commentary and illustrations following § 652B explain that "A is drunk on the public street.  B takes his photograph in that condition.  B has not invaded A's privacy."  <u>Id.</u> § 652B cmt. c, illus. 6.  The same holds true with plaintiff's presentation, he gave it in public, it was recorded and allegedly released, therefore plaintiff does not have an actionable privacy interest here.  The commentary to § 652D reinforces the conclusion that privacy interests do not attach to information in the public domain: "The rule stated in this section applies only to publicity given to matters concerning the private, as distinguished from the public, life of the individual.  ***There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public.***"  <u>Id.</u> § 652D, cmt. b (emphasis added).  Again, where plaintiff already put himself in the public's view in a highly visible way, he has no protectable privacy interest.

The vitality and in applicability of these common law principles are ratified by more modern decisions.  In <u>Cox Broadcasting Corporation v. Cohn</u>, 420 U.S. 469 (1975), the Supreme Court acknowledged that "even the prevailing law of invasion of privacy generally recognizes that the interests in privacy fade when the information involved already appears on the public record."  <u>Id.</u> at 494-95.  Other courts confirm that privacy interests diminish dramatically, if not entirely, after information is placed in the public domain.  <u>See</u> <u>Dasey v. Anderson</u>, 304 F.3d 148, 154 (1st Cir. 2002) (rejecting claim of a state police officer caught smoking marijuana on videotape because "activity in the presence of others who owe no duty of confidentiality – a

category which includes the subject matter of the videotape – is hardly 'private'"); <u>Bergman v.</u>
<u>Stein</u>, 404 F. Supp. 287, 296 (S.D.N.Y. 1975) (explaining that "the right of privacy does not
protect an individual from the dissemination of information in the public record" and dismissing
invasion of privacy claims based on the publication of information "already in the public
domain").  Under these cases, it is clear, that by making his presentation in a highly public
manner, both by the presence of an audience and a recording device, plaintiff did not have a
privacy interest in his presentation or its recording.

In sum, on their face plaintiff's allegations do not allege a violation of the Privacy Act's
disclosure provisions because plaintiff's his presentation was a highly public event which
received a high degree of publicity.  Accordingly, further disclosure of that information is not
actionable under the Privacy Act.

### CONCLUSION

For the foregoing reasons, plaintiff does not state a claim for relief, and defendant's
Motion to Dismiss should be granted.

Dated: October 10, 2006                          Respectfully submitted,

                                                 PETER D. KEISLER
                                                 Assistant Attorney General

                                                 JEFFREY A. TAYLOR
                                                 United States Attorney

                                                 ELIZABETH J. SHAPIRO
                                                 Assistant Branch Director

                                                   /s/ Peter J. Phipps_____
                                                 PETER J. PHIPPS
                                                 United States Department of Justice

10

Civil Division, Federal Programs Branch
Tel: (202) 616-8482
Fax: (202) 616-8470
peter.phipps@usdoj.gov

<u>Mailing Address:</u>
Post Office Box 883
Washington, D.C.  20044

<u>Courier Address:</u>
20 Massachusetts Ave., N.W.
Washington, D.C. 20001

Attorneys for Defendant

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the Defendant's Motion to Dismiss Pursuant to Rule

12(b)(6) and the attached Memorandum in Support and the Proposed Order have been filed

electronically and served by prepaid first-class U.S. mail this 10th of October 2006, on the

following persons:

> Mr. Lee Paige
> 2018 Watermere Lane
> Windermere, FL 34786
> (407) 876-0948


                                   /s/ Peter J. Phipps
                                   Peter J. Phipps