UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**LEE PAIGE**

      **Plaintiff,**

v.                                                 **CASE NO.:   06-644 (EGS)**

**U.S. DRUG ENFORCEMENT ADMINISTRATION;**
**UNITED STATES OF AMERICA,**

      **Defendant.**
_____/

## AMENDED COMPLAINT

Plaintiff, Lee Paige, complains of the Defendants, the U.S. Drug Enforcement Administration and the United States of America, as follows:

1. This action arises under the Privacy Act, 5 U.S.C. 552a; the Federal Tort Claims Act, 28 U.S.C. 2671, et seq; and 28 U.S.C. §§ 1331 and 1346(b); as hereinafter more fully appears.

2. The U.S. Drug Enforcement Administration ("DEA") is an agency within the United States Department of Justice and both are agencies of the United States of America.

3. Plaintiff, Lee Paige, is a resident of Orange County, Florida. Prior to becoming a Special Agent with the DEA, Mr. Paige was a highly respected football player for Florida State University and played professional football for both the Tampa Bay Buccaneers and the Tampa Bay Bandits. Mr. Paige was subsequently a Corrections Officer at Polk Correctional Institution, a Florida State Prison, and a Deputy Sheriff with the Hillsborough County Sheriff's Office in Tampa, Florida.

4. In 1990, Mr. Paige became a Special Agent with the DEA. From approximately April, 1990 to July 1999, he was assigned to the Tampa District Office; from July 1999 to July

2003 to the Nassau Country Office; and from July 2003 to the present to the Orlando District Office. During his career with the DEA, Mr. Paige has been a very effective Special Agent and was frequently involved in dangerous assignments, including several involving life-threatening situations. For example, Mr. Paige spent a substantial part of his career at the DEA working in an undercover capacity and was once regarded as one of the best undercover agents, if not the best, in the DEA. On at least seven occasions he was subjected to armed confrontations and had to be rescued by other agents on two of these occasions. On another occasion, an informant for Mr. Paige was apparently murdered by member(s) of a Columbian drug cartel who then threatened to kill Mr. Paige unless he paid six million dollars to the cartel.

5. In addition to his undercover activities, Mr. Paige has served as the Assistant Demand Reduction Coordinator for the DEA Miami Field Division and with the High Intensity Drug Trafficking Area Heroin Overdose Unit. He was also the spokesman for the United States Ambassador in Nassau, Bahamas with respect to the DEA and drug related issues and served as a member of the Bahamas National Drug Council/Coalition for a drug-free Bahamas with whom he organized numerous drug-prevention programs. Through his duties involving the DEA Demand Reduction program, Mr. Paige was a highly regarded and frequently requested educational and motivational speaker on drug education, drug prevention and law enforcement techniques to many organizations, including schools, charitable organizations, little league teams, college and professional football teams, law enforcement agencies and numerous businesses. On information and belief, the DEA Special Agent in Charge of the DEA Divisional Office in Miami was eligible to receive a bonus based in part on those presentations.

6. On April 9, 2004 Mr. Paige was making a drug education presentation to children as part of a class arranged by the Orlando Youth Minority Golf Association in Orlando, Florida.

This presentation was a private event to which children served by the association, their parents and various individuals involved with the association were invited. There were approximately 50 people at the presentation and there was no one present from the press. Part of this presentation involved Mr. Paige showing his firearm to the children and speaking to them about gun safety. Seconds after Mr. Paige warned the children that he was the only person that he knew of in the room professional enough of to carry the firearm, the firearm accidentally discharged, wounding Mr. Paige.

7. At the time of the aforesaid accidental discharge, Mr. Paige's presentation was being videotaped by a private videographer. After the accidental shooting, Mr. Paige called his wife from the emergency room and told her to tell Walter Walker, a DEA agent, to make sure that he obtained the videotape of the accidental shooting so that it would not become public. Mr. Walker obtained the videotape, which was the only video and audio recording of the accidental discharge, and took it into the DEA's custody. The Assistant Special Agent in Charge of the DEA Orlando, Florida office, Steve Collins, ordered that no copies be made of the videotape and that it be sent directly to headquarters in Washington, D.C. No copies were to be made of the videotape and it was not to be made public because, in part, it was part of a classified DEA investigation.

8. Later, the videotape was returned to the videographer, but the video and audio portions of the accidental discharge had been removed from the videotape and kept by the DEA. Consequently, at all the material times, the DEA had exclusive control of the only video and audio recording of the accidental discharge.

9. After the videotape of the accidental discharge was in the exclusive control of the DEA, employees and agents of the DEA, whose identities are presently unknown to Mr. Paige,

improperly, illegally, willfully and/or intentionally disclosed the videotape of the accidental discharge to other individuals within the DEA as well as to individuals and/or entities outside of the DEA. Mr. Paige never consented to any such disclosure by the DEA of the video and audio recording of the accidental discharge. A copy of the portion of the videotape of the accidental discharge which was improperly disclosed is being separately filed as an Attachment to Amended Complaint and is incorporated herein.

