I am Victor Wright. This is my report in the case entitled Lee Paige v. United States Drug Enforcement Administration (Case No. 06-00644-EGS). My CV is attached.

I have not authored any publications within the preceding ten years. I have not testified as an expert in a trial or by deposition within the preceding four years.

I charge $125.00 per hour for my assistance in this case.

My opinions in this case are as follows:

1. It is my opinion that the disclosure of the video-tape of the accidental discharge involving Lee Paige to someone outside the DEA must have been done intentionally and willfully by someone within the DEA. In reaching this opinion, I conducted an interview with Lee Paige and reviewed various documents, including parts of the Information Resources Management DOJ Order 2880.1A (DEA 1476-1503); Planning and Inspection Manual (DEA 1512-1513); DEA Agent's Manual (DEA 1514-1523); September 15, 1998 memorandum regarding "Conduct of Drug Enforcement Administration Employees" (DEA 1535-1538); DEA Personnel Manual, 2735.15 (DEA 1540); October 20, 2006 Chief Inspector's Bulleting (DEA 1544-1546); October 12, 2006 memorandum re "Personally Identifiable Information" (DEA 1547); July 10, 2006 memorandum re "Privacy and Safeguarding of Personally Identifiable Information" (DEA 1548-1549); Appendix A (2735 Employee Responsibilities and Conduct) (Standards of Conduct) (DEA 1572-1592); Appendix 2735 (DEA 1593-1601); DEA Personnel Manual (DEA 1540); June 2, 1994 memorandum re "Policy: Control and Decontrol of DEA Sensitive Information (DEA 1961-1968); September 8, 1998 memorandum re "Release of DEA Investigative Report and Information" (DEA 1968-1972); DEA Information Technology Rules of Behavior (DEA 1973-1993); and The DOJ Computer Security Awareness Training Manual (DEA 2015-2124). These documents are not attached hereto since they are voluminous and were originally provided by the DEA.

The basis for my opinion that the disclosure of the video-tape was intentional and willful is as follows. First, I have assumed that the video-tape of the accidental discharge was at all relevant times within the exclusive possession of the DEA before it was disclosed to someone outside the DEA. The transmission of the video-tape to someone outside the DEA would require several distinct, intentional physical steps. One of the ways in which the video-recording could be disclosed to someone outside the DEA would be for someone to transmit it over the DEA Firebird system to an e-mail address outside the Firebird system. Similarly, the video-recording could be sent from a freestanding computer at DEA to an e-mail address outside of the DEA. In either case, in order to send the video-tape, the person sending the video-tape would have to log in to the computer using a password and an identifier to obtain access to an e-mail system. The person would then need to open up the outlook e-mail software. Then the person would have to type in the e-mail address of the recipient and possibly the subject matter as well. The person would then typically type a message to alert the recipient as to the contents of the attachment that is to be sent to provide a reason to the recipient to open the attachment. Then, the person would need to click on the "insert" file or "attach" file functions. The person would need to search for and identify the file that the person wanted to attach to the e-mail. After the file is located, the person would then have to click on the file to be sent. An attachment symbol would then appear

on the attach box of the e-mail to be sent. At that point, the sender would need to click "send" to send the e-mail with the attachment.

If the file to be sent, in this case the video-tape, is not in a file in a local computer, the sender would also have to go through the steps of going into a workstation that has the file and look for, locate and obtain the file from that source. Another alternative is that the person could obtain a CD containing the video-tape. However, the person would have to physically locate and obtain the CD, put the CD in the computer, then locate the CD on the computer, and then attach the information on the CD to the e-mail. However, this process is time-consuming and sometimes results in poor attachments. The more typical way of sending the information on a CD, after obtaining and putting the CD in the computer, would be to download the CD to the computer itself. This is done by opening the CD, highlighting the information on the CD to be downloaded and then pasting it on the computer's hard drive. The information on the hard drive is then added to the e-mail as an attachment as described above.

