UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

LEE PAIGE,

    Plaintiff,

v.                                          CASE NO.: 01:06-cv-0644

UNITED STATES DRUG
ENFORCEMENT ADMINISTRATION, et al.

    Defendants.
_____/

**PLAINTIFF'S RESPONSE TO THE GOVERNMENT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

The Government has filed a motion for partial judgment on the pleadings. This is plaintiff Lee Paige's response in opposition to that motion.

**REQUEST FOR ORAL ARGUMENT**

At first blush, it appeared from the Government's memorandum that the Government's position was well taken and the undersigned so indicated at the recent status hearing. However, after analyzing applicable case law, it now appears that the Government's position is not well-taken. Basically, the Government is relying on labels and not substance.

The court indicated at the status hearing that it may well roll this issue into the dispositive motions that are to be filed and have oral argument on the motions. Since the instant issue is not as straight forward as it appears in the Government's memorandum, it is requested that this issue be resolved with other dispositive motions and that the court hear oral argument on all issues.

**SUMMARY OF THE CASE**

Mr. Paige is a DEA agent who had been highly successful working as an undercover agent, including assignments which were particularly dangerous. He was also a highly-regarded

drug-education speaker for the DEA. On April 9, 2004, Mr. Paige gave a drug-education presentation to youths and their parents at a meeting of a private organization for minority youth in Orlando, Florida. His presentation was part of a meeting which also included lectures and remarks on other subjects by other speakers. The meeting was video-recorded by a parent of one of the youths involved in the organization. During his presentation, Mr. Paige accidentally shot himself during his comments about gun safety. The accidental discharge occurred precisely as Mr. Paige told the audience that he was the only person he knew in the room professional enough to carry the firearm. The videotape of the presentation was taken into custody as evidence by the DEA shortly after the incident and before the meeting had ended. In other words, the DEA had exclusive possession of the video-recording before anyone could view or copy the video-recording.

The DEA's Office of Inspections is responsible for investigating, *inter alia,* all DEA shootings in which a DEA agent is injured. As usual, the Office of Inspections conducted an investigation of Mr. Paige's accidental discharge. The video-recording was part of the Office of Inspection's investigative file. For security reasons, the investigative file was to be kept under lock and key. The video-recording was "DEA sensitive" and was not to be disclosed to anyone, even within the DEA, who did not have a need to see it.[1] Indeed, Mr. Paige himself was not permitted to have a copy of the video-recording. There does not appear to have been any need for the DEA to have made more than a couple of copies for purposes of the investigation and review of the accidental discharge. Further, following investigation and review of the incident by the appropriate officials, copies of the video were to be destroyed. A preliminary

---

[1] A copy of the video-recording was later returned to the private organization which held the meeting, but the accidental discharge portion of the video-recording was redacted by the DEA from that copy so that the portion of the video-recording containing the shooting would remain private.

2

investigation of the improper disclosure of the video-recording was initiated by the Office of Inspections followed by a formal investigation by the DEA's Office of Professional Responsibility after the video-recording of the shooting appeared on the internet because the video-recording of the shooting was not to have been disclosed.

Discovery has revealed a massive violation of DEA rules and procedures in that over twenty copies, and possibly over thirty copies, of the accidental discharge portion of the video-recording were made by DEA agents and employees.  It appears that most of these copies were improperly distributed to others within the DEA. Further, the DEA cannot presently account for most of the copies. One of the DEA agents who first caused improper copies of the video-recording to be made had a known animus towards Mr. Paige; attempted to improperly give Mr. Paige a job performance review which would have jeopardized his career; and even pointed a firearm at him.  One of the copies which this DEA agent caused to be made (or a copy of such a copy) ultimately ended up being widely distributed over the DEA's Firebird system, which is essentially the DEA's self-contained internet system.

