# Memorandum



| | |
|---|---|
| Subject<br>Midyear Progress Review/Interim Evaluation<br>(FFS: 570-13) | Date<br>July 9, 2004 |

To
  Lee Paige
  Special Agent
  Enforcement Group One

From
  Peter F. Gruden
  Group Supervisor
  Enforcement Group One

The purpose of this memorandum is to express my concern for your welfare and to bring to your attention my concerns regarding significant deficiencies relating to both your job performance and behavior. These subject deficiencies are enumerated below. It is my hope that, after reviewing my comments below, you will make an effort to correct these deficiencies while embarking on your new assignment in HIDTA Group Two.

## JOB PERFORMANCE ISSUES

As evidenced by your DEA Form 460, you received a standardized Work Plan for a GS-1811/Grade 13 Special Agent on March 30, 2004. Although this Work Plan varies slightly from your prior Work Plans (mainly dealing with an emphasis on financial investigations), each Job Element remains the same:

* Initiates, Plans and Coordinates Investigations and Enforcement Operations;
* Identifies, Collects and Analyzes Information and Evidence;
* Recruits, Develops, Controls, Debriefs, and Documents Confidential Sources;
* Conducts Searches and Seizures, and Makes Arrests;
* Develops Constructive Working Relations;
* Gives Briefings, Makes Oral Presentations and/or Testifies;
* Prepares Reports and Forms.

The Performance Standards are detailed for each of the six (6) Job Elements and assigned individual ratings of Outstanding, Significantly Exceeds Requirements, Acceptable and Unacceptable.

As background, S/A Paige reported to the Orlando District Office in August 2003. His previous supervisor, G/S Fred Butler, issued an Interim Evaluation of "Significantly Exceeds Requirements" for the period of January – August, 2003. Upon his arrival in Orlando, I afforded S/A Paige every opportunity to settle his family, find housing, and become acclimated with the office. For CY 2003, I concurred with G/S Butler and issued S/A Paige a final evaluation of "Significantly Exceeds Requirements" despite the fact that S/A Paige had not initiated any cases nor established any confidential sources. Again, I took into account S/A Paige's transitioning period and prior work performance in the Nassau Country Office in




DEA002133

2

issuing this evaluation.

S/A Paige was on temporary duty for Operation BAT during the month of January 2004. S/A Paige then returned from OPBAT and was assigned normal duties until he went on workman's compensation/sick leave from April 9 – June 14, 2004.

Based on my observations and a review of your written work product contained in investigative case files and confidential source files, I submit the following:

I. INITIATES, PLANS AND COORDINATES INVESTIGATIONS AND ENFORCEMENT OPERATIONS:

S/A Paige fails to submit timely, complete or reasonable operational plans. S/A Paige fails to initiate a reasonable number of quality cases and frequently fails to plan day-to-day investigative activities. S/A Paige has not initiated a case during FY 2004. According to DEA's Performance Standards for a GS-13 Special Agent, S/A Paige must be rated as "Unacceptable" in this critical job element.

II. IDENTIFIES, COLLECTS, AND ANALYZES INFORMATION AND EVIDENCE:

S/A Paige fails to actively develop leads and evidence, and fails to identify links to CPOT, RPOT, and Priority Target Organizations. S/A Paige fails to pursue financial aspects of cases and assets for seizure. Again, a total lack of case development precludes an opportunity of displaying a measurable performance level in this Job Element. According to DEA's Performance Standards for a GS-13 Special Agent, S/A Paige must be rated as "Unacceptable" in this critical job element.

III. RECRUITS, DEVELOPS, CONTROLS, DEBRIEFS, AND DOCUMENTS CONFIDENTIAL SOURCES (CSs):

S/A Paige fails to effectively recruit and develop CSs which lead to actionable intelligence and furtherance of an investigation and/or case initiation. S/A Paige has failed to recruit and establish a confidential source during FY 2004, and has not controlled any previously established CSs during the rating period. Again, a lack of CSs precludes an opportunity of displaying a measurable performance level in this Job Element. According to DEA's Performance Standards for a GS-13 Special Agent, S/A Paige must be rated as "Unacceptable" in this critical job element.

IV. CONDUCTS SEARCHES AND SEIZURES, AND MAKES ARRESTS:

S/A Paige always follows safety procedures and takes necessary precautions to ensure the safety of others. S/A Paige uses the appropriate amount of force required, maintains composure, responds appropriately in hostile or pressure situations, and can be relied upon to take a leadership role when appropriate. S/A Paige "Significantly Exceeds Requirements" in this critical job element.

V. DEVELOPS CONSTRUCTIVE WORKING RELATIONS:

S/A Paige provides timely, responsive information/assistance to other DEA Divisions and agencies. S/A Paige treats all employees fairly and does not engage in actions prohibited under EEO and sexual

DEA002134

harassment policies. S/A Paige almost always stays within his chain of command. S/A Paige is rated "Acceptable" in this critical job element.

