UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

CASE NO.:  1:06-cv-00644-EGS

LEE PAIGE,

    Plaintiff,

vs.

UNITED STATES DEPARTMENT OF JUSTICE,

DRUG ENFORCEMENT ADMINISTRATION, ET AL.,

    Defendant.

DEPOSITION OF STEPHEN COLLINS

Taken on Behalf of the Plaintiff

| | |
|---|---|
| DATE TAKEN: | November 28, 2007 |
| TIME: | 9:00 a.m. - 1:15 p.m. |
| PLACE: | DEA Orlando |
| | 300 International Parkway |
| | Suite 424 |
| | Heathrow, Florida |

Stenographically Reported by:

Delina M. Valentik,

Registered Professional Reporter

Florida Professional Reporter



PLAINTIFF'S EXHIBIT 173

Page 2

```
 1
 2  APPEARANCES:
 3  Counsel for Plaintiff:
 4      WARD A. MEYTHALER, ESQUIRE
        Merkle & Magri, P.A.
 5      5415 Mariner Street, Suite 103
        Tampa, FL 33609
 6
 7  Counsel for Defendant:
 8      PETER J. PHIPPS, ESQUIRE
        U. S. Department of Justice
 9      Civil Division
        Trial Attorney
10      Federal Programs Branch
        20 Massachusetts Avenue, N.W., Room 7135
11      Washington, DC 20001
12      STEVEN KAUFMAN, ESQUIRE
        U. S. Department of Justice
13      Drug Enforcement Administration
        Field Division Counsel
14      Miami Field Division
        8400 NW 53rd Street
15      Miami, FL 33166
16
    ALSO PRESENT: Lee Paige, Plaintiff
17
```

Page 3

```
            INDEX
 1
 2  WITNESS                                    PAGE
 3  Called by the Plaintiff:
 4  STEPHEN COLLINS
 5     DIRECT EXAMINATION BY MR. MEYTHALER       5
 6     CROSS-EXAMINATION BY MR. PHIPPS         145
 7     REDIRECT EXAMINATION BY MR. MEYTHALER   147
 8  ERRATA SHEET INSTRUCTIONS                  157
 9  ERRATA SHEET                               158
10  CERTIFICATE OF REPORTER OATH               159
11  REPORTER'S DEPOSITION CERTIFICATE          160
```

Page 4

```
                    INDEX OF EXHIBITS
 1
 2                                                PAGE
 3  COLLINS EXHIBIT 1 (cable DEA sensitive)        84
 4  COLLINS EXHIBIT 2 (DEA form - 6)               95
 5  COLLINS EXHIBIT 3 (FORM DEA-485)              103
 6  COLLINS EXHIBIT 4 (FedEx log)                 104
 7  COLLINS EXHIBIT 5 (FedEx log)                 106
 8  COLLINS EXHIBIT 6 (photocopy of mini DV)      108
 9  COLLINS EXHIBIT 7 (photocopy of CD)           109
10  COLLINS EXHIBIT 8 (photocopy of CD)           109
11  COLLINS EXHIBIT 9 (photocopy of CD)           109
12  COLLINS EXHIBIT 10 (photocopy of VHS tape)    109
13  COLLINS EXHIBIT 11 (photocopy of VHS tape)    110
14  COLLINS EXHIBIT 13 (Midyear Progress Review)  111
15  COLLINS EXHIBIT 15 (photocopy of CD)          114
16  COLLINS EXHIBIT 16 (email 4/28/04)             17
17
18  REPORTER'S NOTE: All exhibits were premarked by
    Mr. Meythaler. He did not attach Exhibit 12 and 14.
```

Page 5

```
                  PROCEEDINGS
 1
 2  WHEREUPON
 3          STEPHEN COLLINS
 4  acknowledged having been duly sworn to tell the truth
 5  upon his oath as follows:
 6          THE WITNESS: I do.
 7          DIRECT EXAMINATION
 8  BY MR. MEYTHALER:
 9      Q. Would you state your name, please.
10      A. Stephen, S-T-E-P-H-E-N, Collins, C-O-L-L-I-N-S.
11      Q. How old are you, sir?
12      A. Fifty-four. I had to think about that.
13      Q. Do you live in the Orlando area?
14      A. Yes, sir.
15      Q. And what's your marital status?
16      A. Married.
17      Q. Have you given a deposition before?
18      A. Yes.
19      Q. All right. I don't need to go through things
20  with you other than to remind you you have to answer yes
21  or no, that she can't take a shake of the head down. If
22  there's anything I say you don't understand, just let me
23  know.
24      A. Okay.
25      Q. And I'll rephrase it, try to clarify it.
```

