IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN J. HATFILL, M.D.,      )
                                  )
       Plaintiff,           )
                                  )
      v.                     )     Civ. A. No. 03-1793 (RBW)
                                  )
JOHN ASHCROFT, et al.       )
                                  )
       Defendants.       )

## MEMORANDUM IN SUPPORT OF MOTION TO
## PRECLUDE NON-PECUNIARY DAMAGES, OR, IN THE ALTERNATIVE,
## MOTION FOR AN INDEPENDENT MENTAL EXAMINATION,
## AND STAY OF DISCOVERY INTO EMOTIONAL DAMAGES



PLAINTIFF'S
EXHIBIT
199
ALL-STATE LEGAL®

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................ 1

ARGUMENT ................................................................... 3

I.    NON-PECUNIARY DAMAGES ARE NOT COMPENSABLE
      UNDER THE PRIVACY ACT ................................................ 3

      A.    Under the Doctrine of Sovereign Immunity, "Actual
            Damages" Must be Interpreted Narrowly to Exclude
            Non-Pecuniary Damages ........................................... 3

      B.    Congress Did Not Intend for Non-Pecuniary Damages
            to be Compensable Under the Privacy Act .......................... 9

II.   IF THE COURT FINDS NON-PECUNIARY DAMAGES TO BE
      COMPENSABLE, PLAINTIFF MUST SUBMIT TO AN
      INDEPENDENT MENTAL EXAMINATION ......................................... 14

III.  THE COURT SHOULD STAY DISCOVERY INTO ALLEGED
      EMOTIONAL DAMAGES PENDING A RESOLUTION
      OF THIS MOTION ........................................................ 17

CONCLUSION .................................................................. 19

## INTRODUCTION

After more than a year of discovery, the parties to this Privacy Act and tort action are approaching the end of the discovery period.[1]  During this time, the parties have engaged in extensive written discovery, including 836 requests for admissions, 230 interrogatories and 61 document requests by the plaintiff alone.  Plaintiff also has taken approximately 30 depositions, and several more are scheduled over the next several weeks.  In addition to fact discovery, the parties have designated experts to speak to the question of damages.  Among Dr. Hatfill's claimed damages are certain "non-monetary injuries including, without limitation, damage to his personal and professional reputations, the eradication of his privacy, the deprivation of his liberty to work in his chosen field, emotional distress, psychological injuries, and pain and suffering."  Plaintiff's Responses to Agency Defendants' First Set of Interrogatories, at 7 (attached as Exhibit A).

The Privacy Act, however, permits recovery only of "actual damages." 5 U.S.C. § 552a(g)(4).  Because the term "actual damages" is contained in the Privacy Act's waiver of sovereign immunity, the term must be narrowly construed in favor of the sovereign. Accordingly, courts have found that damages under the Privacy Act are limited to out-of-pocket, pecuniary damages.  Plaintiff's claim for non-pecuniary damages based on, *inter alia*, "emotional distress, psychological injuries, and pain and suffering" is therefore precluded as a matter of law.  To avoid needless additional discovery, the agency defendants request that the

---

[1] The discovery period closes May 31, 2006 for all claims.  While the case currently includes both Privacy Act and tort claims, the only claim for which plaintiff can recover damages is the Privacy Act.  The damages aspect of the tort claims was dismissed by Memorandum and Order dated September 16, 2005.  The individual defendants, on January 27, 2006, also moved to dismiss the injunctive elements of the tort claims.  That motion remains pending.

Court rule now on the compensability of plaintiff's claimed non-monetary damages under the Privacy Act. While plaintiff disagrees with the government's interpretation of the statute, plaintiff does not oppose the early resolution of the issue.

In the alternative, if the Court finds that non-pecuniary damages are compensable under the Privacy Act, agency defendants request that the Court order, pursuant to Fed. R. Civ. P. 35, an independent mental examination of plaintiff. By claiming severe emotional harm, plaintiff has put his emotional health at issue, entitling defendants to examine him so that they may respond to the harm he may assert at trial. This information cannot be obtained through other means, and fairness requires that defendants be permitted the means necessary to counter plaintiff's opinion of his own mental state.

Lastly, agency defendants request that discovery on emotional damages, including the production of defendant's expert report regarding plaintiff's claimed emotional damages, the deposition of plaintiff's treating psychiatrist, and the deposition of plaintiff's father, be delayed until the Court resolves this dispositive motion. A temporary stay pending resolution of this motion may avoid unnecessary expenditures of time and resources by the parties and the Court, and is not opposed by the plaintiff.[2]

---

[2] Plaintiff has represented that, while he does not oppose the request for a stay pending resolution of this motion, he does oppose the agency defendants' alternative request for an independent mental examination.

