```
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA


STEVEN J. HATFILL,              :
        PLAINTIFF,              :
                                :
   VS.                          :    C. A. NO. 03-1793
                                :
                                :
JOHN ASHCROFT, ET AL            :
        DEFENDANTS              :
                                :


                         WASHINGTON, D. C.
                         SEPTEMBER 6, 2006

                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE REGGIE B. WALTON


FOR THE PLAINTIFF:       THOMAS CONNOLLY, ESQ.
                         MARK GRANNIS, ESQ.
                         PATRICK O'DONNELL, ESQ.

FOR THE DEFENDANTS:      ELIZABETH SHAPIRO, ESQ.
                         ELIZABETH GOITEIN, ESQ.
                         PAUL FREEBORNE, ESQ.


COURT REPORTER:          PHYLLIS MERANA
                         6816 U. S. COURTHOUSE
                         3RD & CONSTITUTION AVE, N.W.
                         WASHINGTON, D. C.  20001
```

PLAINTIFF'S EXHIBIT 202

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2             THE DEPUTY CLERK:  CIVIL ACTION NUMBER 03-1793,
 3   STEVEN J. HATFILL VERSUS JOHN ASHCROFT, ET AL.
 4             COUNSEL, CAN YOU PLEASE IDENTIFY YOURSELVES FOR
 5   THE RECORD.
 6             MR. O'DONNELL:  YOUR HONOR, GOOD MORNING.  PATRICK
 7   O'DONNELL ON BEHALF OF STEVE HATFILL.
 8             WITH ME IS TOM CONNOLLY AND MARK GRANNIS.
 9             THE COURT:  GOOD AFTERNOON.
10             MS. SHAPIRO:  GOOD AFTERNOON, YOUR HONOR.  I AM
11   ELIZABETH SHAPIRO FROM THE DEPARTMENT OF JUSTICE.  AND WITH
12   ME IS ELIZABETH GOITEIN AND PAUL FREEBORNE.
13             AND I WANTED TO LET YOUR HONOR KNOW THAT WE'RE
14   GOING TO BE DIVIDING UP THE ARGUMENT.  SO MS. GOITEIN WILL
15   ADDRESS THE DAMAGES MOTION, AND I'LL ADDRESS THE LAW
16   ENFORCEMENT MOTION.  MR. FREEBORNE WILL ADDRESS THE
17   INDEPENDENT MEDICAL EXAMINATION.
18             THE COURT:  I BELIEVE I WILL BE PREPARED TO ISSUE
19   A RULING ON THE DAMAGES MOTIONS.  HOWEVER, IN REFERENCE TO
20   THE MOTION TO COMPEL, I BELIEVE I AM GOING TO PROBABLY NEED
21   MORE TIME TO RESEARCH THE ISSUE, AND I THINK I PROBABLY NEED
22   TO SEE THOSE DOCUMENTS FOR MY IN CAMERA REVIEW BEFORE I AM
23   GOING TO BE IN A POSITION TO RULE ON THOSE, ALTHOUGH I WILL
24   PERMIT COUNSEL TO PRESENT ANY ADDITIONAL ARGUMENT THAT YOU
25   WANT TO MAKE IN REFERENCE TO THAT MOTION.
```

