**DEA SENSITIVE**

This manual is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the DEA without the express permission of the Office of Chief Counsel.

[WebSter Home] [Contents] [Search] [What's New] [Help] [Feedback]
[Previous Section] [Next Section]

## 6321 GENERAL

A. The following provisions pertain to all dissemination of investigative information:

1. Need to Know. Dissemination of investigative information will be limited to those recipients with a need for the information to perform their duties or functions.

2. Transmission Security.

a. Information bearing a National Security Classification will be transmitted in accordance with Subchapter 865 of the Planning and Inspection Manual.

b. DEA investigative and regulatory reports and records are designated "DEA SENSITIVE". Transmittal of "DEA SENSITIVE" materials will be by U.S. Government courier, by first class mail, or by personal delivery.

3. Third Agency Rule. When a request is received for information that is contained in a report or record furnished to DEA by another agency and the release of material or information is primarily the responsibility of the other agency, the person submitting the request will be directed to the other agency.

B. The following definitions apply to terms used throughout this subchapter.

1. Individual. The term as used herein means a citizen of the United States or an alien lawfully admitted for permanent residence.

2. Individual Record. Information constitutes a record within the meaning of the Privacy Act only if it is retrievable by the name or a unique identifier by which an individual can be identified. Thus, within the meaning of this subchapter and the Privacy Act of 1974, a DEA record on an individual may be any item of information on the NADDIS display record, as well as information contained in investigative files referenced on the respective index records.

3. Disclosure. A disclosure of information is the release to a non-DOJ person or agency of any item of information that includes either the name of an individual or any number or identifying item, such as a photograph or finger or voice print, by which the individual may be subsequently identified. The actual release of the information may be in documentary, photographic, or automated media or by oral disclosure.

**(See Memorandum dated January 12, 2000, by Roy A. Adams, Acting Chief of Operations Management, Subject: Partial NADDIS Records in TECS.)**

**(See Memorandum dated September 8, 1998, by Gregory K. Williams, Chief of


PLAINTIFF'S EXHIBIT
208
ALL-STATE LEGAL®

000808/

Operations, Subject: Release of DEA Investigative Reports and Information.)**

4. Other Investigative Information. This term is used herein to describe investigative information on foreign subjects, legal aliens admitted to the United States on a temporary basis, or illegal aliens and general information and data not directly related to identifiable citizens of the United States or aliens legally admitted for permanent residence.

5. Non involved Party. This includes those officials of other agencies or private persons who cannot substantiate a need-to-know for investigative information for an authorized purpose.

* Revision

** Addition

[WebSter Home] [Contents] [Search] [What's New] [Help] [Feedback]
[Previous Section] [Next Section]
DEA SENSITIVE
This manual is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the DEA without the express permission of the Office of Chief Counsel.

Search Results: [Go To First Match In This Doc] | [Go Back To Search Results] | [Previous Doc] | [Next Doc]

**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the
DEA without the express permission of the Office of Chief Counsel.
CLASS>

[WebSter Home] [Contents] [Search] [What's New] [Help] [Feedback]
HDR> [Previous Section] [Next Section]

# 6322 EXCHANGE OF INFORMATION WITH OTHER AGENCIES

## CONTENTS

6322.1 DISSEMINATION OF INVESTIGATIVE INFORMATION WITHIN THE DEPARTMENT
OF JUSTICE

**6322.2 DISSEMINATION OF INVESTIGATIVE INFORMATION OUTSIDE THE
DEPARTMENT OF JUSTICE**

6322.3 REQUESTING INDIVIDUAL RECORDS FROM OTHER AGENCIES

**6322.4 FURNISHING INFORMATION IN RESPONSE TO A SUBPOENA OR OTHER
DEMAND**

## 6322.1 DISSEMINATION OF INVESTIGATIVE INFORMATION WITHIN THE DEPARTMENT OF JUSTICE

**(See **Teletype 17930** dated November 28, 2005, Subject: Revised Procedures for Requesting Document and Computer Exploitation Support from the National Drug Intelligence Center (NDIC))**

**(See **Teletype 17860** dated November 23, 2005, Subject: DEA Interim Policy: Identifying Suspected Terrorists through Terrorist Screening Center Procedures and Protocols)**

(See **Teletype 12418** dated July 26, 2005, Subject: Roles and Responsibilities of DEA Special Agents Assigned as Liaison or Full Time to the FBI National Joint Terrorism Task Force and Joint Terrorism Task Forces and Reporting and Sharing of Information Pertaining to Terrorist Related Investigations and Information)

(See *Conant* Enforcement Plan)

Investigative information, including individual records, may be disseminated within DEA and to other agencies of the Department of Justice as outlined in 6321 above. The disclosure accounting procedures detailed in 6327 do not apply to disclosures of information within the Department of Justice.

**NOTE:** Within the meaning of the >Privacy> <>Act> of 1974, members of a joint organization are considered to be members of the lead organization. Therefore, where DEA participates as the lead

organization in a formal joint law enforcement organization with other Federal, state or local officials, such as in a DEA Task Force, disclosures may be made under the provisions of this paragraph, subject to the conditions outlined in Section 6321.

## 6322.2 DISSEMINATION OF INVESTIGATIVE INFORMATION OUTSIDE THE DEPARTMENT OF JUSTICE

All disclosures of investigative information outside the Department of Justice are subject to the accounting procedures in 6327. Release of investigative information which includes an individual record to a person or agency outside the Department of Justice is authorized only when one of the following conditions is met:

(See Memorandum dated January 12, 2000, by Roy A. Adams, Acting Chief of Operations Management, Subject: Partial NADDIS Records in TECS.)

(See Memorandum dated June 2, 1999, by the Assistant Administrator for Operational Support, Subject: Policy: Control and Decontrol of DEA Sensitive Information.)

(See Memorandum dated September 8, 1998, by Gregory K. Williams, Chief of Operations, Subject: Release of DEA Investigative Reports and Information.)

NOTE: The section of the <>Privacy≥ <>Act≥ which authorizes each type of disclosure appears in parentheses after each condition. This information must be entered in item 6 of the DEA-381, Disclosure Account Record (see 6327).

