IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LEE PAIGE**<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>**UNITED STATES DRUG ENFORCEMENT ADMINISTRATION,**<br>　　　　　　　　　　　Defendant. | Civil Action No. CV 1:06-644 (JDS)<br><br><br>**ORDER** |

　　　　Presently before the Court is the Defendant's Motion for Summary Judgment on all of Plaintiff's claims. Plaintiff has also filed a Cross-motion for Partial Summary Judgment on liability and to Strike Various Defenses. A hearing was held on the Parties' Motions. After review and consideration, the Court is prepared to render a ruling at this time.

FACTUAL BACKGROUND

　　　　Plaintiff Lee Paige has been an agent for the United States Drug Enforcement Agency since 1990. At the time of the incident at issue, Plaintiff was stationed at the DEA's Orlando

District Office ("ODO").  On April 9, 2004, Plaintiff was giving a drug education presentation to parents and children at the Orlando Youth Minority Golf Association (OMYGA) in Orlando, Florida.  During the course of the presentation, Plaintiff was showing his sidearm to the audience and informing them about the importance of gun safety.  He then stated that "I am the only one in the room professional enough, that I know of, to carry this Glock 40."  Almost immediately after, Plaintiff accidently discharged his sidearm and wounded himself in the leg.

The Incident was videotaped on to a Mini-DV storage device by a private individual.  Plaintiff was aware of the videotaping.  The Mini-DV was provided to the DEA.  A copy of the Mini-DV was also made on to a VHS tape.  The record reflects that the DEA had the only copies of the video with the shooting footage.

Subsequent to the Incident, an investigation was conducted by the DEA Office of Inspections ("IN"). The investigation resulted in a decision by the DEA Board of Professional Conduct to place Plaintiff on suspension for a five-day period.  It is undisputed that during the course of the investigation, numerous copies of the Incident, in varying lengths and forms of electronic media were made.

Beginning in March 2005, the video of the Plaintiff's Incident began to circulate on the Internet and was also picked up by broadcast shows including the Jay Leno Show, CNN Headline News, Fox News, the Jimmy Kimmel Show and others.  These video clips are 4 minutes and 9 seconds (4:09) in length.

Plaintiff contends that the DEA had the only copy of the video and that Plaintiff never consented to the disclosure of the video.   Plaintiff's Amended Complaint alleges Count I - that the disclosure of the video constitutes a violation of the Privacy Act and Count II - that the

disclosure of the video is an invasion of privacy and false light under the Federal Tort Claims Act ("FTCA"). It is upon this backdrop that this Court shall look at the Parties' respective motions for summary judgment.

STANDARD OF REVIEW

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. Id. at 247. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment here, Plaintiff (as the non-moving party) must present some objective evidence that would enable the Court to find he is entitled to relief. In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986). In Anderson, the Supreme Court further explained that "the mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." Anderson, 477 U.S. at 252; *see also* Laningham v. Navy,

813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).

DISCUSSION

### *Privacy Act Claim*

Plaintiff contends that Defendant violated the Privacy Act when it, or its agents, disseminated the video without Plaintiff's consent.  Specifically Plaintiff contends that (1)  the 4:09 clip was taken from a longer Mini-DV recording that was contained within the DEA's "system of records"; (2) that the 4:09 clip was disclosed onto the Internet; (3) that the disclosure was done willfully and intentionally; and (4) the disclosure was done without Plaintiff's consent.

The Privacy Act as codified in 5 U.S.C. § 552a(b) states in pertinent part:

> (b) Conditions of Disclosure. No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless . . .

§ 552a(a)(4) of the Act defines a "record" as follows:

> (4) the term "record" means any item, collection, or grouping of information about an individual that is maintained by an agency, . . . and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph;

It is undisputed that Plaintiff did not consent to any disclosure of the video of the Incident.

Remedies for any violation of the Privacy Act is reflected in 5 U.S.C. § 552a(g)(1) provides in pertinent part:

> Civil Remedies. Whenever any agency –

* * *

>(D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect of an individual, the individual may bring a civil action against the agency . . .