      10. As a result of the improper disclosure by the DEA of the videotape of the accidental discharge, the videotape of the accidental discharge became widely circulated on the internet, both in the United States and overseas, and has appeared on a large number of websites. GOOGLE reflects, for example, approximately 347,000 hits on "DEA Agent Shoots Himself." Audio and video from the videotape were also widely broadcast worldwide on various radio and television shows. For example, the videotape of the accidental discharge has been broadcast, *inter alia,* on the Jay Leno Show, a Current Affair, Jimmy Kimmel Live, CNN Headline News, CNN News, Fox News and VH1: Show "Webjunk20" (regarding "Volume 1 Stupid Cops"). VH1 ranked the videotape of the accidental shooting as the twentieth most viewed video on the internet for 2005. Typically, the videotape of the accidental discharge has been broadcast, presented or disclosed to others for purposes of amusement and to demean and to ridicule Mr. Paige, especially in light of the accidental discharge occurring at virtually the same time that Mr. Paige told his audience that he was the only person in the room sufficiently professional enough to carry the firearm.

      11. As a result of the improper disclosure by the DEA of the videotape of the accidental discharge and the resulting wide publicity, which included Mr. Paige's identity and distinctive appearance, Mr. Paige's safety has been jeopardized to the point that he has not been

4

able to, and he has been directed by the DEA not to, work as an undercover agent or to give educational or motivational speeches and presentations. In addition, other DEA agents have felt uncomfortable and have expressed concern for their safety if they work with Mr. Paige because the release of the videotape and resulting publicity has made Mr. Paige recognizable to individuals who have been or who are involved in the illegal drug trade.

12.     As a result of the improper disclosure by the DEA of the videotape of the accidental discharge, Mr. Paige became and is the target of jokes, derision, ridicule and disparaging comments. Mr. Paige has also been subjected to such comments made to his wife and children. Mr. Paige has been frequently confronted with embarrassing and humiliating comments from people both inside and outside the United States about the accidental discharge, including, *inter alia,* by people at restaurants, grocery stores and airports. White supremacy organizations have used the videotape to ridicule black Americans in general and Mr. Paige in particular.

13.     Mr. Paige has hired attorneys, including the undersigned counsel, and has and will incur legal fees and costs to bring and to pursue this action.

## **COUNT I**

14.     Plaintiff realleges paragraphs 1-13.

15.     At all material times, the video and audio recording of the accidental discharge was a record pertaining to Mr. Paige which was contained in a system of records as defined by 5 U.S.C. 552a.

16.     The foregoing improper disclosure of the videotape of the accidental discharge to other individuals within the DEA as well as to individuals and/or entities outside the DEA was in violation of 5 U.S.C. § 552.

17. As a direct and proximate result of the improper conduct of the DEA through its agents and employees, as alleged above, Mr. Paige has suffered past and will suffer future damages, including but not limited to emotional and mental pain and suffering, mental anguish, loss of enjoyment of life, loss of reputation, loss of opportunity, loss of money, embarrassment, humiliation and anxiety.

WHEREFORE, plaintiff demands judgment against the United States Drug Enforcement Administration for damages, attorney fees, interest, costs, and for such a relief as this court deems just and proper.

## **COUNT II**

18. Plaintiff reallages paragraphs 1-12 and 15.

19. Before this Amended Complaint was filed, the claim set forth in this count was presented to the DEA on or about April 7, 2006. The DEA has neither denied nor accepted the claim.

20. The acts and omissions complained of occurred at the DEA, which is an agency of the United States government. If the DEA were a private person, it would be liable to Plaintiff in accordance with the law of the place where the aforesaid improper acts or omissions occurred.

21. At all times material herein, the DEA's employees and agents involved in the foregoing improper disclosure of the videotape were all acting within the scope of their employment with the DEA.

22. The foregoing improper disclosure of the videotape of the accidental discharge to other individuals within the DEA as well as to individuals and/or entities outside the DEA was an invasion of Mr. Paige's right of privacy, in that it was a public disclosure of private facts and placed him in a false light in the public eye. The improper disclosure by the DEA of the

videotape of the accidental discharge constituted a publication of private facts, for which there was no waiver or privilege, which would be highly offensive to a reasonable person of ordinary sensibilities and are not a legitimate concern to the public.  In addition, the improper disclosure placed Mr. Paige in a false light, and the DEA acted knowingly or in reckless disregard as to the false light in which it would place Mr. Paige. .

23. As a direct and proximate result of the improper conduct of the United States of America through its agents and employees, as alleged above, Mr. Paige has suffered past and will suffer future damages, including but not limited to emotional and mental pain and suffering, mental anguish, loss of enjoyment of life, loss of reputation, loss of opportunity, loss of money, embarrassment, humiliation and anxiety.

WHEREFORE, plaintiff demands judgment against the United States of America for damages, interest, costs, and for such a relief as this court deems just and proper.

Respectfully submitted,


S/Ward A. Meythaler
Ward A. Meythaler

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 22, 2006, I e-mailed and mailed the foregoing to the Clerk of the Court and mailed the foregoing by U.S. Mail to:

Peter J. Phipps
United States Department of Justice
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044

                                           <u>s/Ward A. Meythaler</u>
                                           Ward A. Meythaler
                                           Florida Bar No.: 0832723
                                           Merkle & Magri, P.A.
                                           550 North Reo Street, Suite 301
                                           Tampa, Florida 33609
                                           TEL: (813) 281-9000
                                           FAX: (813) 281-2223
                                           wamsecy@merklemagri.com