The person disclosing the video-tape could also disclose the video-tape from a computer outside the DEA. To do this, the person would have to send the video-tape from a DEA computer to a computer outside the DEA system, as described above, and then forward the video-tape to someone else from the computer outside the DEA in the manner described above. In addition, the person disclosing the video-tape could take a CD from the DEA and then physically give the CD to someone outside the DEA or send it to someone outside the DEA from a computer outside the DEA following the same steps discussed above. Alternatively, the person could download the video-tape to a "thumb" drive. To do this, the person would have to obtain a thumb-drive device, attach it to the computer, then perform the several functions necessary to transfer the information to the thumb-drive, and then take the thumb-drive home to another computer outside the DEA and then send the video-tape to another party or give the thumb-drive itself to another party.

In addition to the foregoing, I am aware that DEA computers have banners indicating that information on the DEA computer is "DEA sensitive," which would have the effect of warning the user to be careful not to send information on the computer to an outside party. Moreover, the documents I have seen, including those mentioned above, emphasize the need for care with respect to DEA sensitive information and information subject to the Privacy Act or personally identifiable information. In addition, I have seen documents indicating and have spoken to Lee Paige about the fact that DEA agents are trained to be careful with respect to transmitting DEA sensitive and other information.

2.  I conducted a search of information on the internet concerning Lee Paige and the accidental shooting. Basically, a search was done through various search engines, including Google, Lycos, Altavista, Netscapes, Momma.com, Copernic, AOL search, MIVA, MSN web search and MSN live and various websites identified by the search engines.

I found 8,672,114 "hits" with respect to Lee Paige or the accidental shooting on the aforesaid search engines and various linked websites as of October 15, 2007. A hit represents each instance in which someone clicked on one of the aforesaid search engines or a website linked to one of the search engines which I researched. This number does not include hits that

are not recorded or no longer stored or kept by the server or webmaster of the website. In addition, my search cannot determine the number of blogs or copies of the video-tape which were forwarded by end-users to other end-users and subsequently viewed or e-mail to other end-users. My search would also not record hits on the video-tape when it was an attachment to a website. Further, I did not research all relevant websites linked to the search engines because the number of websites was voluminous.

_____
Victor Wright

**Victor Bernard Wright**
8212 Ravencroft Dr, Tampa, Fl 33615
813-486-0638
victor@wricom.com

SKILLS SUMMARY

More than 10 years of experience in system analysis and programming for a variety of companies and charter schools. Strong background in user training and support documentation. Experience in major network design, operating hardware and software.

EXPERIENCE

**Wricom Business Solutions**                                                                              1/04-Present
*Senior Systems Analyst, Sales Administration and Program Development*
- Experienced in system-operations training, collections, and customer service.
- Design and implement network integration and wireless schematics.
- Knowledge of PC setup and installation, as well as various peripherals, data entry, and file updating.
- VOIP setup and remote network administration.

**Complus Data Services**                                                                                  6/02-12/04
*Network Engineer*
- Provide technical support for Complus Data Clients.
- Provided support for JSA Healthcare with wiring, and infrastructure setup for every new center acquired.
- Served as liaison between system users and technical support group.
- Trained field system users.
- Supported Companies such as Merrill Lynch, and Medical Offices via locally and remote.

**Delta International Computers**                                                                          1/02-12/04
*Senior Sales and Technical Support*
- Performed system maintenance programming.
- Wrote computer system procedure specifications and user manuals.
- Assisted in training and supervising staff in all operations.
- Designed and supervised in computer build and repair. Supported tech support related issues to reseller.

SYSTEMS PROFICIENCY

**Hardware**
MS Operating Systems and Diagnostics

**Programming Languages**
SQL 2000, Server 2000, IBM ASSEMBLER

**PC Software**
MS Operating systems, SQL 2000, C++

EDUCATION

**B.S., Computer Information Systems/Management Information Systems**                                      2000
*St.Leo University, Tampa, Florida*
3.5 GPA