Someone at the DEA also disclosed the accidental discharge portion of the video-recording to the public outside the DEA.  The video and sound tracks of the leaked video-recording were ultimately widely published on national television and radio shows and has become one of the most widely watched video in the world on the internet.  This has resulted in enormous, worldwide publicity of the incident which jeopardized Mr. Paige's safety to the point that the DEA directed that he no longer work undercover or do drug education presentations. Further, the publicity from the videotape has been highly embarrassing and demeaning to Mr. Paige and his family and has resulted in extensive damages to Mr. Paige.  For the most part, the video-recording has been used as entertainment to provoke laughter and to ridicule Mr. Paige,

3

particularly as a result of the irony of Mr. Paige having an accidental discharge just as he states that he is the only one professional enough in the room to carry firearms. The video-recording has also been the subject of almost unbelievably mean and crude comments directed at Mr. Paige on blog sites, including blatantly racist remarks. It should be noted that Mr. Paige has spent a good deal of his life enforcing drug laws and making Demand Education Presentations, especially to children, to reduce the drug problem in this country. He has undertaken extremely dangerous undercover assignments and has been subjected to several armed confrontations. For example, plaintiff will introduce at trial a surveillance film showing Mr. Paige being held with a gun pointed at his head by a drug dealer before he was rescued by other DEA agents. Interestingly, the DEA would not permit Mr. Paige to show this film during a media interview at which Mr. Paige was attempting to mitigate the enormous damage to him by the disclosure of the video-recording of the accidental discharge. Ironically, the DEA's excuse for not allowing Mr. Paige to show a video which reflected his courageous efforts as an undercover agent was that it was purportedly covered by the Privacy Act.

## **THE PLAINTIFF'S AMENDED COMLAINT**

Mr. Paige originally filed a one-count Complaint alleging a violation of the Privacy Act. The Government filed a motion to dismiss Plaintiff's claim under the Privacy Act. That motion was denied.

Mr. Paige had also filed an administrative claim for invasion privacy pursuant to the Federal Tort Claims Act ("FTCA"). After exhausting the relevant FTCA administrative procedures, Mr. Paige amended his complaint to add a second count under the FTCA for invasion of Mr. Paige's right to privacy. The FTCA, 28 U.S.C. § 1346(b)(1), waives sovereign immunity and grants the district courts' jurisdiction over tort claims against the United States

4

"under circumstances where the United States, if a private person, would be liable to the claimant in accordance with a law of the place where the act or omission occurred."

In *Cason v. Baskin,* 155 Fla. 198, 20 So.2d 243 (1944), the Florida Supreme Court recognized the tort of invasion of privacy as a distinct cause of action in Florida. In *Allstate Insurance Co. v. Ginsberg,* 863 So2d 156, 162 (Fla. 2003) (quoting *Agency for Health Care Admin. v. Associated Indus. of Fla., Inc.,* 678 So.2d 1239, 1252 n. 20 (Fla. 1996)), the supreme court noted that there are four types of wrongful conduct that can be remedied through an action for invasion of privacy. These are:

> (1) appropriation – the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion – physically or electronically intruding into one's private quarters; (3) **public disclosure of private facts** – the dissemination of truthful private information which a reasonable person would find objectionable; and (4) **false light in the public eye** – publication of facts which place a person in a false light even though the facts themselves may not be defamatory. [emphasis added]

*See also Heekin v. CBS Broadcasting, Inc.,* 789 So.2d 355, 358 (Fla. 2nd DCA 2001) (citing *Agency for Health Care Admin. v. Associated Indus. of Fla., Inc., supra,* and recognizing the "four [aforesaid] types of wrongful conduct that can be remedied through an action for invasion of privacy.") These four categories of invasion of privacy are the ones recognized by Prosser in his Law of Torts. *Rapp v. Jews for Jesus, Inc.,* 944 So.2d 460, 467 (Fla. 4th DCA 2006).

Count II of the Amended Complaint in this case sets forth two of the foregoing types of wrongful conduct that can be remedied through an action for invasion of privacy. These include numbers 3 ("public disclosure of private facts") and 4 ("false light in the public eye") above.