VI.   GIVES BRIEFINGS, MAKES ORAL PRESENTATIONS AND/OR TESTIFIES:

On April 9, 2004, S/A Paige had an accidental discharge of his service weapon while giving a Demand Reduction Presentation to a local civic group. This presentation was intended for children, and was supposed to give an insight into the dangers of illegal drug use. During the presentation, S/A Paige showed a lack of judgement by unholstering his weapon to display to the audience. S/A Paige was then grossly negligent in failing to make the weapon "safe and empty" by following the proper procedures for unloading a weapon. The expended round could have easily struck a member of the audience. I believe S/A Paige paid a high price for this error, but cannot understand why his presentation would have included a display of his weapon in the first place. Unfortunately the incident received widespread attention in the media, which resulted in unnecessary negative publicity. According to DEA's Performance Standards for a GS-13 Special Agent, S/A Paige must be rated as "Unacceptable" in this critical job element.

VII.   PREPARES REPORTS AND FORMS

Other than standardized forms such as the DEA-352 (Bi-Weekly Activity Report), the DEA-349 (Monthly Motor Vehicle Report) and the SF-71 (Application for Leave), S/A Paige has prepared very few (less than five) DEA-6s documenting investigative activities or confidential source debriefings. Again, a lack of investigative activity or CS development precludes an opportunity of displaying a measurable performance level in this Job Element. According to DEA's Performance Standards for a GS-13 Special Agent, S/A Paige must be rated as "Unacceptable" in this critical job element.

As a result of the above appraisal, I must assign an overall rating of "Unacceptable" for the interim period ending on July 10, 2004.

## BEHAVIORAL ISSUES

Concerning me more than the performance issues listed above are several behavioral issues that need to be remedied.

The event concerning your Accidental Discharge was a trying time for you and your family, both physically and emotionally. It was also a trying time for the Enforcement Group, the Orlando District Office and DEA as a whole. You also conveyed to me and DEA management that you had several personal issues that you were dealing with, before and after the incident. However there were several incidents that occurred just prior to and after the incident that showed a lack of judgment and responsibility on your part:

1) During the month of March 2004, you utilized your Official Government Vehicle (OGV) to attend the funeral of a colleague's wife in Tampa, Florida. Although I was not advised of your use of the OGV for this purpose, I did not object to the use afterwards. However, you received a parking citation in Tampa during this "quasi-official" trip and neglected to either pay the penalty or seek some type of remission through the appropriate authority. As a result, the ticket was forwarded to

4

the Tampa District Office (TDO) for collection. TDO ASAC Dominic Albanese attempted to mitigate the fine but could not because of the excessive time between the citation and the attempted dismissal. As a result, ASAC Albanese forwarded the citation to ASAC Collins for payment. Utilizing your assigned OGV for a "quasi-official" trip presses the boundaries of DEA's official use policy. Not taking responsibility for your actions while utilizing the OGV shows poor judgment on your part and extra work for other people.

2) On May 27, 2004, I was advised that you had accumulated 2,100 minutes on your DEA-assigned cellular telephone during the month of April 2004. *This translates into 35 hours, or nearly 1 ½ days of cellular usage in a given month; a month in which you were on Workman's Compensation Leave as a result of the accidental discharge.* When questioned about this usage, you stated that you had received calls from DEA Headquarters, the Employee Assistance Program (EAP) and from many well-wishers who were concerned with your health – for 35 total hours. As a result, I ordered you to either turn off the cellular telephone or hand it in to me until the calls could be substantiated and certified. Instead, you turned the telephone into me, but without the SIM card inserted. As you know, the SIM card is the device that allows your cellular telephone to work, and for which DEA is ultimately billed. The telephone you turned in to me contained another, unidentifiable SIM card that rendered the telephone inoperable and worthless.

When I questioned you regarding the phone, you stated you had done as you were instructed – you "turned in the phone." When I stated that the actual telephone was not the issue being raised, but rather the SIM card it contained, you stated that you needed the SIM card because it contained important phone numbers that you needed during your convalescence. When I questioned you as to why you would turn in a worthless telephone with an inoperable SIM card, you launched into a 75 minute, screaming tirade that was belligerent, disrespectful and insubordinate. *All of this because I questioned you concerning the validity of a 35 hour cellular telephone bill during a month that you were not at work.*

3) On June 21, 2004, I received a telephone call from Chief Daniel Saylor of the Windermere Police Department. Chief Saylor informed me that you had been stopped during the evening of June 12 for speeding and running a stop sign. When confronted by the patrolman, you immediately became belligerent and confrontational and claimed that the stop was predicated by race. It was not until the end of the confrontation that you identified yourself as a DEA Special Agent to the patrolman. Chief Saylor related that because you were a law enforcement officer, the patrolman decided to extend a "professional courtesy" to you despite the fact that you were not on duty and disrespectful to his officer. He did feel the need to voice his concern to DEA management and his disgust regarding the incident.

Your behavior towards a fellow law enforcement officer hampers the relationship DEA attempts to foster with State and Local law enforcement. DEA regularly relies on local law enforcement for backup, local expertise and staffing of our various Task Forces. I believe DEA management attempts to support the position of its personnel whenever possible, but an incident such as this is indefensible and inexcusable. But perhaps the most unfortunate effect of this incident is the fact that you reside in Windermere and will likely have to deal with the consequences of your actions in the future.

As a result of this behavior, I would normally make a formal recommendation that you seek counseling through DEA's Employee Assistance Program. You have already informed me that you have already sought such assistance.

I cannot overemphasize the fact that this behavior will not be tolerated by DEA. Such behavior coupled with your job performance issues expose you to further scrutiny and consequences in the future if the situation does not improve. It is my sincere hope that your new assignment in HIDTA will bring out a positive outlook and improvement in the near future. I am available to discuss this evaluation at our mutual convenience.