134

1  A. I did.
2  Q. From whom did you receive it?
3  A. From my SAC in Miami.
4  Q. Who was that?
5  A. Mr. Truvel.
6  Q. How did he give it to you?
7  A. It was mailed.
8  Q. When did he mail it to you?
9     MR. PHIPPS: Objection, foundation.
10    THE WITNESS: I don't recall exactly.
11 BY MR. MEYTHALER:
12 Q. Was this before Mr. Paige would have received
13 his actual discipline?
14 A. Received or served?
15 Q. Served, let's start with served.
16 A. Yes, it would have been before. Yes.
17 Q. And what's the purpose of you getting it?
18 A. To allow him to review the file to prepare a
19 response to the board of professional conduct's
20 recommendation of discipline.
21 Q. All right. So he would have been shown the
22 file prior to the time that a final decision was made on
23 his discipline?
24    MR. PHIPPS: Objection, foundation.
25    THE WITNESS: Yes and no.

135

1 BY MR. MEYTHALER:
2 Q. All right.
3 A. I would have to explain that to you.
4 Q. Explain it.
5 A. Board of professional conduct will recommend
6 discipline. In this particular case, they did. And
7 with their memorandum, basically stating, this is your
8 discipline. You have X number of days to review the
9 file and prepare a response to the deciding official,
10 which is one level higher. If no response is prepared
11 by the deciding -- is prepared, then there's no argument
12 to the discipline, he can potentially then just begin
13 serving his discipline if he so desires.
14 Q. All right. Now, did you review the file when
15 you received it?
16 A. I remember looking through it, yes, sir.
17 Q. What was in it?
18 A. The -- I remember the report of shooting cable
19 was in there. There was Mr. Gruden's 6 was in there,
20 DEA-6 regarding his initial -- one that was shown to me
21 earlier today.
22 Q. His initial investigation --
23 A. Yes.
24 Q. -- is that the word you wanted to use?
25 A. Yes. That's correct.

136

1 Q. All right.
2 A. There was some other reports written by
3 inspections. Then there was a section of letters of
4 appreciation or responses to Mr. Paige's previous demand
5 reduction presentations that were taken from his
6 personnel file. And then there was a silver CD or a DVD
7 in the back of the file.
8 Q. It was silver?
9 A. Silver in color.
10 Q. Did it have words on it?
11 A. I don't recall.
12 Q. Did you try to look at it?
13 A. No.
14 Q. How long did you have the file?
15 A. Half a day, maybe even less than that.
16 Q. Did Mr. Borah have the file at all?
17 A. No.
18 Q. And what did you do with the file?
19 A. Gave to it Mr. Paige.
20 Q. And where did you give it to him?
21 A. In my office.
22 Q. And when did you get it back from him?
23 A. Several days later.
24 Q. By several, how many do you mean?
25 A. Between three and five, somewhere around there.

137

1 Q. All right. Is there some sort of record
2 indicating when you gave it to him and when you got it
3 back?
4 A. I don't think so, no, sir.
5 Q. All right. And to your knowledge, what did
6 Mr. Paige do with the file?
7 A. He reviewed it.
8 Q. What makes you think he reviewed it?
9 A. I'll strike that answer. I don't know what he
10 did with the file.
11 Q. Did -- when he returned it to you --
12 A. No.
13 Q. -- at any time did he say anything to you about
14 what he saw in the file?
15 A. Yes.
16 Q. What did he say?
17 A. He asked me if he could make a copy of the -- I
18 don't know if he referred to it as DVD or the CD.
19 Q. You can call it a disc if you'd like?
20 A. Disc, that'd be fine. He asked me if he could
21 make a copy of the disc.
22 Q. And what'd you say to him?
23 A. I told him he wasn't supposed to make a copy of
24 anything.
25 Q. Did he indicate to you why he wanted to make a

35 (Pages 134 to 137)