## ARGUMENT

### I.   NON-PECUNIARY DAMAGES ARE NOT COMPENSABLE UNDER THE PRIVACY ACT

Plaintiff alleges various non-pecuniary damages, including emotional harm. See First

Amended Complaint at ¶¶ 8, 124; Plaintiff's Responses to Agency Defendants' First Set of

Interrogatories, Exhibit A at 8. The Privacy Act, however, provides only for recovery of "actual

damages." 5 U.S.C. § 552a(g)(4). As explained below, recovery of "actual damages" under the

Act requires proof of out-of-pocket pecuniary harm and does not permit damages for emotional

distress unaccompanied by such monetary loss.

#### A.   Under the Doctrine of Sovereign Immunity, "Actual Damages" Must be Interpreted Narrowly to Exclude Non-Pecuniary Damages

Outside the context of the Privacy Act, courts have interpreted the term "actual

damages" to be synonymous, in certain cases, with pecuniary damages. See, e.g., Aiello v.

Providian Fin. Corp., 239 F.3d 876, 878, 880 (7th Cir. 2001) ("actual damages" require

"financial loss"); Ryan v. Foster & Marshall, Inc., 556 F.2d 460, 464 (9th Cir. 1977) ("Actual

damages mean some form of economic loss."); Guzman v. Western State Bank, 540 F.2d 948,

953 (8th Cir. 1976) (equating "actual damages" with "out-of-the pocket pecuniary loss" and

distinguishing them from damages for "emotional and mental distress"). The term also may be

used more broadly to connote compensatory damages (i.e., damages distinct from either nominal

or punitive damages), which would include compensatory damages for emotional distress. See

Black's Law Dictionary 35 (6th ed. 1990). The Act does not specify which definition it

employs, and all three Courts of Appeals to consider whether the Privacy Act permits non-

pecuniary damages have recognized that "actual damages" lacks a plain meaning on which the

courts may rely. See Hudson v. Reno, 130 F.3d 1193, 1207 n.11 (6th Cir. 1997) ("[T]he term 'actual damages' has no plain meaning or consistent legal interpretation . . . ."); Johnson v. Department of Treasury, 700 F.2d 971, 974 (5th Cir. 1983) ("[T]his Court concludes that the term 'actual damages' has no plain meaning or consistent legal interpretation."); Fitzpatrick v. Internal Revenue Serv., 665 F.2d 327, 329 (11th Cir. 1982) ("'[A]ctual damages' has no 'plain meaning' in legal lexicon . . . .").

The ambiguity of the term "actual damages" is resolved conclusively in this case by the context in which the term is used. As the Court of Appeals for the District of Columbia has held, section 552a(g)(4) of the Privacy Act "is a waiver of sovereign immunity." Tomasello v. Rubin, 167 F.3d 612, 618 (D.C. Cir. 1999). It is axiomatic that "a waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." Department of Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999). Such waivers must be "unequivocally expressed" and "not enlarge[d] . . . beyond what the language requires." United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992) (internal quotation marks and citations omitted; alterations in original). If there exists even a "plausible" reading of a statutory waiver under which the sovereign is not liable for a particular form of relief, the waiver is not unequivocal and that form of relief is unavailable. See id. at 37 (statute does not allow for monetary relief where language waiving sovereign immunity could plausibly be read to waive immunity only for declaratory or injunctive relief); see also Trout v. Secretary of the Navy, 317 F.3d 286, 289-90 (D.C. Cir. 2003) ("[W]aivers of sovereign immunity are to be read no more broadly than [their] terms require"; accordingly, "any doubts about the scope of the waiver [are to] be resolved in favor of the narrower governmental liability.") (internal quotation marks and citations omitted; alterations in

original); Galvan v. Federal Prison Indus., Inc. 199 F.3d 461, 464 (D.C. Cir. 1999) ("So long as a statute supposedly waiving immunity has a plausible non-waiver reading, a finding of waiver must be rejected.") (internal quotation marks and citation omitted).