1  WE PROBABLY WILL NOT HAVE THE OPPORTUNITY TO
2  ADDRESS THAT UNTIL AFTER THE REPORTING PERIOD SINCE THIS
3  MOTION IS NOT ON MY REPORTING LIST.  SO I PROBABLY WON'T
4  HAVE A CHANCE TO TURN TO ADDRESSING THAT MOTION UNTIL AFTER
5  THE FIRST OF OCTOBER.  BUT WE WILL TRY AND GET IT DONE AS
6  SOON AS WE CAN AFTER THAT.
7       OKAY.  I WILL HEAR ANY ARGUMENT THAT GOVERNMENT
8  COUNSEL WANTS TO MAKE IN REFERENCE TO THE DAMAGES MOTION.
9       MS. GOITEIN:  THANK YOU, YOUR HONOR.  MY NAME IS
10 ELIZABETH GOITEIN FOR THE AGENCY DEFENDANTS.
11      WHERE SOVEREIGN IMMUNITY IS CONCERNED, THE RULE
12 THAT THE SUPREME COURT HAS ANNOUNCED IS CLEAR AND
13 UNEQUIVOCAL.  THE GOVERNMENT'S LIABILITY MAY NOT BE ENLARGED
14 BEYOND WHAT THE TEXT OF THE STATUTE UNAMBIGUOUSLY REQUIRES.
15      THE COURT:  WHY DO YOU SAY THAT THE TEXT OF THE
16 STATUTE WOULD NOT AUTHORIZE THE TYPE OF DAMAGES THAT ARE
17 BEING SOUGHT BY MR. HATFILL IN THIS CASE?
18      MS. GOITEIN:  THE TEXT OF THE STATUTE IN THIS CASE
19 AUTHORIZES DAMAGES FOR, QUOTE, ACTUAL DAMAGES.  NOW, A
20 SURVEY OF THE LEGAL LANDSCAPE CONFIRMS THAT THE TERM "ACTUAL
21 DAMAGES" MAY BE CONSTRUED IN ONE OF TWO WAYS:  IT CAN BE
22 CONSTRUED NARROWLY TO MEAN SIMPLY PECUNIARY DAMAGES, OR IT
23 CAN BE CONSTRUED MORE BROADLY TO ENCOMPASS COMPENSATORY
24 DAMAGES GENERALLY.
25      AND I WOULD NOTE THAT ALL FOUR COURTS OF APPEALS,

1   WHO ADDRESSED THIS QUESTION IN THE PRIVACY ACT CONTEXT, HAVE
2   DETERMINED THAT THE TERM "ACTUAL DAMAGES" IS AMBIGUOUS AND
3   IS CAPABLE OF MORE THAN ONE CONSTRUCTION.
4           AND WHEN I SAY "FOUR," I MEAN INCLUDING THE FIRST
5   CIRCUIT, WHICH DID NOT ACTUALLY DECIDE WHAT THE TERM MEANS,
6   BUT DID CONCLUDE THAT IT WAS AMBIGUOUS.
7           THAT BEING THE CASE, YOUR HONOR, THE RULE OF
8   STRICT CONSTRUCTION, WHICH IS THE RULE THAT APPLIES WHEN
9   SOVEREIGN IMMUNITY IS CONCERNED, COMPELS THE ANSWER THAT THE
10  READING OF ACTUAL DAMAGES THAT HAS THE MORE LIMITED
11  GOVERNMENT LIABILITY IS THE READING THAT SHOULD APPLY IN
12  THIS CASE.
13          AND I WOULD ADD TO WHAT I JUST SAID ABOUT THE FOUR
14  COURTS OF APPEALS THAT ON TOP OF THESE PRIVACY ACT CASES, IN
15  ALL CONTEXTS -- IN ALL CONTEXTS, COURTS INTERPRETING THE
16  TERM "ACTUAL DAMAGES" IN A HOST OF STATUTES HAVE FOUND THAT
17  THIS TERM HAS NO NECESSARY DEFINITION.  THAT IT IS AN
18  AMBIGUOUS TERM THAT IS CAPABLE OF MORE THAN ONE
19  CONSTRUCTION, A NARROW ONE AND A BROAD ONE.
20          THAT MEANS THAT THE QUESTION FOR THIS COURT IS
21  NOT --
22          THE COURT:  SHOULDN'T I ASSUME THAT CONGRESS
23  UNDERSTOOD THAT WHEN THEY ENACTED THE STATUTE AND,
24  THEREFORE, CONCLUDED THAT IT SHOULD BE GIVEN A BROADER
25  INTERPRETATION.  IF THEY WANTED TO SO LIMIT THE TYPE OF

1  DAMAGES, IT SEEMS TO ME THEY COULD HAVE SPECIFICALLY SAID
2  THAT.
3           MS. GOITEIN:  WELL, CONGRESS IS CHARGED WITH
4  AWARENESS OF HOW THE DOCTRINE OF SOVEREIGN IMMUNITY OPERATES
5  IN STATUTES SUCH AS THESE.  SO CONGRESS IS AWARE THAT IF IT
6  WISHES TO PROVIDE RECOVERY FOR EMOTIONAL DAMAGES, IT MUST DO
7  SO EXPRESSLY AND EXPLICITLY IN A WAY THAT CONTAINS NO
8  AMBIGUITY.  SO THE FACT THAT CONGRESS ACTUALLY USED A
9  TERM --
10           THE COURT:  WHAT CASES DO YOU RELY UPON IN SUPPORT
11  OF THE PROPOSITION THAT THE LEGAL LANDSCAPE HAS SAID THAT
12  ACTUAL DAMAGES DON'T INCLUDE THESE TYPES OF DAMAGES?
13           MS. GOITEIN:  THERE ARE MULTIPLE CASES THAT WE
14  CITED IN OUR BRIEFS:  DISTRICT COURTS CASES AND COURTS OF
15  APPEALS CASES.  ALL FOUR COURTS OF APPEALS CASES IN THE
16  PRIVACY ACT CONTEXT, WHICH ARE THE FIFTH CIRCUIT IN JOHNSON,
17  THE 6TH CIRCUIT IN HUDSON, THE 11TH CIRCUIT IN FITZPATRICK,
18  AND THE 1ST CIRCUIT IN OREKOYA OBSERVED THAT, THAT A SURVEY
19  OF THE LEGAL LANDSCAPE COMPELLED THE CONCLUSION THAT THE
20  TERM HAS NO PLAIN MEANING, BUT IT'S CAPABLE OF MORE THAN ONE
21  CONSTRUCTION.
22           THE COURT:  THE JUDGES OF THIS COURT HAVE MOST
23  RECENTLY REJECTED THE POSITION YOU ARE ESPOUSING, RIGHT?
24           MS. GOITEIN:  WELL, IN A WAY THEY HAVE.  I MEAN
25  THEY HAVE TAKEN THE OTHER POSITION, BUT WHEN YOU SAY THAT