A. The individual named in the disclosure has either requested in writing or has given prior written consent that the disclosure be made to a specific person or an otherwise authorized official of agency. ((b))

B. Disclosures may be made to designated agencies or activities without the consent of the individual, provided the release is for a routine use in discharge of DEA law enforcement or regulatory responsibilities and provided the would-be recipient has established a need-to-know for the information. "Routine use" disclosures may be made to the following agencies or persons at the initiative of DEA or in response to an appropriate oral or written request: ((b)(3))

    1. Other Federal law enforcement and regulatory agencies

    2. State and local law enforcement and regulatory agencies

    3. Foreign law enforcement agencies with whom DEA maintains liaison

    4. The Department of Defense and Military Departments

    5. The Department of State

    6. Intelligence Agencies

    7. The United Nations

    8. Interpol (See DEA teletype 23309 dated October 18, 1999, subject: Policy Regarding

000004

the Application of Interpol Notices.)

    9. To individuals and organizations in the course of investigations to elicit information

C. In addition, disclosures are routinely made in the following categories for the purposes stated:
((b)(3))

    1. To Federal agencies for national security clearance purposes and to Federal and
state regulatory agencies responsible for the licensing or certification of individuals in
the fields of pharmacy and medicine.

    2. To the Office of Management and Budget upon request in order to justify the
allocation of resources.

    3. To state and local prosecutors for assistance in preparing cases concerning criminal
and regulatory matters.

    4. To the news media for public information purposes (See 6326).

    5. To the Comptroller General, or any of his authorized representatives in connection
with a General Accounting Office audit or inspection.

    6. Pursuant to the order of Federal or state court. See paragraph 6322.4.

D. Disclosures may be made for law enforcement purposes in response to requests from law
enforcement and regulatory agencies, provided the request is signed by an authorized official of
the agency, identifies the record and the specific information required, and states the law
enforcement purpose for which the desired information will be used. ((b)(7))

NOTE: DEA may release investigative information under this condition or the routine use
condition, as appropriate. Therefore, the basis for the disclosure reported on Form DEA-381 must
be determined from the contents of the request and the media or means by which the request was
received. Citation of both this provision and the routine use provision is appropriate where it is
deemed necessary for completeness to provide at DEA initiative information beyond that
requested. If, however, only the specific information requested is provided, subsection (b)(7) will
be cited as the basis for the disclosure.

E. Any disclosures meeting any of the following conditions will be made only by DEA
Headquarters:

    1. To the extent of matters within the jurisdiction of the Congress, to either House of
Congress, any committee or subcommittee thereof or any joint committee of Congress
or subcommittee of any such joint committee. ((b)(9))

    2. To a person pursuant to showing of compelling circumstances affecting the health
or safety of an individual on whom a record is maintained. ((b)(8))

    3. To the National Archives as a record which is deemed to have sufficient historical
value to warrant its continued preservation by the United States Government. ((b)(6))

4. To persons under provisions of the Freedom of Information Act. ((b)(2))

## 6322.3 REQUESTING INDIVIDUAL RECORDS FROM OTHER AGENCIES

A. Procedures for such requests to a Federal agency depend on whether the agency provides information to DEA as a routine use and has defined this use in the Federal Register.

    1. If a Federal agency has defined the provision of information on individuals to DEA as a routine use, normal channels for request/exchange of information, including oral requests, pertain.

    2. To obtain information from Federal agencies who do not routinely provide information to DEA, specific written requests, signed by the SAC or Headquarters Office Head must be submitted. The request must include, at a minimum, section (b)(7) of the <>Privacy≥ <>Act, which pertains to disclosures to law enforcement agencies:

    a. The identity of the desired record by use of a name or another identifying element and the specific portion of the record or items of information requested.

    b. A statement that advises the agency of the law enforcement purpose for which the information is requested.

B. A request to another Federal, state, local or foreign agency for information on an individual will of necessity involve providing certain information to the agency to elicit a meaningful response. The nature of the information revealed in the request determines whether or not an account of the disclosure must be made.

    1. If the information given is of a nature that might be available to anyone acquainted with the individual, an account of the disclosure is not required. Examples of such items are name, date of birth, physical description, address, automobile registration number, etc.

    2. If, in addition to items such as the foregoing, the request reveals other information that has resulted from DEA investigative activities, the disclosure must be reported on the DEA-381. Examples of such information would be the fact that the individual is being investigated for a particular offense, his alleged criminal activities, his criminal associates, modus operandi, etc.

C. In the process of a DEA investigation, the mutual request response exchange with other agencies often represents a continuing dialogue that may extend for an indefinite period of time. In such cases it is sufficient to include, along with the nature of the disclosure, the date of initiation for the exchange involved. Additional DEA-381's reporting disclosures to the same agency must be prepared when additional individuals are identified and their names and pertinent investigative information are disclosed. Repetitive reports of disclosures on the same individual in the same investigation to the same agency are not required.

D. Information contained in positive responses to such inquiries will be processed as outlined in Chapter 62, and is subject to the security and privacy provisions of this subchapter.

## 6322.4 FURNISHING INFORMATION IN RESPONSE TO A SUBPOENA OR OTHER DEMAND

A. The authority of SAC's and the Chief Counsel to release certain information relating to controlled substances is contained in 28 CFR 0.102. This authority was granted to facilitate cooperation with Federal, state and local officials concerned with suppressing the abuse of controlled substances and permits the furnishing of:

    1. Information obtained by DEA and DEA investigative reports to Federal, state and local officials engaged in the enforcement of laws related to controlled substances.

    2. Information obtained by DEA and DEA investigative reports to Federal, state and local prosecutors and state licensing boards, engaged in the institution and prosecution of cases before courts and licensing boards related to controlled substances.

    3. Testimony of DEA officials in response to subpoenas issued by the prosecution in Federal, state and local criminal cases involving controlled substances.

B. 28 CFR 0.103 does not authorize or apply to the disclosure of investigative information upon subpoena or demand:

    1. For cases that do not involve controlled substances.

    2. For civil matters.

    3. From the defense in criminal cases.

    4. From a state court where DEA would object to the disclosure on any of the grounds set forth in 28 CFR 16.26 (e.g., it would reveal cooperating individual's identity, classified information, investigative techniques, etc.).