Further, 5 U.S.C. § 552 a(g)(4) provides the following:

>(4) In any suit brought under the provision of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of ----
>>(A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000, and
>>(B) the costs of the action together with reasonable attorney fees as determined by the court. [emphasis added]

The Government contends that Plaintiff cannot satisfy the critical elements of his Privacy Act claim. Specifically, the Government contends that Plaintiff (1) cannot establish that the video footage at issue that was publicized on the Internet came from a protected "system of records"; (2) cannot establish that the release of the video was done with an "intentional and willful" mental state; (3) cannot meet the Privacy Act's disclosure provision since the circumstances surrounding the shooting were already in the public domain when the Incident happened in April 2004 and therefore were well before the video started appearing on the Internet in March 2005; and (4) Plaintiff cannot show pecuniary damages and the Privacy Act does not allow recovery for emotional and reputational damages.

In opposition to Defendant's summary judgment motion, Plaintiff contends that someone within Defendant's agency was responsible for disclosing the video to unauthorized parties since it was the DEA that had exclusive possession of the Mini-DV. In support, Plaintiff cites to the production of at least 8 VHS copies, 26 CD/DVD copies, 3 laptop copies as well as numerous

unaccounted-for email copies.  Plaintiff contends that such disclosure was intentional and willful.  And that such disclosures within the DEA that ultimately resulted in the publication of the 4:09 video on the Internet resulted in Plaintiff's primary injury.

      A.      <u>RETRIEVAL FROM A SYSTEM OF RECORDS</u>

Looking first at whether the Mini-DV was contained within a "system of records", the record reflects that when a shooting involving DEA personnel occurs, an investigation is initiated by the Office of Inspections ("IN") upon notification of the shooting incident.   In the instant case, IN directed the Orlando District Office to begin the investigation to be supervised by Group Supervisor Peter Gruden.  On the week of April 12, 2004, Gruden was directed to create an investigation file which included the Mini-DV.  On April 15, 2004, Gruden went on to direct DEA tech personnel to make 4 CD copies of the incident from the Mini-DV.  The CDs were each 4 minutes and 9 seconds in length.  Gruden also directed two full length VHS copies of the incident to be made as well.

Gruden also wrote up a "Report of Shooting" form.  In so doing, Gruden used the file identifier # of GFAO-04-9020.  That file number is a DEA general file and not indexed to any particular individual.  Further, Gruden sent copies of the 4:09 video to other DEA agents upon their request.  Subsequently, Gruden was informed that IN had reconsidered its earlier position and would in fact take over the investigation of the Incident.

April 15, 2004 was the date that IN decided that it would take over the investigation of the Incident.  That next day, IN opened within its system of records, a file linked to Plaintiff's name for the purposes of investigating the shooting incident.  It is undisputed that IN Program

Analyst Amy Clifford opened that file on April 16, 2005 and that the file number was IN-GB-04-32s.

During the week of April 19, 2004, IN Agents Matthews and White traveled to Orlando to investigate Plaintiff's shooting incident and interview eye witnesses.  While there, IN agents received the Mini-DV from Gruden.  The Mini-DV was 23 minuntes and 34 seconds in length.  Upon return to IN headquarters, the Agents retained custody of the Mini-DV and a copy of the VHS tape.  Agent White also had additional DVD copies of the Mini-DV made.  However, these copies were 23 minutes and 34 seconds in length.  The IN Agents ultimately made a copy of the Mini-DV for the OMYGA volunteers, but with the shooting footage deleted.

After the IN file was completed, additional copies of the Plaintiff's entire IN file with the video footage were created and distributed to certain offices for various training and disciplinary purposes.  It is undisputed that the IN file did not contain any video recordings that were 4:09 minutes in length.

Generally, the disclosure provision contained in § 552a(b) must be "narrowly" construed, and that liability attaches only where records were actually retrieved from a system of records by plaintiff's name. Sussman v. U.S. Marshalls Serv., 494 F.3d 1109, 1123 (D.C. Cir. 2007). Consequently, proof that a protected record was actually retrieved from a system of records is essential to establish liability under the Privacy Act.  A "system of records" is defined more narrowly under the Act as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).  The key limitation in the Act's definition of "system of records" is its use of "retrieved." As the Fifth Circuit has

explained, "[t]his qualifying language in the statute reflects a statutory compromise between affording individuals access to those records relating directly to them and protecting federal agencies from the burdensome task of searching through agency records for mere mention of an individual's name." Bettersworth v. FDIC, 248 F.3d 386, 391 (5th Cir.2001).