**Public Disclosure of Private Fact**

The elements of the tort of invasion of privacy by "public disclosure of private facts" "can be summarized as 1) the publication, 2) of private facts, 3) that are offensive, and 4) are not

of public concern." *Doe v. Univision Television Group, Inc.,* 717 So.2d 63, 64 (Fla. 3 DCA 1998); *Cape Publications, Inc. v. Hitchner,* 549 So.2d 1374, 1377 (Fla. 1989). Here, the invasion of privacy through the "public disclosure of private" facts is based on, *inter alia,* the fact that the video-recording of the accidental discharge was taken and would normally have been maintained by the DEA in such a manner as to keep it private. There is no doubt that the video-recording was published and that the publication was offensive. While the fact of an accidental discharge by a police officer at a drug-education program for youths may well be a matter of legitimate public concern, the actual film of that incident was not a matter of legitimate public concern, especially since Mr. Paige was an undercover drug agent and the videotape was unduly damaging to him.

## False Light

A claim for false light invasion of privacy is not based on the disclosure of private facts. A false light claim "involves the publication of facts which place a person in a false light even though the facts themselves may not be defamatory." *Allstate Insurance Co.,* 863 So.2d at 162. The false light claim here was made in an abundance of caution and is based on the theory that if the dissemination of the video-recording was not an improper "public disclosure of private" facts, then it was an invasion of privacy because dissemination of the video-recording, although truthful and not libelous or slanderous, placed him in a false light. Obviously, the primary misconduct at issue under Count II is the "public disclosure of private facts," not the "false light" issue, since the video-recording was "private" and should not have been disclosed at all.

## Certain Defenses

The Defendants' answer to the Amended Complaint sets forth a number of defenses. Some of these, particularly those directed at the issue of damages, will need to be determined at

trial. For example, the Government asserts, *inter alia,* that Plaintiff failed to mitigate his damages and increased the level of publicity that the video-recording received by making various media appearances showing the filing of his lawsuit.[2] The Government has also asserted that the Plaintiff's action is barred by the doctrine of unclean hands and that Plaintiff is estopped from seeking recovery because, according to answers to interrogatories, "Plaintiff was in the wrong with respect to the accidental discharge on April 9, 2004." In this connection, the Government has served an expert report asserting that Mr. Paige exercised substandard care with respect to his handling of the firearm during his presentation. Further, the Government has asserted that Mr. Paige's action is barred by the doctrine of injury by fellow servant and that Mr. Paige may not obtain emotional damages under the Privacy Act. Since there is no basis in the law for such defenses, Mr. Paige intends to file a motion for partial summary judgment on these issues and may also file a motion for summary judgment on the issue of liability.

## THE GOVERNMENT'S MOTION

The Government's motion for partial judgment on the pleadings does not seek judgment with respect to Count I. Further, it does not seek judgment as to Count II with respect to the theory of invasion of privacy through the "public disclosure of private facts." The Government's motion only seeks judgment insofar as Count II alleges misconduct based on invasion of privacy under the theory of "false light in the public eye."

## DISCUSSION

Some uncertainty has arisen in Florida concerning a false light invasion of privacy claim. As pointed out above, the Florida Supreme Court has at least tacitly acknowledged a false light

---

[2] In fact, Mr. Paige only agreed to certain interviews in an effort to mitigate the enormous damage which he had suffered and was suffering as a result of the disclosure by the DEA of the video-recording in the first instance. Mr. Paige sought permission from the DEA before making any such appearances, which was granted with various conditions which were observed by Mr. Paige.