This principle has long required that statutory terms like "actual damages" governing the scope of a waiver be narrowly construed. In Department of Energy v. Ohio, 503 U.S. 607 (1992), for example, the Supreme Court addressed the scope of the Clean Water Act's waiver of immunity authorizing monetary "sanction[s]" against the federal government as "civil penalties" for the government's violation the Act's federal-facilities provisions. There was no dispute that sovereign immunity had been waived or that monetary "sanctions" were authorized by the waiver. The only question was the proper scope of that waiver, i.e., whether it authorized awards of civil punitive "sanctions" or created a more limited remedy for purely coercive "sanctions." The Court held that the express waiver of immunity from monetary "sanctions" and Congress's use of "a seemingly expansive phrase like 'civil penalties arising under Federal law'" were not enough to overcome the "rule of narrow construction" in cases involving sovereign immunity. DOE, 503 U.S. at 626-27. While acknowledging an "unresolved tension" in the statutory scheme suggesting that punitive sanctions may have been intended by Congress, id., the Court held that "that tension is resolved by the requirement that any statement of waiver be unequivocal" and narrowly construed to favor the sovereign. Id.; see also Ruckelshaus v. Sierra Club, 463 U.S. 680, 685-86 (1983) (adopting narrow meaning of the term "appropriate" when construing attorneys' fee provision that operates in part as a waiver of sovereign immunity); Price v. United States, 174 U.S. 373, 375 (1899) (statute cannot be read to include consequential damages, regardless of "what may seem to this court equitable, or what obligation we may deem

ought to be assumed by the government," because "we cannot go beyond the language of the statute, and impose a liability which the government has not declared its willingness to assume").

Applying "the bedrock principle that courts must strictly construe waivers of immunity in favor of the sovereign and not enlarge the waiver beyond what the language requires," the Court of Appeals for the Sixth Circuit has held that the term "actual damages," as used in the Privacy Act, must be "narrowly interpreted" to encompass only out-of-pocket pecuniary losses. Hudson, 130 F.3d at 1207 n.11. District courts, when considering the application of the principles of sovereign immunity to the Privacy Act, have arrived at the same conclusion. See, e.g., Schmidt v. United States Dep't of Veterans Affairs, 222 F.R.D. 592, 594 (E.D. Wisc. 2004) ("[T]he Privacy Act is a limited waiver of sovereign immunity, and to the extent there may be ambiguity concerning whether the term 'actual damages' includes emotional distress as well as a pecuniary loss, the ambiguity must be resolved by construing the term narrowly."); DiMura v. Federal Bureau of Investigation, 823 F.Supp. 45, 47-48 (D. Mass. 1993) (because Privacy Act is a waiver of sovereign immunity and it is "plausible" to read the term "actual damages" to refer only to pecuniary damages, this reading must be adopted). The Eleventh Circuit also has held that the Privacy Act does not allow for non-pecuniary damages, although it relied on the Act's legislative history rather than principles of sovereign immunity to reach this conclusion. See Fitzpatrick, 665 F.2d at 329-31.

Indeed, of the three Courts of Appeals to consider whether the Privacy Act allows for non-pecuniary damages, only one – the Court of Appeals for the Fifth Circuit – has held that emotional damages, unaccompanied by monetary loss, are compensable. The court reached this conclusion based on its reading of the Act's legislative history, after concluding that the term

-6-

"actual damages" has no plain meaning. See Johnson, 700 F.2d at 974 ("Because the plain meaning of the term 'actual damages' is uncertain, we seek illumination in the legislative history of the Act."). Leaving aside the flaws in the court's analysis of the legislative history (discussed at Part I.B, infra), the court erred in looking beyond the statutory text to determine the scope of the government's liability. As the Supreme Court has since made clear, "[a] statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text; the 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in statutory text." Lane v. Pena, 518 U.S. 187, 192 (1996) (internal quotation marks and citation omitted); see also Nordic Village, 503 U.S. at 37 (because textual ambiguity must be resolved in favor of the sovereign, "legislative history [can have] no bearing on the ambiguity point"); id. (where statutory language does not provide an "'unequivocal expression'" of a waiver of sovereign immunity, the requisite clarity "cannot be supplied by a committee report"). Other courts, accordingly, have noted the Fifth Circuit's error in seeking to resolve the ambiguity in the term "actual damages" through resort to legislative history, rather than through the application of well-established principles of sovereign immunity. See, e.g., Hudson, 130 F.3d at 1207 n.11; DiMura, 823 F.Supp. at 48.

The United States Court of Appeals for the District of Columbia has not considered the question of whether non-pecuniary damages are compensable under the Privacy Act – although it has observed, under different circumstances, that 5 U.S.C. § 552a(g)(4) "is a waiver of sovereign immunity and, as such, must be construed strictly in favor of the sovereign." Tomasello, 167 F.3d at 618 (internal quotation marks and citation omitted) (holding that contemporaneous transmissions of the same record may be aggregated as a single "act" for purposes of calculating

-7-

the minimum damage award). The D.C. district courts are divided on the question of whether

the Privacy Act allows for non-pecuniary damages. Compare Pope v. Bond, 641 F.Supp. 489,