1   THEY HAVE REJECTED OUR POSITION, IT IS HARD TO TELL WHAT
2   THEY REJECTED AND WHAT THEY DIDN'T REJECT BECAUSE NONE OF
3   THESE RECENT CASES ENGAGES IN ANY SUBSTANTIVE ANALYSIS.  IT
4   WAS EITHER SIMPLY ASSUMED THAT ACTUAL DAMAGES COULD
5   ENCOMPASS EMOTIONAL DAMAGES, OR THE COURT CITED TO THE
6   JOHNSON CASE.  AND THE JOHNSON CASE MADE THE MISTAKE OF NOT
7   ADDRESSING THE APPLICATION OF SOVEREIGN IMMUNITY.
8           I WOULD LIKE TO ADDRESS THE POINT THAT THE
9   PLAINTIFF HAS RAISED, THAT IF THE TERM "ACTUAL DAMAGES" IS
10  AMBIGUOUS, THEN THE DOCTRINE OF SOVEREIGN IMMUNITY WOULD BAR
11  ANY RECOVERY AT ALL BECAUSE WE COULD ALWAYS CLAIM THAT THE
12  TERM DOES NOT EXPRESSLY INCLUDE WHATEVER KIND OF DAMAGES ARE
13  BEING REQUESTED.
14          WITH ALL DUE RESPECT --
15          THE COURT:  YOU SEEM TO BE ACKNOWLEDGING THAT THE
16  TERM IS AMBIGUOUS.  IF THAT'S TRUE, THEN WHY DO YOU REACH
17  THE CONCLUSION THAT THE DAMAGES THAT ARE RECOVERABLE ARE
18  ONLY PECUNIARY DAMAGES?
19          MS. GOITEIN:  RIGHT.  WELL, IT'S IMPORTANT TO
20  DISTINGUISH BETWEEN OUR SAYING THAT THE TERM IS AMBIGUOUS
21  AND SAYING THAT THE TERM IS MEANINGLESS OR SAYING THAT THE
22  TERM IS CAPABLE OF ANY MEANING WHATSOEVER THAT YOU WANT TO
23  ASCRIBE TO IT.
24          THE TERM HAS BEEN CONSTRUED CONSISTENTLY BY THE
25  COURTS TO HAVE ONE OF TWO POSSIBLE MEANINGS THAT COULD BE

1  APPLIED IN THIS CASE.  AND ONE OF THOSE MEANINGS ARE
2  PECUNIARY DAMAGES, WHICH MAKES SENSE BECAUSE PECUNIARY
3  DAMAGES ARE ACTUAL COMPENSATION FOR A PECUNIARY LOSS, OR,
4  MORE BROADLY, COMPENSATORY DAMAGES, IF YOU TAKE THE VIEW
5  THAT THE FIFTH CIRCUIT DID, THAT INSTEAD OF REFERRING TO
6  ACTUAL COMPENSATION, IT'S REFERRING TO ACTUAL INJURY.
7             SO THOSE ARE TWO CONCEIVABLY PLAUSIBLE READINGS OF
8  THE TERM.  THE TERM CANNOT BE READ TO MEAN UMBRELLA.  IT
9  CAN'T BE READ TO MEAN ANYTHING AT ALL.  AND ONE THING THAT
10 THE TERM CANNOT BE READ TO MEAN IS PURELY EMOTIONAL DAMAGES.
11 THERE IS NO PLAUSIBLE READING OF THE TERM "ACTUAL DAMAGES"
12 THAT WOULD NOT ENCOMPASS A FINANCIAL RECOVERY FOR A
13 FINANCIAL LOSS.  AND NO ONE HAS MADE THAT ARGUMENT.
14             BOTH PARTIES AGREE THAT CONGRESS CLEARLY WAIVED
15 SOVEREIGN IMMUNITY FOR PECUNIARY DAMAGES.  THE ONLY QUESTION
16 IS WHETHER CONGRESS FURTHER WAIVED SOVEREIGN IMMUNITY FOR
17 NONPECUNIARY DAMAGES.
18             THE ONLY OTHER STATUTORY TEXT THAT THE PLAINTIFF
19 CITES IS THE PREAMBLE, WHICH STATES THAT THE ACT SUBJECTS
20 AGENCIES TO SUIT FOR, QUOTE, ANY DAMAGES THAT OCCUR FOR A
21 VIOLATION OF, QUOTE, ANY INDIVIDUAL'S RIGHTS UNDER THE ACT.
22             BUT AS THE PLAINTIFF HAS ACKNOWLEDGED, THE
23 PREAMBLE IS NOT AN OPERATIVE PART OF THE STATUTE.  SO THE
24 PREAMBLE CANNOT ITSELF WAIVE SOVEREIGN IMMUNITY.  IT CAN
25 ONLY CONFIRM A WAIVER THAT ALREADY EXISTS.