These situations are governed by the provisions of 28 CFR 16B, which require prior review and authorization by the Department. Where any such situation arises, the SAC should immediately notify the Office of Chief Counsel and the appropriate U.S. Attorney's Office, which will jointly formulate an appropriate course of action.

(See Memorandum by Dennis F. Hoffman, Chief Counsel dated July 13, 1994, Subject: Policy Change Regarding DEA Employee Deposition Authorization.)

\* Revision

\*\* Addition

DEA SENSITIVE
This manual is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the DEA without the express permission of the Office of Chief Counsel.
CLASS>

000007

**DEA SENSITIVE**

This manual is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the DEA without the express permission of the Office of Chief Counsel.

[WebSter Home] [Contents] [Search] [What's New] [Help] [Feedback]
[Previous Section] [Next Section]

## 6323 REQUESTS FOR INVESTIGATIVE INFORMATION BY MEMBERS OF THE PUBLIC

A. The Headquarters Freedom of Information Section will respond to all Privacy Act of 1974 and Freedom of Information Act requests submitted by members of the public.

The DEA Investigative Reporting and Filing System has been exempted by the Attorney General from certain provisions of the Privacy Act of 1974.

Note, however, that exemption from the above-cited provisions does not necessarily mean that all investigative information requested by an individual can be withheld by DEA.

B. Requests from members of the public received in DEA field offices will be processed as follows:

1. Freedom of Information Act Requests

a. In response to requests made in person or by telephone, advise the requestor that the proper channels for such requests are published in the Code of Federal Regulations. Refer requesters to 28 CFR Part 16, as amended, for Departmental regulations, procedures, fee schedules, etc. Freedom of Information Act requests must be made in writing to the *Chief, Freedom of Information Section.* All requests should be clearly marked "Freedom of Information Act" and should specify what documents or records are sought by the requestor.

b. Written requests addressed to field or Headquarters offices will be forwarded immediately by route slip to the Freedom of Information Section (AMF) at Headquarters. Do not acknowledge receipt of the request.

Under no circumstances should a field or Headquarters office acknowledge the existence or non-existence of any of the requested data in DEA files to a requestor. A written response will be forwarded to the request or by the Administrator regarding the disclosability of the requested data.

2. Privacy Act Requests

a. In response to inquiries made in person or by telephone, advise the requestor that the proper channels for such requests are published in the Code of Federal Regulations and that written inquiries must be mailed to:

Drug Enforcement Administration

Freedom of Information Section

1405 I Street, N.W.

Washington, D.C. 20537

b. Written inquiries directed to DEA field or Headquarters offices will be handled in the same manner as directed in paragraph 1a, above.

NOTE: The Freedom of Information Act and the Privacy Act are different Acts. The Freedom of Information Act deals with all agency documents and records. The Privacy Act deals only with documents and records of an agency which are related to persons.

Both are complex acts. In dealing with the public, field offices should not try to interpret either Act. General inquiries regarding these acts should be directed to AMF.

**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the DEA without the express permission of the Office of Chief Counsel.

000010

**DEA SENSITIVE**

This manual is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the DEA without the express permission of the Office of Chief Counsel.

[WebSter Home] [Contents] [Search] [What's New] [Help] [Feedback]
[Previous Section] [Next Section]

# 6326 PUBLIC INFORMATION

---

## CONTENTS

6326.1 GENERAL

6326.2 INFORMATION CONCERNING DEA POLICY, POSITIONS OR PROCEDURES

6326.3 INVESTIGATIVE INFORMATION

6326.4 INFORMATION FOR DRUG ABUSE PREVENTION PURPOSES

6326.5 PUBLICATIONS

---

## 6326.1 GENERAL (See Revised DEA Media Policy, dated December 10, 1999.)

A. Information which may be released to the news media and the general public may be divided into three broad categories:

    1. Information concerning DEA policy, positions and operations.

    2. Information on violations of narcotic and dangerous drug laws.

    3. Public information designed to prevent the abuse of narcotics and dangerous drugs.

These instructions apply to all personnel, but some deviations must be noted to cover application by Headquarters and field office personnel. Guidelines pertaining to the three categories outlined in the above paragraph are thus set forth separately for field offices and for the Headquarters professional staff.

\*\*Guidelines pertaining to foreign media contact are found in Section 651.G(4).\*\*

B. Special Agent participation in media interviews or publication of articles requires prior approval of the SAC. At Headquarters, agents will obtain approval from the Assistant Administrator for Operations. Approval will be granted only for interviews or articles which emphasize the overall objectives, goals and functions of DEA.

## 6326.2 INFORMATION CONCERNING DEA POLICY, POSITIONS OR PROCEDURES

A. Field Personnel. The SAC is authorized to release that information which is related to his Division and does not encroach upon overall DEA matters. Examples of this are:

1. Apparent increase or decrease in illicit drug or narcotic violations.

2. The role of the Division Office in educational and training programs.

3. Cooperation with state and local law enforcement agencies.

Under no circumstances will SACs respond to inquiries which relate to DEA activity on a nationwide scope, e.g., budgetary matters, personnel assignments, legal matters, legislative happenings, or Departmental and DEA policy. (See Exhibits 1 and 2, DEA teletypes 100051 dated May 14, 1997, and 13806 dated July 2, 1997, from Gregory K. Williams, DO, Subject: Entry of Preliminary Injunction Affecting Prosecutions and Administrative Actions Against California Physicians Who Recommend Marijuana to Their Patients.)

B. Headquarters Professional Staff. All inquiries made directly to a Headquarters professional staff member will be referred to PA. PA may then request information relative to the inquiry from the staff member, or in the interest of accuracy and expediency, authorize the staff member to respond directly to the inquiry. Exceptions to this may occur when, for example, the staff member is queried relative to a presentation made before a public group or organization. In this case it is proper for the staff member to clarify any statements made in the presence of the press. PA will be notified of such action.