As noted in Krieger v. U.S. Dept. Of Justice, 529 F.Supp.2d 29, 47 (D.D.C. 2008), the Privacy Act "does not prohibit all nonconsensual disclosures of information found in an individual's records." Instead, liability for nonconsensual disclosures is limited by the "rule of retrieval," which requires that the information disclosed be "directly or indirectly retrieved from a system of records." Fisher v. Nat'l Inst. of Health, et al., 934 F.Supp. 464, 473 (D.D.C.1996), aff'd without opinion, 107 F.3d 922 (D.C.Cir.1996). "Information derived solely from independent sources is not prohibited by the statute even though identical information may be contained in an agency system of records." Thomas v. United States Dep't of Energy, 719 F.2d 342, 345 (10th Cir.1983)). Therefore, the effect of the rule of retrieval is that "even if an agency official discloses information that exists in the agency's records, the disclosure is rarely actionable unless the official physically retrieved the information from those records. If the official's knowledge of the disclosed information derives from sources that are not protected "records," then the disclosure rarely implicates the Privacy Act." Mulhern v. Gates, 525 F.Supp.2d 174, 182 (D.D.C.2007).

Here, it is undisputed that the 4:09 video is not contained within the IN file. The only recordings contained in the IN file are 23:34 minutes in length. The record reflects that the 4:09 copies were made on April 15, 2005. It is undisputed that the IN file was created on April 16, 2005. Plaintiff's IN file was created by the Office of Inspections to investigate Plaintiff's firearm

discharge. The record reflects that the only relevant video records that were contained in the "system of records" relating to Plaintiff's shooting incident involved a Mini-DV disc (over one hour in length), a VHS copy (over one hour in length) and DVD copies (23:34 minutes in length). These records were kept in the DEA's Office of Inspections and contained in the IN file and constitute the "system of records" at issue. It is undisputed that these records were never publicly released. Further, these video records are distinguishable from the copies found on the Internet in that the Internet versions of the Incident are all 4:09 minutes in length. In addition, the depositions of all persons within the Office of Inspections reflects that none of them improperly divulged the videos of the shooting incident to any unauthorized parties.

Because the 4:09 recording was never contained within the IN file, Defendant argues that it could not have been retrieved from the IN file and thus, Plaintiff is unable to meet a crucial element of his Privacy Act claim.

In response, Plaintiff contends that video was retrieved from a "system of records." In reaching this conclusion, Plaintiff defines a "system or records" differently from that of the Government. Plaintiff contends that when the Office of Inspection first directed Agent Gruden to initiate an investigation of Plaintiff's shooting incident, a "system of records" was created. Plaintiff contends that an IN file is automatically opened when IN is notified of a shooting. Further, Plaintiff contends that because Gruden was in charge of the IN file at the time, he *physically retrieved* the Mini-DV from the IN file and directed reproductions of it that resulted in the 4:09 videos that were found on the DEA email system as well as the Internet. Consequently, Plaintiff argues that because the 4:09 video was recorded from a Mini-DV that is undisputedly found within the "system of records," then the "logical conclusion is that the 4:09 copy was

retrieved and disclosed from a system of records (i.e. the IN file)."[1]

In addition, Plaintiff cites to numerous DEA manuals and regulations which generally state that when IN delegated the on-site investigation to Gruden, he was responsible for the construction of the IN file as set out in the DEA manuals.[2]

Looking first at when the IN file was created, it is important to note that neither Party disputes that the IN file, for purposes of the Privacy Act, is the relevant "system of records" at issue. A "system of records" is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). It is undisputed that the IN file is the only relevant "system of record." A disclosure is not ordinarily a violation "merely because the information happens to be contained in the records." Armstrong v. Geithner, 608 F.3d 854, 857 (D.C. Cir. 2010) (*citing* Bartel v. FAA, 725 F.2d 1403, 1408 D.C. Cir. 1984)). Looking at the items within the IN file, there is no 4:09 video file. Moreover the 4:09 video file was created before the IN file was created by the IN Inspectors.