7

claim. At least one Florida court of appeal has specifically recognized a false light claim. *See Heekin v. CBS Broadcasting,. Inc., supra.* At least three other Florida courts of appeal have at least tacitly recognized a false light invasion of privacy claim and none have repudiated such a claim. *See* discussion in *Gannett Co., Inc. v. Anderson,* 947 So.2d 1, 4-7 (Fla. 1st DCA 2006); *Rapp v. Jews for Jesus, Inc.,* 944 So.2d 460, 467-469 (Fla. 4th DCA 2006). Although recognizing that the Florida Supreme Court has tacitly recognized the cause of action, the court in *Rapp* contended that the Florida Supreme Court "has never expressly held that an action for false light invasion of privacy is cognizable in Florida courts." *Id.* at 468. The court in *Rapp* also asserted that the cause of action "remains the subject of heated debate among judges and legal scholars"; and that if it were "writing on a blank slate," it would be inclined to reject the cause of action. *Id.* Consequently, the *Rapp* court certified the questions to the Florida Supreme Court of whether Florida recognizes the tort of false light invasion of privacy, and if so, are the elements of the tort set forth in Section 652E of Restatement (Second) of Torts. The Florida Supreme Court granted certiorari concerning the issue and the case is presently pending. *See Rapp v. Jews for Jesus, Inc.,* 963 So.2d 702 (Fla. 2007).

    Notwithstanding any of the above, if the United States has not waived sovereign immunity with respect to a false light privacy claim, the existence of such a claim under Florida law would be unavailing. The FTCA sets forth various exceptions to the waiver of sovereign immunity at 28 U.S.C. §2680(h). "Claims that fall under one of the exceptions to the FTCA must be dismissed for lack of subject matter jurisdiction." *Edmonds v. U.S.,* 436 F.Supp.2d 28, 35 (D.D.C. 2006). "Under one such exception, the FTCA exempts from its waiver of sovereign immunity any claim 'arising out of' libel or slander. 28 U.S.C. §2680(h)." *Id.*

The controversy concerning false light claims both under Florida state law and the FTCA is that they sometimes duplicate a cause of action for defamation. For example in *Gannett,* 944 So.2d at 468, a Florida court stated the following:

> One reason that is often given for rejecting the false light cause of action is that it duplicates a cause of action for defamation while allowing the plaintiff to escape the strict requirements that are designed to ensure freedom of expression.

Similarly, the D.C. District Court has stated that false light claims are barred by the FTCA's libel and slander exception. In *Edmonds,* 436 F.Supp. 2d at 35, the court stated, "Courts consistently have held that claims for 'false light' invasion of privacy are barred by the libel and slander exception." *Id.* The court cited *Johnson v. Sawyer,* 47 F.3d 716, 732 n.34 (5th Cir. 1995) and *Metz v. United States,* 788 F.2d 1528, 1535 (11th Cir. 1986) for this proposition.

On the other hand, in *Kugel v. United States,* 947 F.2d 1504, 1508 (D.C. Cir. 1991), the D.C. Circuit stated that "a claim of false light invasion of privacy may be cognizable under the FTCA." While these cases may appear to be potentially inconsistent, they are reconcilable and the cases relied on by the Government are inapplicable.

In Florida, a false light claim may be based on facts that are true or facts that are untrue. For example, in *Heekin,* 789 So.2d at 358, the court stated:

> Three of the four types of invasion of privacy do not reference any type of false information or defamation. Only false light invasion of privacy contemplates any issue of falsehood; and even then, the tort may exist when the facts published are completely true.

Thus, there are essentially two types of false light claims: one where the facts are true and one where the facts are untrue or defamatory (i.e. libelous or slanderous). The court in *Heekin* recognized this difference in determining which statute of limitations to apply. In general, the court held that since "no defamation is required to prosecute an action for invasion of privacy, the [shorter] statute of limitations for defamation actions does not apply to invasions of privacy

9

actions." *Id.* At 358.  However, the court also held that in false light cases based on the publication of the same false facts as a cause of action for libel or slander, the shorter statute of limitations for defamation would apply.  The court then observed that the plaintiff had alleged that "the publication of truthful, non-defamatory facts was done in such a manner as to cast him in a false light in the public eye." *Id.*  In short, according to the court, the plaintiff there did "not have a libel or slander action that was simply renamed as an action for false light invasion of privacy."  As a result, the court applied the non-defamation statute of limitations to the false light claim.

The false light claim in the instant case, as in *Heekin,* does not allege defamation or any untrue facts.  Rather, it alleges the publication of truthful, non-defamatory facts in such a manner as to cast Mr. Paige in a false light.  Consequently, the false light claim here is not a recast defamation claim, should not be treated as a defamation-type claim, and is not subject to the FTCA libel and slander exception.