501 (D.D.C. 1986) ("'[A]ctual damages' does not include damages for emotional trauma, anger,

fright, or fear."); Albright v. United States, 558 F.Supp. 260, 264 (D.D.C. 1982) ("Actual

damages under the Privacy Act are limited to 'out-of-pocket' expenses and do not include

damages for emotional trauma, anger, fright or fear."), aff'd, 732 F.2d 181 (D.C. Cir. 1984);

Houston v. United States Dep't of Treasury, 494 F.Supp. 24, 30 (D.D.C. 1979) ("Although the

term 'actual damages' is not defined in the [Privacy] Act, Congress . . . indicated its intention to

limit 'actual damages' to 'out-of-pocket' expenses."), with Montemayor v. Federal Bureau of

Prisons, 2005 WL 3274508 at *5 (D.D.C. Aug. 25, 2005) (interpreting Privacy Act to allow

"general compensatory damages, such as pain and suffering and non-pecuniary losses");

Alexander v. Federal Bureau of Investigation, 971 F.Supp. 603, 607 (D.D.C. 1997) (allowing

Privacy Act plaintiffs to pursue "noneconomic damages"); Dong v. Smithsonian Institution, 943

F.Supp. 69, 74 (D.D.C. 1996) ("Actual damages under this provision of the statute encompass

not only pecuniary losses, but also the ordinary elements of compensatory damages, such as

mental depression and physical injury when these elements are supported by evidence in the

record."), rev'd on other grounds, 125 F.3d 877 (D.C. Cir. 1997). Although a recent district

court opinion claimed that the trend among district courts in this Circuit is to allow non-

pecuniary losses, see Montemayor, 2005 WL 3274508 at *5, this assertion is questionable;[3] more

---

[3] In only two of the cited decisions – Alexander v. Federal Bureau of Investigation, 971
F.Supp. 603 (D.D.C. 1997) and Rice v. United States, 211 F.R.D. 10 (D.D.C. 2002) – was the
Court asked to resolve the issue of whether "actual damages," as used in the Privacy Act, may
encompass non-pecuniary losses. In Boyd v. Snow, 335 F.Supp.2d 28 (D.D.C. 2004), the issue
before the court was whether the plaintiff's claims of emotional distress were credible; (cont'd)

-8-

importantly, none of the four cases cited in <u>Montemayor</u> addressed the issue of sovereign

immunity, or indeed engaged in *any* substantive analysis of the term "actual damages."[4]

In short, every court to consider the issue has acknowledged that the term "actual

damages" is ambiguous with respect to its inclusion or exclusion of damages for emotional harm.

The Supreme Court has held that any ambiguity in a waiver of sovereign immunity must be

construed in favor of the sovereign, and the Court of Appeals for this Circuit has held that this

principle applies to the Privacy Act's damages provision. It follows, as a matter of law, that the

Privacy Act cannot be read to allow non-pecuniary damages such as those alleged by Plaintiff.

Accordingly, any such allegations should be stricken and precluded at trial.

## B.    Congress Did Not Intend for Non-Pecuniary Damages to be Compensable Under the Privacy Act

Even if the doctrine of sovereign immunity did not require this Court to interpret "actual

damages" to include only quantifiable pecuniary losses, that would be the better interpretation of

the term as used in the context of the Privacy Act. This reading flows directly from Congress's

---

the court simply assumed, without discussion, that emotional distress would be compensable if
proven. Similarly, while the court in <u>Dong v. Smithsonian Institution</u>, 943 F.Supp. 69 (D.D.C.
1996) asserted that non-pecuniary damages are available under the Privacy Act, there is no
indication that this was a contested issue in the case; the court denied damages on other grounds.

[4] In <u>Boyd</u>, the court assumed, without discussion or analysis, that "severe emotional and
physical harm, stress, sleeplessness and nightmares" constitute "actual damages" under the
Privacy Act. <u>Boyd</u>, 335 F.Supp.2d at 39. In <u>Rice</u>, the court relied on an erroneous
characterization of the Fourth Circuit's decision in <u>Doe v. Chao</u>, 306 F.3d 170 (4th Cir. 2002),
asserting that <u>Doe</u> "acknowledge[d] the possibility of recovery for non-pecuniary damages,"
<u>Rice</u>, 211 F.R.D. at 14, whereas <u>Doe</u> in fact expressly declined to reach the issue. See <u>Doe</u>, 306
F.3d at 181. Both <u>Alexander</u> and <u>Dong</u> simply asserted the availability of non-pecuniary
damages and cited to <u>Johnson</u> – the Fifth Circuit decision that erroneously examined the Privacy
Act's legislative history rather than construing the statutory ambiguity in favor of the sovereign.
See <u>Alexander</u>, 971 F.Supp. at 607; <u>Dong</u>, 943 F.Supp. at 74.