1        AND, IN THIS CASE, THERE IS NOT ALREADY A WAIVER
2   IN THE OPERATIVE PART OF THE STATUTE.  MOREOVER, AND EQUALLY
3   IMPORTANT, IT'S CLEAR THAT THE PREAMBLE WAS ENGAGING IN A
4   LITTLE BIT OF WELL-MEANING PUFFERY IN THE SENSE THAT WHEN
5   THE PREAMBLE SAYS THAT DAMAGES ARE AVAILABLE FOR A VIOLATION
6   OF ANY INDIVIDUAL'S RIGHTS UNDER THE ACT, WELL, THAT IS
7   CLEARLY NOT TRUE.  THERE ARE RIGHTS UNDER THE ACT, THE
8   RIGHTS OF ACCESS TO RECORDS AND THE RIGHTS OF AMENDMENT OF
9   RECORDS, FOR WHICH NO DAMAGES ARE AVAILABLE, AND ONLY
10  INJUNCTIVE RELIEF IS AVAILABLE.
11       SO THIS WAS A SWEEPING STATEMENT INTENDED TO
12  CONVEY THE OVERALL IMPORTANCE THAT CONGRESS ATTACHED TO THE
13  RIGHTS BEING CREATED.  IT CANNOT SUSTAIN THE LITERAL
14  INTERPRETATION THAT PLAINTIFF HAS PUT ON IT.
15       THE COURT:  I MEAN I THINK IT'S CLEAR THAT THE
16  AUTHORITIES THAT HAVE GIVEN THE TWO DIFFERENT MEANINGS TO
17  WHAT ACTUAL DAMAGES ENTAIL, THAT MANY OF THOSE AUTHORITIES
18  HAD BEEN ISSUED PRIOR TO THE TIME THAT THIS STATUTE WAS
19  ENACTED.
20       AND THERE ARE MANY LAWYERS WHO SERVE IN CONGRESS,
21  AND ONE WOULD HAVE TO ASSUME THAT THEY WERE AWARE OF THESE
22  TWO DIFFERENT THEORIES OF WHAT ACTUAL DAMAGES ENTAIL, AND
23  THAT IF THEY WANTED TO RESTRICT IT TO ONLY PECUNIARY
24  DAMAGES, THAT THEY WOULD HAVE SPECIFICALLY SAID THAT, RATHER
25  THAN SAYING "ACTUAL DAMAGES" AND, THEREFORE, LEAVING OPEN

1  THE ISSUE THAT IT COULD APPLY TO JUST ONE OR COULD APPLY TO
2  BOTH.  AND I THINK AN INFERENCE COULD BE INFERRED THAT THEY
3  INTENDED FOR IT TO APPLY TO BOTH.
4          MS. GOITEIN:  EXCEPT, YOUR HONOR, THAT THE DEFAULT
5  ASSUMPTION HAS TO WORK THE OTHER WAY.  YOU ARE POSITING A
6  SITUATION WHERE THE DEFAULT IS THAT IT WOULD INCLUDE
7  EVERYTHING AND THAT CONGRESS KNEW HOW TO SPECIFY THAT THEY
8  WANTED THE WAIVER TO BE NARROWER.
9          THE COURT:  YOU'RE SAYING THEY DON'T KNOW HOW TO
10 DO THAT?
11         MS. GOITEIN:  NO, I AM NOT SAYING THAT, YOUR
12 HONOR, BUT WHAT I AM SAYING --
13         THE COURT:  I SOMETIMES WONDER.
14         MS. GOITEIN:  WHAT I AM SAYING IS THAT THE ONE
15 THING THAT IS CERTAINLY CLEAR HERE IS THAT THE DEFAULT
16 POSITION HAS TO BE THAT IF WE CAN'T TELL BY LOOKING AT THE
17 TEXT -- JUST THE TEXT -- WHAT CONGRESS WANTED, THAT YOU HAVE
18 TO GO WITH A NARROWER INTERPRETATION RATHER THAN SAYING,
19 "WELL, CONGRESS KNEW HOW TO BE MORE EXPRESS ABOUT NOT
20 WAIVING SOVEREIGN IMMUNITY."
21         THAT IS A DOUBLE NEGATIVE.  IF CONGRESS DOESN'T
22 EXPRESSLY WAIVE SOVEREIGN IMMUNITY, THEN THE AMBIGUITY
23 CANNOT BE CONSTRUED AGAINST THE FEDERAL GOVERNMENT.
24         AND I WOULD ALSO SAY, YOUR HONOR, THAT IF YOU WERE
25 TO LOOK PAST THE TEXT AND LOOK TO THE LEGISLATIVE HISTORY,