## 6326.3 INVESTIGATIVE INFORMATION

A. Field Personnel

1. Information Concerning Arrests or Criminal Offenses. These instructions apply to the release of information to the news media from the time a subject is arrested or is charged with a criminal offense until the proceeding has been terminated by a trial or otherwise. Such releases constitute accountable disclosures. The SAC or his designee, subject to specific limitations imposed by law, court rule or order, may make public the following information:

a. The defendant's name, age, residence, employment, marital status, and similar background information.

b. The substance or text of the charge, such as complaint, indictment, or information.

c. The identity of the investigating and arresting agency and the length of the investigation.

d. The circumstances immediately surrounding an arrest, including the time and place of arrest, resistance, pursuit, possession and use of weapons, and a cursory description of items seized at the time of arrest. An estimate of the approximate wholesale value of the drugs seized may be included only if asked. Since these values vary by geographic area over time, such estimates should be made cautiously and only in response to direct questions. Disclosures will include only incontrovertible, factual matters, and will not include subjective observations. If background information or information relating to the circumstances of an arrest would be highly prejudicial, and if the release thereof would serve no law enforcement function, such information will not be made public.

2. Volunteering Background Information. SAC's will not volunteer for publication any information concerning a defendant's prior criminal record. However, this is not intended to alter the policy that Federal criminal conviction records are matters of public record, and this information may be made available if approved by the United States Attorney.

3. Release of Information Prior to or During the Trial Period. Because of the particular danger of prejudice resulting from statements made in the time approaching and during this period such statements must be avoided. Any such statement or release will be made only when circumstances absolutely demand a disclosure of information and will include only information which is clearly not prejudicial. Prior to release, such statements will be cleared by the United States Attorney handling the case.

4. Significant Cases. Information relative to arrests or cases, which in the opinion of the SAC have particular national significance, will be relayed by teletype to A, outlining the pertinent facts and requesting a press release. AO will coordinate the request with PA, who will determine whether the Department of Justice or DEA will make the press release. PA will notify and coordinate with the SAC as to the determination and status of the press release. If the arrest was made in cooperation with a U.S. Attorney, a grand jury investigation, state or local enforcement agencies, or another Federal agency, PA should be so informed. A joint release will then be considered, or the Department of Justice may waive the press release in favor of the other agencies involved. It is DEA's policy to give credit to any and all agencies which assist in any way. Following a determination that the information is to be released by Headquarters or the Department of Justice, PA will, by the most expeditious means, notify the SAC that the information is being released. Within a reasonable length of time after receiving such notification from Headquarters (usually one hour), the SAC may give identical information to the local press. No favoritism is to be shown to any media, but all will receive notification of the arrest in rapid succession. The two major wire services should not be overlooked, for these provide wider coverage. SAC's will keep a local press card file containing the names of media personnel who have acquired some expertise in reporting criminal and drug cases. This establishes a good relationship with the press, thus assuring DEA of accurate coverage.

5. Information Restricted from Release. The release of certain types of information generally tends to create danger of prejudice without serving a significant law enforcement function. Therefore, SAC's will refrain from making available the following:

a. Observations about a defendant's character

b. Statements, admissions, confessions, or alibis attributable to a defendant.

c. References to investigative procedures, such as fingerprints, polygraph examinations, ballistic tests, or laboratory tests.

d. Statements concerning the identity, credibility or testimony of prospective witnesses.

e. Statements concerning evidence or argument in the case, whether or not it is anticipated that such evidence or argument will be used at trial.

6. Release of Agent Identity. Agents will make every reasonable effort to see that their photographs or names do not appear in press releases. This can usually best be

accomplished by establishing contact with press representatives at the outset of any incident and explaining the press policy of DEA. When credit is provided in a news release regarding DEA agents it should appear simply as "Special Agents of the Drug Enforcement Administration" and refrain from any direct identification of agents by name.

7. Assisting New Media. SAC's will take no action to encourage or assist news media in photographing or televising evidence, defendants or accused persons being held or transported in Federal custody. Photographs of evidence or defendants will not be made available unless a law enforcement function is served thereby. If such requests are received from news media, the local U.S. Attorney will be contacted for a decision. This policy does not restrict the release of pertinent information concerning a defendant who is a fugitive from justice when the information would assist in the fugitive's apprehension.

8. Exceptions to the Policy on Release of Information. If a SAC believes that, in the interest of the fair administration of justice and the law enforcement process, information beyond these guidelines should be released in a particular case, he will confer with AO, and then request permission of the local United States attorney to release the information.

B. Headquarters Professional Staff. In general, Headquarters personnel are not likely to be called upon to volunteer information concerning arrests and cases. If such is the case, however, all inquiries will be referred to CPP. CPP will make the determination as to whether or not Headquarters personnel will handle the inquiry. Situations such as this may arise in connection with a case which has been closed, but information for background purposes is needed by a particular member of the press.

## 6326.4 INFORMATION FOR DRUG ABUSE PREVENTION PURPOSES

A. Field Personnel. When the inquiry is related to general public information such as is contained in pamphlets, books and papers, field personnel may refer the inquiry to the Training Officer. This officer has access to Headquarters for information which he cannot supply from Division sources.

B. Headquarters Professional Staff. CPP will process all inquiries, except those from Congressional sources, related to general information, whether made in writing or by telephone.

## 6326.5 PUBLICATIONS

The publication of articles by DEA employees may be authorized, provided the content of the article is commensurate with the training and experience of the employee and does not interfere with the duties of his position. Generally speaking, these projects should be in keeping with the overall objectives, goals and functions of DEA. Articles and manuscripts that are prepared for publication must be cleared by the SAC or Headquarters Assistant Administrator. Clearance from CPP is also required when the text matter pertains to controversial issues.

DEA SENSITIVE
This manual is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the DEA without the express permission of the Office of Chief Counsel.

000014

**DEA SENSITIVE**

This manual is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the DEA without the express permission of the Office of Chief Counsel.

CLASS>

[WebSter Home] [Contents] [Search] [What's New] [Help] [Feedback]
HDR> [Previous Section] [Next Section]

# 6327 ACCOUNTING FOR DISCLOSURES

## CONTENTS

6327.1 GENERAL

6327.2 DISCLOSING OFFICE RESPONSIBILITIES

6327.3 HEADQUARTERS RESPONSIBILITIES

6327.4 DISCLOSURE ACCOUNT RECORD, DEA FORM 381

## 6327.1 GENERAL

Except for disclosures of individual records made to a Department of Justice Agency and disclosures made pursuant to the Freedom of Information Act, all disclosures of individual records are accountable. Accountable disclosures, therefore, include disclosures to persons, the Congress, and agencies outside the Department of Justice. All DEA offices will report each such disclosure from the Investigative Reporting and Filing System ( including NADDIS) on DEA Form 381, Disclosure Account Record, as outlined below. Headquarters (AMRI) will maintain a central account of such disclosures of individual records to provide an audit trail to assist in determining DEA compliance with the >Privacy≥ <>Act≥.