To the extent Plaintiff argues that Gruden created the IN file or that he sent a 4:09 version to IN to be filed, the record supports neither conclusion. First there is no evidence in the record that a copy of the 4:09 CD was sent to IN to be filed. Second, although it is undisputed that

---

[1] *PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. # 51), p. 3.*

[2] Plaintiff focuses heavily on the argument that Defendant DEA did not follow its procedural rules and regulations regarding the investigation of shooting incidents. However, Plaintiff does not cite to nor has this Court ascertained any case law that established that the failure to follow an agency's procedural rules and regulations is a *per se* violation of the Privacy Act. As such, this Court will disregard those arguments.

Gruden was initially assigned the duty to investigate Plaintiff's shooting incident and create the IN file, that duty was turned over to IN Agents and they ultimately created Plaintiff's IN file. Most importantly, the record reflects that the 4:09 videos that appeared on the Internet were created on April 15, 2005. As noted, Plaintiff's IN file was not created until April 16, 2006. As such, for purposes of the Privacy Act, there could be no "retrieval" of a "record," from a "system of records."

In opposition to this conclusion, Plaintiff invokes the *Bartel* exception to the "rule of retrieval." Bartel v. FAA, 725 F.2d 1403 (D.C.Cir. 1984). Bartel involved an air safety inspector's Privacy Act challenge to the release of information gathered in an agency investigation of him. Although it was unclear whether the FAA official who disclosed the protected information had examined and derived the information from the investigation report, that Court ruled that because the official initiated the investigation, developed and generated the investigation report, and made a putative determination of wrongdoing based on the investigation, his disclosure triggered the Privacy Act's protections. Id.

A similar case to Bartel is Wilborn v. Department of Health & Human Services, 49 F.3d 597 (9th Cir.1995) (*abrogated on other grounds by* Doe v. Chao, 540 U.S. 614, 618 (2004)). In Wilborn, the Ninth Circuit Court of Appeals held that an administrative law judge violated the Privacy Act when he used agency records and agency collection methods to gather and compile facts about an employee in a report and then disclosed the report without authorization. 49 F.3d at 600-601. The Ninth Circuit reasoned that any independent knowledge that he had regarding the employee, had arisen from the creation of the report and use of the agency's system for collecting information. Id. 49 F.3d at 602.

Plaintiff contends that the *Bartel* exception applies to our present case because Gruden was initially a party to the investigation and he directed the 4:09 versions to be created. However, in discussing its prior decision on the *Bartel* exception, the D.C. Circuit noted that "[w]e narrowly tethered the exception, however, to the facts of that case." Armstrong v. Geithner, 608 F.3d at 859. *Bartel's* exception to the retrieval rule is a narrow one that should be applied only in cases turning on similar facts and raising similar concerns. That is evident from the language of *Bartel* itself. *See* Bartel, 725 F.2d at 1408-09 (twice noting the case's "peculiar circumstances").

In comparing our present case to *Bartel's* narrow exception to the retrieval rule, this Court concludes that *Bartel* has no applicability here because this case is easily distinguishable from *Bartel*. Unlike the supervisor in *Bartel*, Gruden did not initiate the investigation of Plaintiff. Rather, it was the Office of Inspection that initiated the investigation and directed Gruden to supervise the initial investigation before IN decided to take over the case. Further, Gruden did not make any official determinations as to Plaintiff's culpability nor did he impose any disciplinary actions. Once the Office of Inspections took the case, Gruden had no knowledge of the progress or outcome of the investigation until its conclusion.

Thus, because the facts of this case are distinguishable from those of *Bartel*, this Court concludes that the "rule of retrieval" applies. Moreover, as noted in Doe v. Dept. of Veterans Affairs, the focus of an improper disclosure claim under the Privacy Act is the "misuse of the government's sophisticated systems for collecting and storing personal information." 519 F.3d 456, 462 (8th Cir.2008). For the foregoing reasons, this Court concludes that Plaintiff has failed to establish, for the purposes of a Privacy Act claim, that the 4:09 video was "retrieved" from a

"system of records."