The cases relied on by the Government involved <u>false and defamatory</u> statements, not truthful non-defamatory facts, that placed the plaintiff in a false light.  For example, in *Edmonds* the court described the claims as "based on dissemination of defamatory information." *Edmonds,* 436 F.Supp. at 35.  *Edmonds* relied on *Johnson v. Sawyer, supra.* and *Metz v. United States, supra.*  In *Johnson* the court indicated that the false light claim would be actionable under Texas <u>libel</u> law and that, in any event, Texas did not recognize the tort of false light invasion of privacy in any event.

Similarly, the court in *Metz* found that the "governmental statements complained of constitute[d] slander" and were therefore barred under the FTCA.  *Metz* is particularly interesting because it relied on the analysis of the United States Supreme Court in *Block v. Neal,* 460 U.S.

10

289, 103 S.Ct. 1089 (1983) to determine whether the libel and slander exception in the FTCA should apply.  In *Block,* the Supreme Court focused on what was "essential" to the plaintiff's claim in determining whether one of the FTCA exceptions applied.  103 S.Ct. at 1094. Following the analysis, the court in *Metz* noted that "slanderous statements" were "essential" to plaintiff's false light privacy claim in that case.  *Id.* At 1535.  Since the "slanderous statements" were an essential element of the false light claim in that case, the court held that the claim "[arose] out of slander" and was therefore not actionable under the FTCA.  Similarly, the false light claim in *Hobdy v. United States,* 762 F.Supp. 1459 (D. Kansas 1991) was also based on "defamatory or slanderous statements" which the court found to be "an essential element to plaintiff's claim of false light privacy" in that case.  In *Bosco v. United States Army Corp of Eng'rs,* 611 F.Supp. 449 (N.D. Tex 1985), the court found that the substance of the plaintiff's claim was defamation, especially since the court noted that the plaintiff's false light allegations were the same as those set forth in the plaintiff's libel and slander claims.

Unlike the cases cited by the Government, allegations of false, defamatory, slanderous or libelous statements are not an essential element of the false light claim here.  Indeed, there are no alleged untrue, false, slanderous or libelous statements in the instant case. The video-recording that was disclosed was a true and accurate recording of the accidental discharge.  Since the disclosed information (i.e. the video-recording) does not involve slanderous or libelous statements, the libel and slander exception in § 2680(h) cannot apply.  It is not the label which determines whether a claim is actionable under the FTCA, but the essential elements and substance of the claim.  *See also Edmonds,* 436 F.Supp. 2d at 35 (the label of "a pleading does not determine the nature of the cause of action.")[3]

---

[3] Further, the nature of the injury asserted cannot determine the claim.  As the court stated in *Hobdy,* 762 F.Supp. at 1462, "such a distinction [i.e. emotional versus reputational damages] is without a difference because the true focus

11

**CONCLUSION**

The false light claim here involves truthful, non-defamatory information. Defamatory or slanderous statements are not an essential element of the particular false light claim here. Consequently, the libel and slander exception in the FTCA is inapplicable. The cases cited by the Government actually demonstrate that the particular false light claim here does not fall within the FTCA exception for libel and slander.

Respectfully submitted,

S/Ward A. Meythaler
Ward A. Meythaler

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 22, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Peter J. Phipps
United States Department of Justice
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044

s/Ward A. Meythaler
Ward A. Meythaler
Florida Bar No.: 0832723
Merkle & Magri, P.A.
5415 Mariner Street, Suite 103
Tampa, Florida 33609
TEL: (813) 281-9000
FAX: (813) 281-2223
wamsecy@merklemagri.com

---

in determining whether a claim is barred depends upon an evaluation of the circumstances from which the claim arose." Further, Florida law permits both emotional and reputational damages for any invasion of privacy claim. *See Cason v. Baskin,* 30 So.2d 635, 640 (Fla. 1947).

12