-9-

decision to deny recovery for "general damages" and the common law understanding that "general damages" included emotional distress in the context of privacy torts.

At common law, "[g]eneral damages . . . are damages that courts believe 'generally' flow from the kind of substantive wrong done by the defendant." Dan B. Dobbs, Law of Remedies § 3.2, at 138 (1st ed. 1973); see also 3 Restatement (Second) of Torts § 904 (1977) ("'[g]eneral damages' are compensatory damages for a harm so frequently resulting from the tort that is the basis of the action that the existence of the damages is normally to be anticipated"). In the context of "dignitary invasions, such as . . . invasions of privacy," the "term 'general damages' . . . refers to damages awarded for the affront to the plaintiff's dignity and the emotional harm done" by the tort itself, but does not include damages for "actual economic harm." Law of Remedies § 3.2 at 139; see also Restatement § 652H cmt. b ("damages for emotional distress" recoverable in privacy torts when such general damages "normally result[]" from violation).

In some contexts, "general damages" may be presumed without separate proof. See Restatement § 904, cmt. a (in many cases, a plaintiff need not prove general damages if "the existence of the harm may be assumed and its extent is inferred . . . from the existence of the injury"). However, as the Supreme Court noted in Doe v. Chao, 540 U.S. 614 (2004) (hereinafter "Doe II"), "general damages" for certain common law defamation torts were traditionally available to a plaintiff "only when [the] plaintiff first proved some 'special harm,' i.e., 'harm of a material and generally of a pecuniary nature.'" Id. at 625 (citation omitted); see also id. (privacy tort plaintiffs were entitled to recover "general damages" at common law "only if" they could first demonstrate some amount of special damages reflecting an "actual, quantifiable pecuniary loss."). The Court observed that Congress, when enacting the Privacy

-10-

Act, was presumably aware of this traditional dichotomy between "general" and "special" damages in common law privacy torts: emotional damages were presumed as "general damages," but became available only once the plaintiff proved a quantifiable pecuniary loss as "special damages." See id.

In accordance with this common law regime, the Senate's initial version of the Privacy Act would have provided plaintiffs with both "general damages" and "actual damages." See Doe II, 540 U.S. at 622-23. That provision, however, did not survive to enactment. As the Court recognized in Doe II,[5] the House-Senate compromise that brought the Act into being deleted the Senate's provision for "general damages" and, instead, created the Privacy Protection Study Commission ("the Privacy Commission") to study and report on whether the Act should be extended after enactment to provide for such damages. See id. at 622-23. The Privacy Commission – which included Congressmen Koch and Goldwater, both of whom were closely involved in the Privacy Act's enactment – later explained that Congress intended "actual damages" to provide compensation only "for injury that has caused clear economic loss to the individual" and that the deleted provision of "general damages" would have compensated plaintiffs for "intangible" losses such as "mental suffering." See Personal Privacy in an Information Society: The Report of the Privacy Protection Study Commission at 530 (July 1977). After two years of study and comprehensive hearings, the Commission's report thus concluded that, in limiting recovery to "actual damages," "Congress meant to restrict recovery to

---

[5] The Court cited this legislative history as support for its finding that Congress did not intend to provide for "presumed" damages in the absence of actual, proven damages. The Court's analysis equally supports the conclusion that Congress did not intend to provide for non-pecuniary damages, although the Court in Doe II was not faced with that question and so declined to resolve it. See Doe II, 540 U.S. at 627 n.12.

-11-

specific pecuniary losses until the Privacy Commission could weigh the propriety of extending

the standard of recovery." Id; accord 120 Cong. Rec. 36,659, 36,956 (1974) (Rep. Eckhardt)

(defending an amendment that would have awarded "actual damages" for any violation of the

Act – not just "willful, arbitrary, or capricious" violations – on the ground that such damages

still would be limited to "actual out of pocket expenses"). While the Privacy Commission

recommended extending the Act to award recoveries for "general damages" to allow plaintiffs to

recover for emotional distress, see Personal Privacy in an Information Society at 531; Doe II,

540 U.S. at 622 n.4, Congress has declined to amend the Act to compensate such intangible

losses.

The Eleventh Circuit, in holding that the Privacy Act does not allow for non-pecuniary

damages, recognized the significance of Congress's rejection of a "general damages" remedy.