1   FOR EXAMPLE, THERE IS CONFIRMATION IN THERE THAT CONGRESS
2   DID INTEND TO ONLY ENCOMPASS PECUNIARY DAMAGES AND THOUGHT
3   THAT THAT'S WHAT IT WAS DOING.
4           NOW, COULD IT HAVE USED BETTER, MORE CLEAR TERMS?
5   YES, IT PROBABLY COULD HAVE.  BUT THAT DOESN'T CHANGE THE
6   FACT THAT THE TERM THAT IT USED CAN REASONABLY BE
7   INTERPRETED TO MEAN PECUNIARY DAMAGES.  THAT APPEARS TO BE
8   WHAT CONGRESS WANTED AND CERTAINLY, ONCE YOU ADD INTO THAT
9   THE DOCTRINE OF SOVEREIGN IMMUNITY, IT HAS TO BE CONSTRUED
10  THAT WAY.
11          THE COURT:  IF SOMEBODY IS WEALTHY AND A VIOLATION
12  OF THE ACT CAUSES THEM PECUNIARY LOSS BECAUSE THEY ARE
13  WEALTHY, THEY GET MONEY, WHEREAS IF SOMEBODY'S GOOD
14  REPUTATION IS ALL THEY REALLY HAVE, BUT THEY DON'T HAVE A
15  LOT OF MONEY, AND THEY GET INJURED BECAUSE OF THAT, THEY GET
16  NOTHING?
17          MS. GOITEIN:  WELL, I MEAN THAT WOULD BE THE
18  RESULT IN ANY STATUTE THAT WAIVES SOVEREIGN IMMUNITY FOR
19  PECUNIARY DAMAGES.  IT IS ALSO TRUE THAT A PERSON WHO IS NOT
20  WELL OFF MIGHT BE BETTER SERVED BY A PROVISION ALLOWING FOR
21  PUNITIVE DAMAGES BECAUSE PUNITIVE DAMAGES ARE NOT PROVIDED
22  WITH RESPECT TO WEALTH.  THEY DON'T RELATE TO WEALTH.  BUT
23  CONGRESS CLEARLY DETERMINED THAT PUNITIVE DAMAGES WOULD NOT
24  BE ALLOWED.  WE ALL AGREE TO THAT.
25          SO THERE ARE CERTAINLY WAYS IN WHICH CONGRESS

1    COULD HAVE CHOSEN TO EQUALIZE WHAT PEOPLE WOULD OBTAIN,
2    DEPENDING ON THEIR VARIOUS INCOMES, UNDER THE ACT, BUT THAT
3    WAS NOT CONGRESS'S GOAL.
4         AND, IN ANY EVENT, AS I SAID BEFORE, IF THE TEXT
5    OF THE STATUTE IS NOT ABSOLUTELY CLEAR THAT EMOTIONAL
6    DAMAGES ARE AVAILABLE, THEN IT IS IMPROPER TO LOOK TO THE
7    LEGISLATIVE HISTORY TO DETERMINE WHETHER OR NOT THERE HAS
8    BEEN A WAIVER OF SOVEREIGN IMMUNITY.
9         THE COURT:  I THINK I UNDERSTAND YOUR POINT.  LET
10   ME HEAR THE PLAINTIFF, AND I WILL LET YOU RESPOND.
11        MS. GOITEIN:  THANK YOU, YOUR HONOR.
12        MR. GRANNIS:  THANK YOU, YOUR HONOR.  I'M
13   MR. GRANNIS FOR DR. HATFILL.
14        THE MEASURE OF RECOVERY PERMITTED BY THIS STATUTE,
15   THE PRIVACY ACT, IS CONCEDEDLY BROAD, IT'S CONCEDEDLY
16   GENERAL, BUT IT'S NOT AMBIGUOUS.  THE CIVIL REMEDIES SECTION
17   OF THE ACT PROVIDES, AS WE'VE SAID, FOR ACTUAL DAMAGES.  AND
18   WHAT THE GOVERNMENT CALLS THE PREAMBLE, BUT WHICH WE CALL
19   SECTION (2)(B) OF THE ACT, ENACTED BY CONGRESS AND SIGNED BY
20   THE PRESIDENT, EXPRESSLY STATES THAT IT IS A PURPOSE OF THE
21   ACT TO MAKE THE FEDERAL AGENCIES SUBJECT TO SUIT FOR, QUOTE,
22   ANY DAMAGES WHICH OCCUR.
23        NOW, WHETHER YOU THINK OF THAT AS A WAIVER OF
24   SOVEREIGN IMMUNITY OR AS A CONFIRMATION OF THE WAIVER THAT
25   APPEARS IN THE CIVIL REMEDIES PROVISION, IT DOESN'T MATTER.

1   THERE IS SIMPLY NOTHING IN THE TEXT, OR THE STRUCTURE, OR
2   THE PURPOSE, OR THE LEGISLATIVE HISTORY OF THIS ACT THAT
3   EVEN HINTS AT A DISTINCTION BETWEEN PECUNIARY AND
4   NONPECUNIARY HARMS.
5           SO THE DEFENDANT'S ARGUMENT HERE, IT SEEMS, BOILS
6   DOWN TO THE IDEA THAT CONGRESS, INSTEAD OF SAYING "ACTUAL
7   DAMAGES," IF IT REALLY MEANT TO INCLUDE EMOTIONAL DISTRESS
8   DAMAGES, SHOULD HAVE SAID SOMETHING LIKE "ACTUAL DAMAGES,
9   PECUNIARY OR NONPECUNIARY, PHYSICAL OR NONPHYSICAL, DIRECT
10  OR CONSEQUENTIAL" AND ANY OF A DOZEN OTHER TERMS THAT CAN BE
11  APPLIED TO DIFFERENT KINDS OF DAMAGES INSTEAD OF THE ONE
12  THAT THEY CHOSE.
13          OUR POSITION, VERY SIMPLY, IS THAT ACTUAL DAMAGES
14  MEANS ACTUAL DAMAGES. AND WE THINK THE COMMON SENSE OF THAT
15  MATTER PROBABLY EXPLAINS WHY THE LAST FIVE DECISIONS OF
16  JUDGES OF THIS COURT HAVE GONE THAT WAY.
17          NOW, AS FOR THE TEXT OF THE PRIVACY ACT, IT IS
18  TRUE THAT THE STATUTE DOESN'T EXPLICITLY MENTION DAMAGES FOR
19  EMOTIONAL DISTRESS, BUT IT DOESN'T EXPLICITLY MENTION ANY
20  OTHER KINDS OF DAMAGES EITHER. AND THAT IS WHY WE DO
21  BELIEVE THAT IF THE GOVERNMENT CAN CREATE AN AMBIGUITY BY
22  CITING SOVEREIGN IMMUNITY CASES, AND THEN BOOTSTRAP THAT
23  AROUND TO SAY, "WELL, SINCE IT IS AMBIGUOUS, WE WIN," THEN
24  IT CAN DO THIS ON ANYTHING.
25          THERE IS NO WARRANT IN THE STATUTE FOR FINDING