**(See Memorandum dated September 8, 1998 by Gregory K. Williams, Chief of Operations, Subject: Release of DEA Investigative Reports and Information.)**

** NOTE: The DOJ has approved by memorandum the elimination of any DEA <>Privacy≥ <>Act≥ Disclosure--Accounting 381 procedures regarding exchanges of investigative records within all foreign U.S. missions. Investigative disclosures to the State Department are also included in this category and do not require 381 preparation.**

## 6327.2 DISCLOSING OFFICE RESPONSIBILITIES

A. Each DEA office that makes accountable disclosures will maintain an office disclosure account file of the carbon copies of DEA-381. The file will be maintained for 3 years. Subsequent to verification by AMRI that the central account is complete, DEA offices will be authorized in writing to destroy the office disclosure account file for the year specified.

B. Each office will maintain a central control log for assignment of the disclosure sequence number. A separate log will be maintained for each system of records.

## 6327.3 HEADQUARTERS RESPONSIBILITIES

A. AMRI will maintain a central disclosure account. A separate file, consisting of original copies of DEA Form 381, will be maintained for each office reporting disclosures. This account will be maintained for 5 years or the life of the record, whichever is longer, and may contain reports for records which have been retired to a Federal Records Center.

B. AMRI will conduct a periodic audit of each office disclosure account to ensure that the central disclosure account is complete. Reporting offices will be promptly informed of any discrepancies noted for corrective action. Once the central account is determined to be complete, each office will be authorized in writing to destroy the office account file for a specific year.

C. An automated central index of disclosures by name of the individual will be maintained. The DEA-381 will be reviewed for accuracy and completeness prior to processing for the automated indexing.

## 6327.4 DISCLOSURE ACCOUNT RECORD, DEA FORM 381

A DEA-381 will be prepared by each DEA employee who makes a disclosure under any of the conditions specified in Section 6322.

Disclosures made from different systems of records (see Exhibit 2) must be reported on separate DEA Form 381's.

A. *Preparation.* (See Exhibit 1.) The DEA Form 381 will be prepared in duplicate. Enter information as follows:

1. Date (Item 1). Enter the date the disclosure was made.

2. Disclosure Number (Item 2). Disclosure numbers will be constructed as follows:

a. Records System Identifier. This identifies the system of records from which the disclosure was made. See Exhibit 2.

b. Office Designator. See Appendix G.

c. DEA Office/Task Force Indicator. DEA Offices will enter a zero. DEA Task Forces will enter an "X".

d. Fiscal Year. Enter the last two digits of the fiscal year.

e. Sequence Number. This is a sequential number identifying each disclosure made from each records system by an office during a given year. Commence with one at the beginning of each fiscal year; do not enter leading zeros.

000016

The first four portions of the disclosure number (records system identifier through fiscal year) will be entered by the person preparing the report. The sequence number will be assigned by the

individual maintaining the control log (see 6327.2 above).

3. Disclosed To (Item 3). Enter the name of the person or the name and address of the agency to whom the disclosure was made. For disclosures to DEA cooperating individuals, enter only the cooperating individual number. **If the disclosure is an EPIC publication (Brief or Special Report), enter "See Attached List", and attach to the DEA-381 a list of the names and addresses of the agencies to whom the publication was distributed. Note: Items described in paragraphs 5 thru 9 below will be preprinted by EPIC on the DEA-381 attached to the publication.**

4. Disclosed By (Item 4). Enter the typed name and signature of the person actually making the disclosure. Should more than one person be a party to a disclosure, the senior DEA employee will sign the disclosure report.

5. Purpose of Disclosure (Item 5). Check the appropriate block to indicate the primary justification for the disclosure. Immediately after the box checked, enter the section of the ≤>Privacy≥ ≤>Act which allows the disclosure, as noted in 6322. For example, enter "(b)(3)" for a routine use disclosure.

6. Nature of Disclosure (Item 6).

a. Enter the number 1 in the appropriate block to distinguish between oral and written disclosures.

b. Enter a general description of the contents of the disclosure. Neither a complete listing of items in a documentary disclosure nor the details of a conversation are required.

7. Name (Item 7a). List the names of the individuals that were contained or discussed in the disclosure. Enter last name, first name, and middle name or initial, as disclosed. Where both a true name and an alias name or names were disclosed, list the true name only; where only an alias name was disclosed, enter the alias name.

8. ID Number (Item 7b. Enter the NADDIS number for each name if a number has been assigned and access to DATS is available.

9. File Number (Item 7c. Enter the case file number or the general file number from which the disclosure on each name was made. Should multiple files be involved on a single individual, enter the most recent file number. Where a disclosure is made that relates only to a general file for which a general file number was not assigned, enter "GFT followed by the office designator of the originating office. On the reverse side of the form enter the number (1 through 35) related to the name and the general file title.

B. *Distribution*

1. The original of each DEA Form 381 for disclosure from the Investigative Reporting and Filing System will be forwarded to Headquarters, AMRI.

2. The duplicate copy of each DEA Form 381 for a disclosure from the Investigative Reporting and Filing System will be maintained by the office making the disclosure

and will be filed by disclosure number as outlined in 6327.2.

\* Revision

\*\* Addition

[WebSter Home] [Contents] [Search] [What's New] [Help] [Feedback]
FTR> [Previous Section] [Next Section]
DEA SENSITIVE
This manual is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the DEA without the express permission of the Office of Chief Counsel.
CLASS>

Search Results: [Go To First Match In This Doc] | [Go Back To Search Results] | [Previous Doc] | [Next Doc]

000018

This manual is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the DEA without the express permission of the Office of Chief Counsel.