### A. WILLFUL AND INTENTIONAL CONDUCT

Assuming *arguendo*, that Plaintiff could establish that the Internet versions of the video came out of the IN's "system of records", the Government contends that Plaintiff cannot establish "intentional or willful" conduct on the DEA's part. Specifically, the Government argues that without the identity of the person who publicly released the shooting video and the circumstances of the release, it is impossible for Plaintiff to establish the mental state associated with the release. Edmonds v. U.S. Dep't of Justice. 323 F.Supp.2d 65, 81 (D.D.C. 2004); Albright v. United States, 732 F.2d 181, 189 (D.C. Cir. 1984) (Privacy Act does not make the Government strictly liable for every affirmative or negligent action that might be said technically to violate the Privacy Act's provisions). The disclosure in the instant case being the alleged unlawful public disclosure of the 4:09 video onto the Internet. Consequently, without determining how the shooting video became public, the Government contends that Plaintiff cannot establish the "intentional and willful" element of his Privacy Act claim.

Under Section 552a(g)(1)(D), liability is predicated on an agency's "failure to comply" with the Privacy Act. Thus, the "intentional or willful" action requirement of Section 552a(g)(4) refers only to the intentional or willful failure of the agency to abide by the Act, and not to all voluntary actions which might otherwise inadvertently contravene one of the Act's strictures. Albright, 732 F.2d at 189. Section 552a(g)(4) imposes liability only when the agency acts in violation of the Act in a "willful or intentional" manner. This is established by either by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding

others' rights under the Act. Id.; Albright, 732 F.2d at 189. This standard is somewhat greater than gross negligence. "The violation must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." Deters v. U.S. Parole Comm'n, 85 F.3d 655, 660 (D.C.Cir.1996).

At the summary judgment stage, Plaintiff bears the burden of coming forward with affirmative evidence supporting an allegation of intentional or willful conduct by the agency. *See* Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C.Cir. 1987); *see also* Hill v. United States Air Force, 795 F.2d 1067, 1070 (D.C.Cir.1986). Plaintiff cannot avoid summary judgment with evidence that "the government handled a matter in a [merely] disjointed or confused manner, or ... acted inadvertently to contravene the Act." Velikonja v. Mueller, 362 F.Supp.2d 1, 18 (D.D.C.2004) (*quoting* Waters v. Thornburgh, 888 F.2d 870, 875-76 (D.C.Cir.1989), abrogated on other grounds, Doe v. Chao, 540 U.S. 614, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004)) (internal citations and quotation marks omitted). Summary judgment is proper where the agency presents evidence explaining its conduct and its grounds for believing its actions lawful and plaintiff fails to controvert that evidence. Laningham v. United States Navy, 813 F.2d at 1242-44.

At the motions hearing, Plaintiff points to Agent Gruden and alleges that Gruden willfuly and intentionally disseminated the 4:09 video to the public in violation fo the Privacy Act. Here, there is no dispute that Gruden made the 4:09 version that ultimately showed up on the Internet and gives rise to Plaintiff's Privacy Act claim. Plaintiff alleges that Gruden had a definite animosity toward Plaintiff and therefore he must have leaked the 4:09 video onto the Internet. However, the evidence thus far presented reflect that Gruden only disclosed the video to persons

within the DEA. No evidence has been presented that Gruden provided the 4:09 version to parties outside of the DEA or posted the 4:09 version on the Internet.[3] In order to prove that Defendant acted willfully and intentionally, it is essential that Plaintiff identify the source of the disclosure. Hatfill v. Gonzales, 505 F.Supp.2d 33, 43 (D.C. 2007). In fact, the identity of the individual within the Defendant's organization that disclosed the 4:09 video is an "integral component of the plaintiff's attempt to prove the requisite *mens rea.*" Id. Other than his own allegations, Plaintiff has presented no evidence as to exactly who published the 4:09 version on the Internet.

In addition, it is undisputed that the first appearance of the 4:09 version of the Incident did not show up on the Internet until March 2005, almost a year after the video was made. At the motions hearing, Plaintiff himself acknowledges that there was no record keeping and that it was difficult to track who made what copies. In fact, the DEA's Office of Professional Responsibility worked for two years trying to determine who leaked Plaintiff's video and they were unable to determine its source.