See Fitzpatrick, 665 F.2d at 329-31. The Fifth Circuit in Johnson, by contrast, failed to

appreciate this critical aspect of the legislative history. The Fifth Circuit noted that

compensatory damages for emotional distress often comprise a significant component of the

damages in common law privacy actions, and stated that "surely Congress was not unmindful of"

this fact. Johnson, 700 F.2d at 977. But Congress's awareness of the availability of non-

pecuniary damages under the common law simply underscores the significance of Congress's

choice *not* to include "general damages" as a statutory remedy. The Fifth Circuit's conclusion

that Congress viewed the distinction between "general" and "actual" damages as merely a

distinction between "presumed" and "proven" damages (and not as a distinction between

-12-

pecuniary and non-pecuniary damages) lacks support in the legislative history,[6] and gives short

shrift to the contrary determination reached by the Privacy Commission after two years of study.

See id. at 979-83.

Other than the treatment of privacy claims under the common law, the Fifth Circuit relied

primarily on "the fundamental importance accorded to the right of privacy by Congress," as

evinced by various statements in the legislative history.[7] Johnson, 700 F.2d at 971. The

importance of privacy rights to Congress, however, is of little assistance in resolving the

statutory interpretation question. "[N]o legislation pursues its purposes at all costs," and

"[d]eciding what competing values will or will not be sacrificed to the achievement of a

particular objective is the very essence of legislative choice." Rodriguez v. United States, 480

U.S. 522, 525-26 (1987). To "assume that whatever furthers the statute's primary objective must

be the law" would thus "frustrate[] rather than effectuate[] legislative intent" by failing to reserve

for Congress the difficult trade-offs inherent in nearly all legislative decisions. Id. (emphasis

---

[6] The Fifth Circuit relied primarily on statements by members of Congress indicating that "actual damages" must be proven and cannot be presumed. Nothing in these statements, however, indicates that Congress viewed the requirement of proof as comprising the full definition of "actual damages."

[7] The Fifth Circuit also cited the preamble to the Act, which states that the purpose of the Act is to protect individual privacy by subjecting federal agencies "to civil suit for any damages which occur as a result of willful or intentional action which violates any individual's rights under the Act." 5 U.S.C. § 552a note § 2(b) (quoted in Johnson, 700 F.2d at 975). A preamble is not an operative part of a statute and cannot be relied upon when, as here, the language of the Act must be strictly construed. See Yazoo & Miss. Valley R.R. Co. v. Thomas, 132 U.S. 174, 188 (1889). Moreover, the preamble's description of the Act's purpose is contradicted by the Act's own provisions, inasmuch as section 552a(g) provides only for "actual" (not "any") damages and only in response to the violation of certain (not "any") rights conferred by the Act. See 5 U.S.C. § 552a(g)(1)(A)-(B) and (2)-(3) (providing injunctive relief without damages for violations of access and amendment provisions).

-13-

omitted). In this case, Congress had to balance its goal of protecting the right of privacy with its
concern – quite evident in the legislative history – about the potential drain on the public fisc.
See, e.g., 120 Cong. Rec. at 36,659 (Rep. McCloskey) ("[W]e are trying to balance two great
interests here. We are trying to balance the necessity of balancing the budget, and we are trying
to protect the Government from undue liability. I think it is wrong to make the Government of
the United States and this congressional budget subject to an absolutely incalculable amount of
liquidated damages."); id. at 36,956 (Rep. Erlenborn) (opposing an amendment that would have
awarded "actual damages" for negligent violations on the ground that the amendment "expose[d]
the Government to undue liability" which "[w]e just cannot afford"). Congress chose to
harmonize these competing interests by implementing significant privacy protections while
nonetheless limiting the type of damages that Privacy Act plaintiffs could receive to pecuniary
losses. See Houston v. United States Dep't of the Treasury, 494 F.Supp. 24, 29 & n.13 (D.D.C.
1979) ("Congress, concerned about the drain on the treasury created by a rash of Privacy Act
suits, indicated its intention to limit 'actual damages' to 'out-of-pocket' expenses.").

## II.   IF THE COURT FINDS NON-PECUNIARY DAMAGES TO BE COMPENSABLE, PLAINTIFF MUST SUBMIT TO AN INDEPENDENT MENTAL EXAMINATION

If the Court finds that emotional damages and other non-monetary damages are
compensable under the Act, agency defendants request that the Court issue an order, pursuant to
Fed. R. Civ. P. 35, requiring Dr. Hatfill to submit to an independent mental examination. "When
the mental . . . condition . . . of a party . . . is in controversy, the court in which the action is
pending may order the party to submit to a physical or mental examination by a suitably licensed

-14-

or certified examiner[.]" Fed. R. Civ. P. 35(a). The order may be made upon "good cause" shown. Id.