```
 1   THAT CONGRESS SPECIFICALLY INTENDED TO ALLOW RECOVERY OF
 2   MEDICAL EXPENSES, FOR EXAMPLE, FOR PHYSICAL INJURY.  AND I
 3   DON'T KNOW IF THE GOVERNMENT THINKS THAT WOULD BE INCLUDED
 4   OR NOT INCLUDED.  IT WOULD BE ACTUAL.
 5          OUR POSITION IS THAT WHEN CONGRESS USES BROAD
 6   LANGUAGE, THAT BROAD LANGUAGE SHOULD BE GIVEN EFFECT.  IT IS
 7   NOT AMBIGUOUS JUST BECAUSE EXTRINSIC ARGUMENTS FROM A
 8   GOVERNMENT BRIEF COME IN LATER.
 9          THERE IS NOTHING IN THE STATUTE MAKING THIS
10   AMBIGUOUS IN THE WAY THERE WAS IN ALL THE SOVEREIGN IMMUNITY
11   CASES THE GOVERNMENT CITES.
12          AS FOR THE STRUCTURE AND PURPOSE AND LEGISLATIVE
13   HISTORY, IF THE COURT IS INCLINED TO LOOK THAT FAR, SECTION
14   (2)(B) MAKES THE PURPOSE CLEAR.  IT IS TO MAKE FEDERAL
15   AGENCIES SUBJECT TO SUIT FOR ANY DAMAGES WHICH OCCUR.
16          THERE IS NO DISTURBING INCONGRUITY BETWEEN THE
17   CIVIL REMEDIES PROVISION OF THIS ACT AND ANY OTHER PART OF
18   THE ACT THE WAY THERE IS IN THE SOVEREIGN IMMUNITY CASES
19   THAT THE GOVERNMENT CITES, AND THE LEGISLATIVE HISTORY
20   REALLY CONTAINS NOTHING THAT CAN FAIRLY NARROW THE TERM
21   "ACTUAL" TO SOMETHING PECUNIARY.
22          ON THE CONTRARY, THE LEGISLATIVE HISTORY SHOWS
23   THAT THE PRIVACY ACT WAS MODELED ON THE FAIR HOUSING ACT AND
24   THE FAIR CREDIT REPORTING ACT, BOTH OF WHICH PERMIT RECOVERY
25   OF NONPECUNIARY DAMAGES.
```

1           AND, IN ADDITION, OUR OPPOSITION PAPERS AT PAGE 13

2   IDENTIFIED ONE OTHER STATUTE, THE CRIME CONTROL AND

3   SAFE STREETS ACT, WHICH HAS ALSO BEEN CONSTRUED TO PERMIT

4   RECOVERY OF EMOTIONAL DISTRESS DAMAGES AS ACTUAL DAMAGES.

5           NOW, THE GOVERNMENT DOES CITE SOME CASES IN WHICH

6   PHRASE "ACTUAL DAMAGE" IN OTHER STATUTES HAS BEEN USED TO

7   MEAN SOMETHING ELSE. AND THAT SHOULDN'T BE SURPRISING. IF,

8   FOR EXAMPLE, IN A BANKRUPTCY CODE, THERE IS A STATUTE

9   PROVIDING FOR ACTUAL DAMAGES FROM MISUSE OF A BANKRUPTCY

10  STAY OR VIOLATION OF A BANKRUPTCY STAY, WELL, THE BANKRUPTCY

11  CODE IS FROM TOP TO BOTTOM ABOUT PECUNIARY CONSEQUENCES.

12  AND IT SHOULDN'T BE SURPRISING THAT A COURT, UNDERTAKING A

13  VERY PURPOSE-BASED REVIEW OF WHAT THAT STATUTE MEANS, FINDS

14  THAT IT IS REALLY INTENDED TO REACH PECUNIARY DAMAGES RATHER

15  THAN NONPECUNIARY DAMAGES.

16          HOWEVER, EVEN IN THE PECUNIARY CONTEXT, IN

17  PREPARATION FOR TODAY'S ARGUMENT, WE NOTICED THAT EVEN IN

18  THE INTERNAL REVENUE CODE, 26 U.S.C., SECTION 7431(C), WHICH

19  ALSO, OF COURSE, HAS AN OVERARCHING PECUNIARY FOCUS, THE

20  REMEDY FOR UNLAWFUL DISCLOSURE OF TAX RETURN INFORMATION

21  TRACKS THE PRIVACY ACT VERY CLOSELY, RIGHT DOWN TO THE USE

22  OF THE PHRASE "ACTUAL DAMAGES." AND THAT STATUTE HAS ALSO

23  BEEN CONSTRUED TO AUTHORIZE RECOVERY OF EMOTIONAL DISTRESS

24  DAMAGES.

25          AND SINCE WE ARE RAISING THIS AUTHORITY NOW, THE