Case 1:06-cv-00644-EGS    Document    DEA SENSITIVE    Filed 07/14/2008    Page 19 of 25

[WebSter Home] [Contents] [Search] [What's New] [Help] [Feedback]
[Previous Section] [Next Section]

## 6331 DEA STATE AND LOCAL TASK FORCE PROGRAM

### CONTENTS

6331.1 PURPOSE

6331.2 OBJECTIVES

6331.3 TASK FORCE CREATION, MODIFICATION AND ABOLISHMENT

6331.4 TASK FORCE PERSONNEL AND OPERATIONS

6331.5 QUARTERLY TASK FORCE SUMMARY REPORT

6331.6 DEPUTIZATION OF STATE AND LOCAL OFFICERS - TITLE 21 UNITED STATES CODE (USC) 878

6331.61 General

6331.62 Deputization of Officers Assigned to a Formally Recognized DEA State and Local Task Force

6331.63 Deputization of Officers Assigned to Case Specific Activities Including Organized Crime Drug Enforcement Task Force (OCDETF) Investigations

6331.64 Other Deputizations

6331.65 Termination/Continuation of Title 21 Deputizations

6331.66 Emergency Deputizations

---

**6331.1 PURPOSE.** This section sets forth operational policies and procedures for program-funded (Headquarters funded) and provisional (Division-funded) task forces of the Drug Enforcement Administration (DEA) State and Local Task Force Program. Financial guidelines for program-funded task forces are contained in 0586 of the Administrative Manual. Exhibit 1/633 is a list of acronyms pertaining to this section.

**6331.2 OBJECTIVES**

A. Effective control of the illicit drug traffic depends to a large extent on close cooperation among agencies at all levels of government. Collectively, state and local law enforcement agencies dedicate more resources to drug enforcement than does the federal government. It is, therefore, of major interest to DEA that state and local agencies be encouraged to expend their resources in line with national objectives, and that there be close interagency cooperation at all levels.

B. The specific objectives of the State and Local Task Force Program are to:

1. Disrupt the illicit drug traffic in specified geographic areas by immobilizing the highest levels of targeted violators and trafficking organizations.
2. Increase the effectiveness of participating agencies by providing extended on-the-job training to assigned officers and exposing them to the benefits of selective targeting.
3. Improve operational interaction among all agencies participating in the task force.
4. Encourage participating agencies to establish investigative priorities which emphasize those drugs posing the greatest danger to society.
5. Increase the effectiveness of drug law enforcement agencies in the local area that are not participating in the task force, by providing direct assistance, intelligence information and other support.
6. Provide for the development and maximum use of intelligence information through enhanced coordination.

## 6331.3 TASK FORCE CREATION, MODIFICATION, AND ABOLISHMENT

A. Field management will continuously survey law enforcement needs and capabilities within its jurisdiction to identify potential task force sites, as well as conduct appropriate liaison and joint planning when the need for any new task force is indicated.

B. All requests to establish program-funded or provisional task forces must adhere to the regulations in Section 0012 of the Administrative Manual. This section establishes the responsibility for processing changes to the structure and functional alignment of DEA organizational elements. All proposals to change current, formal DEA organizational structures and functions down to, and including, the office level or comparable field level, require the written approval of the Attorney General (AG). The Administrator (A) or the Deputy Administrator (AD) will approve changes to sub-elements of Headquarters offices, field divisions, country offices, and laboratories. Proposals from the field should be directed to the Chief of Operations (OC) for review and action by the appropriate Headquarters elements. If approved, the task force will be provisional and require division funding. Requests for task force conversion to program-funded will be based on the availability of funding.

C. *All DEA task forces will be formed by and operated under a task force agreement between DEA and the* participating agencies. The Office of Operations Management (OM) is responsible for coordinating the review of all interagency agreements and maintaining the signed originals as permanent records. All draft agreements should be forwarded to OM from the respective Special Agent in Charge (SAC) for review with a cover memorandum. The cover memorandum should include any comments or special circumstances impacting on Headquarters review of the agreement and the SAC's, or Headquarters Office Head's support for or objection to signing this agreement. Exceptions to this procedure are standard state, local or High Intensity Drug Trafficking Area (HIDTA) task force agreements and addenda. If the draft agreement/addendum is identical to the standard agreement, prior approval is not required. *Changes to standard agreement language described in the appendices of the Task Force Guidelines (see Webster at Manuals/Handbooks and Program Guides)* must be approved by the Investigative Support Section (OMS) and concurred with by Chief Counsel (CC) prior to signature by the SAC. Authority to enter into these agreements will not be delegated below the SAC. *Under unique

SAC.* At a minimum, these agreements shall address funding, supervision, conduct, liability and geographic jurisdiction. Provisional task forces should request resource contributions from participating agencies to operate the task force. Participating agencies include any local or state law enforcement agency that contributes resources, whether it be law enforcement personnel, equipment, facilities or support staff, to the mission of the task force. The exact percentage will remain negotiable; however, the intent is for state and local agencies to contribute equally with DEA to the costs of the task force. State and local agency contributions are intended to be offset, at least in part, by asset forfeiture sharing. Division funding used to support provisional task forces will be combined with funds provided by participating agencies for items such as purchase of evidence (PE), purchase of information (PI), furniture, space, vehicles, etc.

If a provisional task force is subsequently approved for Headquarters funding (program-funded), a new task force agreement will be prepared by the SAC with the participating agencies, and approved by Headquarters (OMS and CC).

**D. New agreements must be submitted at the beginning of each fiscal year. The use of addendums is restricted to current fiscal year agreements.

E. Division management should regularly evaluate the effectiveness and advantage in supporting a task force. In addition, the task force will also be subject to assessment by the Operations Division and Office of Inspections. Recommendations to modify or abolish any task force under the guidelines set forth in Section 0012 of the Administrative Manual, will be made by OC to AD.** Minor modifications (e.g., enhancements, funding adjustments, etc.) in the program must be approved by OMS.

F. On-site visits to task force offices will be made periodically by staff coordinators from OMS.

## 6331.4 TASK FORCE PERSONNEL AND OPERATIONS

A. The head of the task force (including Tactical Diversion Task Force shall always be a DEA Special Agent (SA) of appropriate grade whose primary duty is the operation of the task force. Supervisors of sub-units of a task force should optimally also be DEA SAs of appropriate grade; however, if local circumstances dictate that a state or local officer be in charge of a sub-unit of the task force, the head of the task force may authorize no more than 50 percent of the sub-units to be so commanded, subject to the approval of OMS. Sub-units with state or local officers in command should have an experienced DEA SA as back-up. Conversely, units or sub-units commanded by DEA may have an experienced state or local officer of appropriate rank as back-up. Whatever the command structure of a task force, responsible DEA supervisory personnel must exercise sufficient, direct daily supervision of task force operations to assure that task force investigative activities are known to and approved by DEA. Overall head of the task force should not be delegated outside of DEA.