To the extent Plaintiff relies on the common law tort doctrine of *res ipsa loquitor* to support a Privacy Act violation, courts have long held such arguments to be meritless. Plaintiff reasons that the 4:09 version must have been leaked from the DEA and therefore must have been retrieved from a "system of records." The D.C. Court of Appeals has held that "[e]ven assuming

---

[3]In addition, the Court agrees with the Defendant's argument that at the time the 4:09 copies were made, there was no reason for Gruden to believe that the video was protected under the Privacy Act. The Mini-DV from which the 4:09 recording was made was unlabeled and was not retrieved from any "system of records." As such, it was not "retrieved" by Plaintiff's name. Further, since the 4:09 recording was of an event that occurred in public while Plaintiff was on duty, there was no reason to believe that it was protected under the Privacy Act. Thus, Gruden lacked the requisite mental state of "willful and intentional."

the logic underlying the common law doctrine applies to the Privacy Act," plaintiff cannot prevail because he cannot eliminate "other responsible causes." *Restatement (Second) of Torts § 328D(1)(b)*.  Armstrong v. Geithner, 608 F.3d 854, 857 (D.C. Cir. 2010).  Although it is undisputed that Gruden made the 4:09 version of the video that appeared on the Internet, Plaintiff has presented no evidence that it was Gruden that unlawfully disclosed the video to the public or placed the video on the Internet.  For example, Gruden provided copies of the 4:09 video to agents within the DEA for training and educational purposes.  Whether those copies were released somehow to persons that published the 4:09 video onto the Internet is unknown.  Further, copies of the 4:09 video were found on the DEA Firebird Email system.  Whether those email copies were somehow released to parties that published it on the Internet is also unknown.  Given that it is the alleged "intentional and willful" disclosure onto the Internet that Plaintiff alleges that is violation of the Act, Plaintiff has failed to eliminate other responsible causes for that alleged unlawful disclosure.

    Numerous depositions of DEA personnel have been performed during the course of this case.  Internal DEA investigations have also been done to determine who disclosed the 4:09 video to the public.  Through the course of all this, other than Plaintiff's conclusory allegations, there has been no evidence presented as to the identity of the person that disclosed the video.  As such, Plaintiff has presented no material issue of fact that would preclude summary judgment in favor of the Defendant on this ground.  For the foregoing reasons, this Court concludes that Plaintiff has failed to establish, for the purposes of a Privacy Act claim, "intentional and willful" conduct on the part of the Defendant.

    Given this Court's conclusion that Plaintiff cannot meet the "retrieval" and "intentional

and willful" elements of the Privacy Act, this Court need not reach the Defendant's remaining arguments. For the foregoing reasons, this Court concludes that Defendant's Motion for Summary Judgment on Plaintiff's Privacy Act claim is GRANTED.

*Federal Tort Claims Act*

Defendant seeks summary judgment on Plaintiff's Federal Tort Claims Act alleging (1) invasion of privacy by public disclosure of private facts and (2) false light in the public eye. The Court notes that Plaintiff concedes that he cannot prevail on his "false light" claim and therefore summary judgment shall be granted in favor of Defendant on that claim without discussion. *See Doc. # 57*

As the events giving rise to Plaintiff's tort claims occurred in Florida, this Court must look to Florida tort law. The Court notes that Florida has adopted the Restatement (Second) of Torts, which defines causes of action for invasion of privacy. Forsberg v. Housing Auth. of Miami Beach, 455 So.2d 373, 376 (Fla.1984). In order to prevail on a tort claim for "public disclosure of private facts," a plaintiff must establish 1) the publication, 2) of private facts, (3) that are offensive, and (4) are not of public concern." Cape Publications, Inc. v. Hitchner, 549 So.2d 1374, 1377 (Fla.1989) (*citing* Restatement (Second) of Torts § 652D (1977)). The Government, of course, concedes that there was a publication of the Plaintiff's shooting incident. However, the Government contends that Plaintiff's FTCA claim fails because he cannot satisfy all four elements of the cause of action. Specifically, because the shooting incident was not a private fact and the audience owed Plaintiff no duty of confidentiality. Further Plaintiff consented to his presentation being videotaped. Lastly, the Government argues that the shooting

was not highly offensive and more importantly the fact that an on-duty law enforcement officer that was involved in a shooting is in fact a matter of public concern.  Moreover, the Government contends that Plaintiff's claim for unwanted publicity is barred because he qualifies as a "voluntary public figure."

Regarding the "private fact" element, the Government notes that Plaintiff's presentation was recorded with his consent in front of fifty children and parents at the Callahan Community Center and therefore was not private.