Dr. Hatfill claims that "he has suffered *severe* emotional distress and injury to his mental and physical health as a result of the Agency Defendants' actions." Pl's Responses to Agency Defs' First Set of Interrogatories, Exhibit A at 8 (emphasis added). Such an allegation is more than enough to put his mental condition "in controversy." See Doe v. District of Columbia, 229 F.R.D. 24, 25 (D.D.C. 2005) (plaintiff put mental condition "in controversy" by alleging that defendant's and its agent's "negligent and/or reckless actions [were] direct and proximate causes of John Doe's past and continuing physical, emotional, and mental pain, suffering and anguish"); Shepherd v. ABC, 151 F.R.D. 194, 212-13 (D.D.C. 1993), rev'd on other grounds, 62 F.3d 1469 (D.C. Cir. 1995) ("plaintiffs have placed their mental conditions in controversy by demanding damages to compensate them for emotional distress"); see also EEOC v. Grief Bros. Corp., 218 F.R.D. 59, 62 (W.D.N.Y. 2003) (former employee placed his mental condition in controversy by alleging that employer inflicted "severe" depression on the employee by its failure to prevent sexual harassment).

Good cause also exists for such an examination. According to plaintiff's interrogatory responses, Dr. Hatfill has been treated by Dr. Catherine May, a clinical psychiatrist. Pl's Responses to Agency Defs' First Set of Interrogatories, Exhibit A at 8. Given Dr. May's evaluation, and the potential that Dr. Hatfill may rely upon Dr. May's testimony at trial, the government has every right to conduct its own evaluation of his emotional harm. See Shepherd, 151 F.R.D. at 212 (where plaintiff has been evaluated by expert, "court cannot fault [defendant] for wishing to have its own expert evaluate [plaintiff]").

-15-

This is particularly so where Dr. Hatfill has "emphasized the severity of [his] emotional problems" in his responses to our interrogatories. Id. As one court has correctly observed, "[i]f one purpose of discovery is to create equally informed parties and, in that sense, a level playing field, one is hard pressed to understand why a court would not permit an independent mental examination when the party to be examined contemplates use of an expert to substantiate [his] claim that [he] has endured psychological harm at the hands of the other party. That this result would obtain goes without saying if the plaintiff claimed a physical injury." Chiperes v. Rubin, No. 96-130TPJ/JMF, 1998 WL 765126, at *4 (D.D.C. 1998) ("no reason why the result should be different merely because he claims harm to his psyche rather than, let us say, his lower back").

To the extent Dr. Hatfill intends to rely upon his self-diagnosis (rather than an expert's testimony) at trial, there is even more of a need for an independent mental examination. In Smith v. Kopplan, 215 F.R.D. 11 (D.D.C. 2003), plaintiff attempted to rely upon self-diagnosis of his alleged emotional harm. See Smith, 215 F.R.D. at 14. Based upon books and articles, and a self-diagnostic test, plaintiff concluded that she was experiencing a continuing high-level of work environment depression as a result of a hostile work environment. Id. Plaintiff opposed an independent mental examination to verify her self-diagnosis. The court nonetheless ordered plaintiff to submit to an independent examination, finding that "[w]ithout the opportunity for an independent medical examination, it will be simply impossible for defendant to counter plaintiff's opinion of her mental state." Id. The same result should be reached in this case.

Lastly, this information cannot be obtained through other means. While Dr. Hatfill claims that "*[s]ome* details regarding [his] symptoms and injuries are provided in medical

-16-

records kept by Dr. Catherine May[,]" Pl's Responses to Agency Defs' First Set of

Interrogatories, at 8 (emphasis added), agency defendants cannot rely upon a scattered set of

records in evaluating his alleged emotional harm. See Smith, 215 F.R.D. at 14 (lack of available

information warrants ordering plaintiff to submit to mental examination by defendant's proposed

psychiatrist); see also Ziemann v. Burlington County Bridge Comm'n, 155 F.R.D. 497, 501-02

(D.N.J. 1994) (good cause established for psychiatric examination because plaintiff's mental

condition had changed significantly since plaintiff's prior examination); Galieti v. State Farm

Mut. Auto. Ins. Co., 154 F.R.D. 262, 263 (D. Colo. 1994) (although defendant's mental health

experts had previously evaluated plaintiff in action for severe emotional distress, new

examination ordered because plaintiff alleged ongoing injury and more than two years had

elapsed since prior examination).

     The agency defendants have retained Dr. Robert T. M. Phillips, a highly qualified and

respected psychiatrist, to undertake the examination. As explained in Dr. Phillips' declaration,

an independent mental examination is necessary to fully and adequately evaluate the emotional

harm plaintiff claims. See Exhibit B, ¶¶ 5-6 (competent and reliable independent forensic

psychiatric examination should be performed where litigant claims mental or emotional injury.)

To the extent the Court permits a claim for emotional harm to go forward, the Court should thus

order plaintiff to submit to an independent mental examination pursuant to Fed. R. Civ. P. 35.