1  COURT MAY BE INTERESTED IN SEEING JONES V. UNITED STATES,
2  9 F.SUPP.2D 1119.  THE DISCUSSION AT 1148 TO 1150 IS WHERE
3  THE ANALYSIS IS SET FORTH.
4         AS TO WHETHER THE STATUTORY PHRASE SHOULD BE
5  CONSTRUED ACCORDING TO ITS NATURAL, PLAIN, DICTIONARY
6  DEFINITION, OR WHETHER IT IS A TERM OF ART, THE GOVERNMENT,
7  WE THINK, IS ASKING THE COURT TO BELIEVE SIMULTANEOUSLY TWO
8  VERY CONTRADICTORY THINGS.  ON THE ONE HAND, THEY ASK THE
9  COURT TO IGNORE THE DICTIONARY MEANING OF THE WORDS "ACTUAL
10 DAMAGES" ON THE GROUND THAT IT IS REALLY A TERM OF ART AND
11 THAT THE WORDS CAN'T BE READ ACCORDING TO THEIR DICTIONARY
12 MEANING, BUT AT THE SAME TIME THEY ASK THE COURT TO BELIEVE
13 THAT THIS SO-CALLED TERM OF ART ACTUALLY HAS NO ESTABLISHED
14 MEANING IN AMERICAN LAW.
15        AND, IN OUR VIEW, IF IT HAS NO ESTABLISHED
16 MEANING, IT IS NOT A TERM OF ART.  AND THE QUESTION BEFORE
17 THE COURT IS WHETHER DR. HATFILL'S EMOTIONAL DISTRESS
18 DAMAGES AND OTHER NONPECUNIARY HARMS ARE ACTUAL.  AND WE
19 BELIEVE WE WILL BE ABLE TO PROVE THAT AT TRIAL.
20        IF YOUR HONOR HAS ANY OTHER QUESTIONS, I WOULD BE
21 HAPPY TO ANSWER THEM.
22        THE COURT:  THANK YOU.
23        ANY ADDITIONAL COMMENTS BY GOVERNMENT COUNSEL?
24        MS. GOITEIN:  YOUR HONOR, I HAVE A VERY QUICK
25 RESPONSE TO WHAT WAS JUST SAID, WHICH IS THAT ACKNOWLEDGING

1   THAT IN OTHER STATUTES THE TERM CAN MEAN SOMETHING ELSE IS
2   SIMPLY ANOTHER WAY OF ACKNOWLEDGING THAT THE TERM ITSELF, ON
3   ITS FACE, HAS NO SINGLE ESTABLISHED DEFINITION, OR AT LEAST
4   NO ONE DEFINITION THAT INCLUDES EMOTIONAL DAMAGES.  SO THAT
5   SIMPLY CONFIRMS OUR POINT.
6              I WOULD ALSO MAKE THE POINT THAT WE HAVE NEVER
7   SAID THAT THE TERM HAS NO MEANING AND IS MEANINGLESS, AS I
8   SAID.  AS A TERM OF ART, IT HAS BEEN CONSTRUED TO HAVE TWO
9   MEANINGS, NOT A WIDE VARIETY OF MEANINGS THAT WOULD REQUIRE
10  CONGRESS TO WRITE DOWN ABSOLUTELY EVERY SINGLE THING IT
11  COULD POSSIBLY MEAN.
12             AND, FINALLY, I WOULD SAY THAT WHILE PLAINTIFF'S
13  PRIMARY ARGUMENT APPEARS TO BE THAT THE TERM, WHILE
14  EXPANSIVE, IS UNAMBIGUOUS, PLAINTIFF IS ALONE IN THIS
15  POSITION.  AND FOR ALL OF THE DERISION THAT THE PLAINTIFF
16  HAS HEAPED UPON THE GOVERNMENT FOR QUESTIONING THE CLARITY
17  OF THE TERM "ACTUAL DAMAGES," EVERY COURT TO ADDRESS WHETHER
18  THE TERM IS CLEAR ON ITS FACE OR WHETHER IT IS AMBIGUOUS HAS
19  DETERMINED THAT IT IS AMBIGUOUS.
20             THANK YOU, YOUR HONOR.
21             MR. FREEBORNE:  YOUR HONOR, PAUL FREEBORNE.  WE
22  DID HAVE ONE ASPECT WHICH IS AN ALTERNATIVE ARGUMENT.  IF
23  THE COURT DOES FIND THAT EMOTIONAL DAMAGES ARE COMPENSABLE
24  UNDER THE ACT, WE MOVE TO HAVE THE RIGHT TO HAVE OUR
25  EXPERT --

1          THE COURT:  LET ME ADDRESS THE FIRST ISSUE FIRST.
2    LET ME TAKE A SHORT BREAK.  I WILL BE RIGHT BACK.
3          (RECESS WAS TAKEN.)
4          (AFTER RECESS.)