B. The assignment of particular state and local officers to a task force must be approved by their department (Chief of Police, Internal Affairs, Personnel Office, and immediate supervisor), the Division SAC, and DEA Headquarters (HQ). DEA may reject any nominee based on the officer's training, attitude, past performance, or other factors bearing on suitability. Officers assigned should have at least two years police experience.

C. Assignment of a state or local officer shall be full-time and *must be committed for a minimum of* two years. Assigned officers will be under the direct daily supervision of DEA personnel and will follow DEA policies, procedures, and guidelines. Specifically, all task force personnel will adhere to DEA

sources; technical equipment; official funds; official vehicles; arrest, search and seizure; and submission
of the DEA-352, Biweekly Activity Report. Violation of DEA regulations concerning the above can
result in expulsion from the task force. The maximum amount of overtime reimbursement for state and
local law enforcement officers assigned to DEA program-funded task forces (including HIDTA task
forces) is established at 25 percent of GS-12, Step 1 (Rest of U.S.), taken from the General Pay Scale,
not including locality pay. The maximum amount that DEA will pay for reimbursement to state and
local agencies for secretarial staff assigned to DEA program-funded task forces (including HIDTA-
funded task forces) is the salary equivalent of a GS-6, Step 1 (taken from the General Pay Schedule, not
including locality pay).

D. Once appointed, state and local officers must meet and maintain DEA firearm qualification standards.
State and local officers may carry the weapons and ammunition mandated by their parent agencies. State
and local officers must qualify with firearms under DEA standards unless their parent agencies'
qualification requirements are equal or more stringent than DEA, in which case, they may qualify under
their agencies' standards (see 6122.43). State and local officers must follow DEA deadly force policies
as set forth in the Agents Manual.

E. State and local officers newly assigned to task forces and officers currently assigned with less than
one year task force experience will receive a training course conducted by the DEA field division or
specialized training personnel from the Office of Training. State and local officers should attend 20
hours of in-service training per year.

F. The responsible SAC will have supervisory control over the direction and administrative management
of the task force. The SAC will subsequently assign a task force supervisor to direct, supervise, and
manage task force activities and personnel.

G. State and local officers may not remain in the task force for *longer than* four years without the
written authorization of the SAC.

H. State and local officers may not be assigned non-task force duties by the parent agency without
DEA's approval (aside from removal from the task force).

I. No Task Force Officer (TFO) may receive a formal, final evaluation other than from the supervisor of
the Law Enforcement Officer's parent organization; however, an informal, in-house evaluation will be
done annually by the *SA* or officer in charge of the task force or appropriate sub-unit for the
information of the task force officer's parent agency.

J. Participating agencies in a task force should be limited to six. A waiver of this section may be granted
by the Chief, OMS. The ratio of assigned personnel should be one DEA *SA* to not more than four
state and local officers.

K. Access to DEA investigative files (both manual and Automated Data Processing) will be governed by
DEA regulations and, in any event, will be on a need-to-know basis.

L. The SAC or his/her designee will ensure that TFOs will have access to the DEA Agents Manual to
assure compliance with the above provisions.

M. TFOs will be deputized and granted enforcement authority set forth under Title 21 USC 878. The
responsible SAC will comply with procedures required by OMS and the Office of Security Programs

\*\*N. No one under the age of 21 will be permitted to be deputized pursuant to Title 21.\*\*

**6331.5 QUARTERLY TASK FORCE SUMMARY REPORT.** The Task Force Summary Quarterly Report is found at Appendix H in the Guidelines for Establishing State and Local Task Forces.

For each provisional or program-funded state and local task force, division management will submit a report in the following format to OMS, by the 15th working day after the end of each quarter. A separate summary must be submitted for each provisional or program-funded task force including all HIDTA task forces listed on a division's table of organization. The format for the quarterly report should list the following:

A. Name of task force as listed on the official Table of Organization.
B. Reporting period;
C. Funded or provisional;
D. Number of DEA SAs authorized and on board;
E. Number of other federal officers authorized and on board;
F. Number of state and local officers authorized and on board. (List by name and parent agency; HIDTA-funded officers must be identified separately);

Quarterly reports must be submitted for any reporting element with authorized task force officer positions, including Tactical Diversion Task Forces, Enforcement Groups, Financial Investigations Teams, etc. Each division should submit a consolidated response through a divisional point of contact, who should certify the accuracy of the quarterly report prior to forwarding to OMS.

**6331.6 DEPUTIZATION OF STATE AND LOCAL OFFICERS - TITLE 21 USC 878**

**6331.61 General**

A. The Anti-Drug Abuse Act of 1986 (Public Law 99-570) authorized the AG to deputize state and local officers by granting them certain enforcement powers set forth in 21 USC 878. Title 28 CFR, Subpart R, Section 0.100, et. seq. This deputization authority is delegated to A, with approval authority delegated to the Chief, OMS.

B. The deputized state and local police officer's federal authority is in effect only when engaged in DEA activity at the specific direction of a DEA supervisor. Deputized officers do not possess general authority to act as DEA SAs. They only have deputization authority while acting as a TFO or in support of those case(s) specified on the DEA-481, Deputization Request/Authorization.

C. Deputized officers performing non-task force functions or actions not included in the scope of their deputization are not entitled to Department of Justice (DOJ) representation or any liability protection which might be available to their DEA counterparts.