Plaintiff counters by acknowledging that the Incident itself is not a private fact and that the audience owed him no duty of confidentiality.  Rather, Plaintiff contends that it was the 4:09 video was a private and that Defendant made efforts to keep it private and therefore their alleged disclosure of it establishes the present tort claim.

However, even assuming the video was a "private fact,"  like Plaintiff's Privacy Act claim, Plaintiff must still establish the source of the disclosure.  Morrison v. Morgan Stanley Properties, 2008 WL 1771871 *7 (S.D.Fla.,2008).  Plaintiff has  failed to lay out conduct attributable to Defendant that would make it liable for a public disclosure of private facts invasion of privacy claim.  Id.

 Moreover, as noted in Restatement(Second) of Torts § 652(D), cmt. b (1977), "[t]here is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public.  Thus there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record ... "  Id.; Mayhall v. Dinneis Stuff Inc., 2002 WL 32113761 *2 (Fla.Cir.Ct. 2002).   Courts have already recognized that there is no "public disclosure of private facts" cause of action for the publication of a picture taken in a public place.   Heath v.

Playboy Enters., Inc., 732 F. Supp. 1145, 1148-1149 (S.D. Fla. 1990) (photograph taken in a public place is not private).  Having been presented no case law to the contrary, this Court finds no distinction between a photograph and in the instant case, a video.  Here, the Incident occurred in a public forum.  Further, the news media had reported the incident within days of it occurring.  As such, this Court concludes that the events surrounding the Incident were already a matter of public record.   Plaintiff's Incident was therefore open to the public eye, and cannot form the basis of liability for invasion of privacy.  Even if Defendant were to give further publicity to it by allegedly divulging the 4:09 video, for purposes of the tort of "public disclosure of private facts," there would be no liability.

      Regardless, Plaintiff has failed to meet "the public concern" element of his claim.  Plaintiff must also prove that there  is no legitimate public interest in the matters disclosed. *See* Woodard v. Sunbeam Television Corp., 616 So.2d 501, 503 (Fla. Ct. App. 1993); Restatement (Second) of Torts § 652D cmt. d (1977).  Given that the incident occurred in a public forum, in front of fifty parents and children while Plaintiff was on duty at a DEA sponsored presentation nd involved a public shooting incident, the Incident was a matter of public concern.   Godbehere v. Phoenix Newspapers, Inc., 783 P.2d 781, 789 (Ariz. 1989); *See* Coughlin v. Westinghouse Broad. & Cable, Inc., 603 F. Supp. 377, 390 (E.D. Pa.) ("A police officer's on-the-job activities are matters of legitimate public interest, not private facts."); Rawlins v. Hutchinson Publ'g Co., 543 P.2d 988, 993 (Kan. 1975) (explaining that a truthful account of police misconduct amounted to "public facts" and could not "form the basis of an action for invasion of privacy").

      Regarding the "highly offensive" element, there is no doubt that the incident is an embarrassment to both Plaintiff as well as the DEA.   However, "highly offensive" matters

generally relate to the intimate details of a person's life, sexual relations, and other personal matters and does not generally include the present situation.

For the foregoing reasons, this Court concludes that Defendant's Motion for Summary Judgment on Plaintiff's invasion of privacy claim of public disclosure of private facts and claim of false light is GRANTED.

CONCLUSION

Because the Court concludes that Plaintiff cannot meet the elements of his Privacy Act claim, public disclosure of private facts claim, and false light claim as alleged in Plaintiff's Amended Complaint, this Court need not reach Plaintiff's partial summary judgment motion on liability and to strike Government's Affirmative Defenses.

For the foregoing reasons, IT IS HEREBY ORDERED that,

1. Defendant's Motion for Summary Judgment (*Doc. # 45*) is GRANTED;

2. Plaintiff's Motion for Partial Summary Judgment and to Strike the Government's Affirmative Defenses (*Doc. # 42*) is DENIED;

IT IS FURTHER ORDERED that the Clerk of Court enter Judgment if favor of the Defendant.

The Clerk of Court shall notify the Parties of the making of this Order.

DATED this December 29th, 2010.

      /s/Jack D. Shanstrom
JACK D. SHANSTROM
SENIOR U.S. DISTRICT JUDGE