## III.   THE COURT SHOULD STAY DISCOVERY INTO ALLEGED EMOTIONAL DAMAGES PENDING A RESOLUTION OF THIS MOTION

     Lastly, we request that the Court stay discovery on plaintiff's claimed emotional damages

until the Court rules on our motion and determines whether such damages are compensable. A

ruling in the government's favor would obviate the need for discovery into this issues;

proceeding with discovery before the Court's ruling therefore could result in the unnecessary

expenditure of significant resources by both parties, including the time and expense of deposing

each other's expert witnesses. Under such circumstances, courts have broad discretion to stay

discovery. See, e.g., In re Lorazepam & Clorazepate Antitrust Litigation, 208 F.R.D. 1, 6

(D.D.C. 2002) (a stay of discovery is warranted where proceeding with discovery "ha[s] the very

real potential of unnecessarily wasting significant resources of all parties and the court"); Capital

Engineering & Mfg. Co. v. Weinberger, 1988 WL 13272 (D.D.C. Feb. 5, 1988) ("[C]ourts have

not hesitated to stay discovery as to the merits of an action pending initial consideration of

preliminary, and potentially dispositive, motions."); cf. Chavous v. District of Columbia Fin.

Resp. Mgmt. Assistance Auth., 201 F.R.D. 1, *2 (D.D.C. 2001) ("[The] trial court has broad

discretion and inherent power to stay discovery until preliminary questions that may dispose of

the case are determined."); Anderson v. United States Attorneys Office, 1992 WL 159186, *1

(D.D.C. 1992) ("It is well settled that discovery is generally considered inappropriate while a

motion that would be thoroughly dispositive of the claims in the Complaint is pending.").

If the Court finds that non-monetary damages are compensable under the Act, agency

defendants request 30 days from the time of Dr. Hatfill's independent mental examination to

offer an expert report. Defendants also request the opportunity during that 30-day time period to

reopen fact discovery for the limited purpose of deposing plaintiff and Dr. May and plaintiff's

father, Norman Hatfill, regarding such damages, and to preserve their right to submit an expert

report. This minor alteration to the discovery schedule is amply justified by the potential benefit

of avoiding unnecessary discovery. The plaintiff has consented to a stay of discovery into

-18-

emotional damages pending the Court's consideration of this motion, and to the limited

reopening of discovery if the Court rules in the plaintiff's favor.

## CONCLUSION

For the reasons set forth above, agency defendants respectfully request that the Court rule

that non-monetary damages are precluded in this case. If the Court rules that non-monetary

damages are compensable, defendants request that the Court order plaintiff to submit to an

independent psychiatric examination under Fed. R. Civ. P. 35. In either case, defendants ask that

the Court stay discovery into emotional damages pending a ruling on this motion, with discovery

to resume (if the Court denies the motion) in accordance with the terms set forth above.


Dated: May 4, 2006                          Respectfully Submitted,


                                            PETER D. KEISLER
                                            Assistant Attorney General

                                            JEFFREY S. BUCHOLTZ
                                            Deputy Assistant Attorney General

                                            /s/ Paul G. Freeborne
                                            _____
                                            ELIZABETH J. SHAPIRO, D.C. Bar # 418925
                                            PAUL G. FREEBORNE
                                            ELIZABETH GOITEIN
                                            Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Ave., NW,
                                            Washington, D.C. 20530
                                            Tel: (202) 514-5302
                                            Fax: (202) 616-8470

EXHIBIT
Depo Ex. 12
3-22-06 mm

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN J. HATFILL, M.D.,        )
                                )
            Plaintiff,          )
                                )
v.                              )        Civ. A. No. 03-1793 (RBW)
                                )        (Judge Walton)
JOHN ASHCROFT, in his individual )
capacity, et al.                )
                                )
            Defendants.         )
_____ )

## PLAINTIFF STEVEN J. HATFILL'S RESPONSES TO AGENCY DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFF

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Steven J. Hatfill,

M.D., through his undersigned counsel, responds to the Agency Defendants' First Set of

Interrogatories to Plaintiff as follows:

## GENERAL OBJECTIONS

1.      Dr. Hatfill objects to Agency Defendants' instructions to the extent that they seek to

impose upon him any requirements, obligations, or duties beyond those expressly

imposed by law or the Federal Rules of Civil Procedure.

2.      The following responses are based upon information currently known to Dr. Hatfill, and

he reserves the right to supplement or amend his responses should additional or different

information become available.

3.      Nothing contained in the following responses constitutes a waiver of any applicable

objection or privilege as to the requested discovery. Dr. Hatfill reserves all rights to