5          THE COURT:  I WANTED TO LOOK AT THE DEFINITION
6    THAT BLACK'S HAS GIVEN TO ACTUAL DAMAGES, WHICH ALSO ARE
7    CHARACTERIZED AS GENERAL DAMAGES.  AND I MUST SAY I DON'T, I
8    GUESS, SEE THE ISSUE FROM THE GOVERNMENT'S PERSPECTIVE
9    BECAUSE, AT LEAST BASED UPON THE DEFINITION IN BLACK'S, IT
10   SEEMS TO ME THAT THE ISSUE OF WHAT ACTUAL DAMAGES ARE IS NOT
11   REALLY AMBIGUOUS.
12         DESPITE WHAT SOME OF THE OLDER CASES MAY HAVE SAID
13   AND DESPITE MAYBE WHAT SOME OF THE CIRCUITS HAVE SAID, IT
14   SEEMS TO ME THAT ACTUAL DAMAGES MEANS DAMAGES THAT A PARTY
15   IS, IN FACT, ABLE TO SHOW THAT THEY SUSTAINED, REGARDLESS OF
16   WHAT THE NATURE OF THE INJURY IS THAT RESULTED IN THOSE
17   DAMAGES.
18         AND I DON'T SEE THE DISTINCTION THAT SHOULD BE
19   MADE WHEN YOU SAY "ACTUAL DAMAGES" BETWEEN PECUNIARY LOSS AS
20   COMPARED TO OTHER LOSS.
21         CLEARLY, THE LAW HAS RECOGNIZED THAT EMOTIONAL
22   TRAUMA THAT CAUSES SOMEBODY INJURY IS RECOGNIZED IN LAW TO
23   THE SAME EXTENT AS AN INJURY THAT CAUSES SOMEBODY TO LOSE
24   THEIR MONEY.
25         AND I DON'T THINK THE LAW HAS MADE A REAL

```
 1   DISTINCTION BETWEEN THE ABILITY OF A PARTY TO RECOVER BASED
 2   UPON ONE INJURY BEING OF A PSYCHOLOGICAL NATURE AND THE ONE,
 3   ON THE OTHER HAND, BEING PECUNIARY IN NATURE.
 4           BLACK'S, FOR EXAMPLE, MAKES A DISTINCTION BETWEEN
 5   NOMINAL DAMAGES, WHICH ARE NOT REAL DAMAGES BECAUSE,
 6   OBVIOUSLY, THE AMOUNT THAT IS BEING AWARDED IS NOT REALLY
 7   BASED UPON ANY INJURY THAT WAS SUSTAINED, AND, ON THE OTHER
 8   HAND, PUNITIVE DAMAGES, WHICH, AGAIN, ARE BEING AWARDED NOT
 9   BECAUSE OF THE INJURY THAT THE PERSON SUSTAINED, BUT BECAUSE
10   OF PUNISHMENT.
11           AND IN BETWEEN THOSE TWO EXTREMES, IT SEEMS TO ME,
12   LIES ACTUAL DAMAGES, REGARDLESS OF WHAT THE NATURE OF THE
13   INJURY IS THAT BROUGHT ABOUT THOSE DAMAGES.
14           SO I WOULD CONCLUDE THAT TO THE EXTENT THAT MAYBE
15   WITHOUT THE LANGUAGE IN WHAT THE GOVERNMENT CALLS THE
16   PREAMBLE EXISTING, MAYBE THERE IS ROOM TO SAY THAT THERE IS
17   AMBIGUITY IN REFERENCE TO WHAT THE TERM MEANS, BUT I THINK
18   CONGRESS IN ITS WISDOM DID INCLUDE THAT LANGUAGE.  AND I
19   DON'T THINK IT'S SUPERFLUOUS.  I DON'T THINK IT'S
20   MEANINGLESS.  I THINK IT DOES IDENTIFY WHAT CONGRESS
21   INTENDED WHEN THEY SAID "ACTUAL DAMAGES."
22           AND I DON'T THINK THAT THE LIMITATION THAT,
23   ADMITTEDLY, SOVEREIGN IMMUNITY PLACES ON THE ABILITY OF A
24   PARTY TO RECOVER AGAINST THE GOVERNMENT WAS REALLY OR SHOULD
25   BE USED AS A BASIS FOR RESTRICTING WHAT I THINK CONGRESS
```

```
 1   INTENDED WHEN THEY SAID THAT A PERSON CAN RECOVER FOR ACTUAL
 2   DAMAGES AS A RESULT OF A PRIVACY ACT VIOLATION.
 3           AND IT SEEMS TO ME THAT ONLY MAKES LOGICAL SENSE.
 4   THE QUESTION I ASKED, I THINK, HAS SIGNIFICANCE BECAUSE I
 5   DON'T THINK THAT CONGRESS WAS INTENDING TO SAY THAT, "WELL,
 6   IF YOU HAVE MONEY, AND SOMETHING IS LEAKED THAT INJURES YOU
 7   OR YOUR POCKET, THAT YOU CAN RECOVER, BUT IF YOU DON'T HAVE
 8   MONEY, AND SOMETHING IS LEAKED THAT CAUSES EMOTIONAL
 9   DISTRESS THAT INJURES, THAT YOU CAN'T RECOVER."
10           IT SEEMS TO ME IF THEY WANTED TO DISCRIMINATE
11   AGAINST FOLKS IN THAT NATURE, THAT THEY WOULD HAVE SO
12   SPECIFIED.  AND NOT HAVING DONE SO, IT IS MY VIEW THAT
13   ACTUAL DAMAGES DOES INCLUDE THE TYPE OF DAMAGE THAT THE
14   PLAINTIFF IS SEEKING.  AND, THEREFORE, I WILL DENY THE
15   GOVERNMENT'S MOTION ON ITS REQUEST REGARDING THAT.
16           ON THE ALTERNATIVE ISSUE THAT THE GOVERNMENT
17   RAISES, I MUST SAY I HAVE SOME ISSUE, IF DR. HATFILL IS
18   SEEKING TO RECOVER THESE DAMAGES, WHY HE SHOULD NOT BE
19   REQUIRED TO HAVE TO UNDERGO AN EXAMINATION SO THAT THE
20   GOVERNMENT IS IN A POSITION TO REFUTE HIS CLAIM THAT HE, IN
21   FACT, HAS SUSTAINED THESE DAMAGES HE IS SEEKING TO RECOVER,
22   BUT I WILL HEAR FROM DR. HATFILL ON THAT ISSUE.
23           MR. GRANNIS:  YOUR HONOR, BECAUSE EMOTIONAL
24   DISTRESS DAMAGES WERE SUSTAINED IN THIS CASE, CERTAINLY
25   DR. HATFILL'S MENTAL CONDITION IS RELEVANT FOR RULE 26
```