\*\*D. Divisions must carefully review TFO requests for deputization. Therefore, preliminary screening must also include the questioning of each applicant regarding any potential impeachment information or other issues that may impair the candidate's ability to provide credible testimony or sworn statements, including issues arising from his/her current or previous employment. A positive response does not necessarily preclude an applicant from participating in the program.\*\*

A. State and local officers assigned to authorized DEA program-funded or provisional task forces will require Title 21 deputization authority for their term of duty. Initial task force assignments will require an explanatory memorandum from the SAC in addition to a DEA-481 and 481i, Background Certification. The DEA-481i is a certification of background check and is submitted with the deputization package in lieu of copies of the criminal records check only when results are negative. Copies of the queries must be included if any derogatory information (other than traffic tickets) is revealed in the background check. Additionally, a letter from the candidate's parent agency detailing the incident, circumstances, disposition and statement of good standing must be included with the package as well as a statement of concurrence from the SAC. Part I of the DEA-481 will be completed by the parent police agency verifying that necessary character and internal security investigations have been conducted on the officer candidate. The SAC will sign Part II of the DEA-481 certifying that favorable Narcotics and Dangerous Drug Information System (NADDIS), National Law Enforcement Telecommunications System (NLETS) and National Crime Information Center (NCIC) checks are completed. Upon completion of Parts I and II, the SAC will *submit all three copies of the DEA-481, DEA-481i* and his/her memorandum to OMS. OMS will process the DEA-481 and submit it to the Chief, OMS, for approval as delegated by A.

B. After authorization is granted by the Chief, OMS, Copy 3 of the DEA-481 will be retained by OMS, and the remaining copies will be forwarded to the appropriate SAC, who will then be responsible for administering the Oath of Office and completing Part IV of the DEA-481. Copy 2 of the DEA-481 will be retained by the SAC. The SAC may delegate this responsibility to the Assistant Special Agent in Charge (ASAC) and Resident Agent in Charge (RAC) levels. The Physical Security Section (ISP) will handle issuance of task force badges and credentials. The SAC memorandum along with Copy 1 of the executed DEA-481, two digital photographs, biographical information and a completed signature card must be submitted to ISP requesting the issuance of credentials. Task Force badges and credentials will only be issued to those TFOs who are formally deputized members of a DEA or HIDTA funded task force.

## 6331.63 Deputization of Officers Assigned to Case Specific Activities *Including Organized Crime Drug Enforcement Task Force (OCDETF) Investigations*

A. Requests for short term Title 21 deputizations of officers may be granted in those investigations which are finite in scope, such as a Title III investigation, or those that involve activities related to a specific case(s), *including Organized Crime Drug Enforcement Task Force (OCEDTF) Investigations.* Deputization requests for officers participating in "ad hoc" task forces or general file investigations will not be approved. Case-specific deputizations must be requested by memorandum from the SAC to the Chief, OMS. The memorandum must delineate the officer(s) to be deputized, specific case number (s)/Geo-Drug Enforcement Program (G-DEP), supervisory personnel designated by the SAC, and *a statement that the officer is a favorable candidate for deputization. The memorandum must be submitted to OMS, along with a DEA-481 and DEA-481i for each officer to be deputized. In addition, if derogatory information (other than traffic tickets) is revealed, a letter from the candidate's parent agency detailing the incident, circumstances, disposition and statement of good standing must be included with the DEA-481 and DEA-481i, as well as a statement of concurrence from the SAC.* The requesting office must complete Parts I, II, and III of the DEA-481. Completion of Part III should be limited to listing the case number(s)/G-DEP and the period of time deputization is needed. This period of time may not exceed one year from the date of the request or the conclusion of the investigation, whichever occurs first. If it becomes necessary for the officer(s) to continue deputization beyond one year, a new updated DEA-481 must be submitted to OMS, along with a cover memorandum from the Divisional SAC,

B. OMS will process all DEA-481 requests for deputizations. If deputization is authorized, Copy 3 of the DEA-481 will be retained by OMS and all remaining copies will be returned to the SAC who will be responsible for administering the Oath of Office and completing Part IV of the DEA-481. The SAC may delegate this responsibility to the ASAC and RAC levels. Copy 2 of the DEA-481 and the DEA-481i will be retained by the SAC/delegate, with additional copies maintained at the office level, if applicable. *The original DEA-481 (Copy 1) must be returned to OMS.*

**C. Officers assigned to support OCDETF investigations, where DEA is not the lead agency, will only be deputized by DEA when requested by the sponsoring agency or the United States Attorney's Office and only when there is a legitimate investigative purpose. A deputized state and local police officer's federal authority is in effect only when engaged in a DEA activity at the specific direction of a DEA supervisor. The officer has deputization authority only while acting as a TFO or in support of those case (s) specified on the DEA-481. Deputized Officers performing non-task force functions or actions not included in the scope of their deputization are not entitled to DOJ representation or any liability protection which might be available to their DEA counterparts.**

**6331.64 Other Deputizations.** Deputization authority may be granted by DEA in other situations not covered in this subchapter, but only after evaluation by OMS and at the discretion of the Administrator.

## 6331.65 Termination/Continuation of Title 21 Deputizations

A. The SAC or his/her designee will request by memorandum the termination of Title 21 deputization for officers ending their task force tour of duty. The request shall be submitted to OMS and contain a brief explanation of the officer's departure, his/her date of birth, task force/group assigned, departure date, and parent agency. If a task force badge and credentials were issued to the officer, the SAC will collect these items upon the officer's departure. The SAC will make a determination if the officer departed the task force in good standing. If the officer did not leave in good standing or the SAC does not want *his/her* badge or credentials returned to *him/her,* both items should be returned to ISP for processing. If the officer is found to be in good standing and the SAC elects to present the badge and credentials to the TFO, the SAC should return the credentials to ISP where it will be voided and the officer's access to DEA databases will be suspended. ISP will return the voided credentials to the SAC to have the badge and credentials placed in a shadow box for presentation. No badges or credentials will be given to any officer without being permanently placed into a shadow box.

B. DEA case-specific deputization, *including those deputized pursuant to OCDETF investigations,* will automatically expire upon the conclusion of the investigation or *after* one year, whichever occurs first. The SAC may request deputization extensions as needed in *accordance* to 6331.63.

## 6331.66 Emergency Deputizations

A. Occasionally, emergency situations occur in which state and local officers will need to be immediately deputized due to the fluid nature of an ongoing investigation. Emergency deputizations can be provided on a case-by-case basis, but only in rare circumstances.

B. If adequate time permits, the following emergency deputization procedure should be followed:

1. The Supervisory Special Agent should telephonically contact HQ, OMS.
2. Prepare the DEA-481 (Parts I and II must be completed and signed).